

August 5, 2019

William S. Husel, D.O.
C/O Graff & McGovern LPA
604 E. Rich Street
Columbus, OH 43215

**Re:**      ***Criminal Matter*** **– Indictments for 25 Charges of Murder under Ohio Law**

**<u>DENIAL OF COVERAGE RE: DR. WILLIAM S. HUSEL</u>**

Dear Dr. Husel:

Trinity Health Corporation ("Trinity") recently received a denial of coverage letter dated August 5, 2019 (the "Denial Letter") from Trinity Assurance, Ltd. (the "Insurance Company") in reference to the Criminal Indictments charged against you for 25 counts of alleged murder of various victims while patients at Mount Carmel. Please read the enclosed Letter in its entirety since it relates to your lack of insurance coverage for the Criminal Indictments.

The Insurance Company has analyzed coverage for the Criminal Indictments in the criminal matter under the (i) Integrated Risk Liability Policy, Policy No. V-18/19-INTPR-1001 (the "Primary Policy"); (ii) Follow Form Buffer Layer Liability Policy, Policy No. V-18/19-HPL-BUF (the "Buffer Policy"); (iii) Excess Integrated Risk Liability Policy, Policy No. VXSR-18/19-1 (the "Excess Policy"); and (iv) Follow Form High Excess Layer Policy, Policy No. V-XSPLGL-18/19 (the "High Excess Policy"), in effect from July 1, 2018 to July 1, 2019 (the collectively, the "Policies"). Currently, the Insurance Company has taken the following positions as it relates to no coverage for the Indictments:

1) The Indictments do not qualify as a "Loss" under the Policies and therefore, there is no coverage available to you;

2) The Indictments do not arise out of a "Healthcare Professional Liability" and therefore, there is no coverage available to you;

3) The Indictments do not arise out of an "Event" and therefore, there is no coverage available to you;

4) You do not qualify as an Insured under the Policies because you are being charged with "purposeful murder," which is outside the scope of your duties as an employee of Mount Carmel and therefore, there is no coverage available to you;

Sponsored by Catholic Health Ministries | 20555 Victor Parkway • Livonia, MI 48152 • 734-343-1000 • trinity-health.org

5) The Indictments do not give rise to a payment obligation to any third party as the result of a *claim* and therefore, there is no coverage available to you; and

6) There are several exclusions that apply as to deny coverage for the Indictments, including but not limited to, willful violation of statute, physical abuse and non-pecuniary relief.

In light of the denial for the Criminal Indictments in the criminal matter, Trinity has no obligation and will not provide you with a defense for the Criminal Indictments, and the Insurance Company is not obligated for the payment of any expenses or costs incurred in your criminal defense.

**You should immediately contact your personal attorney to be sure that your interests are protected.  This matter should also be forwarded to any other insurer whose coverage might apply.**

If you have any questions, please feel free to contact me.

Sincerely,

Michelle Aiello

Enclosure

C:      Greg Foliano (via e-mail)
        Levi Tkach, personal counsel for Dr. Husel (via e-mail)

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

August 5, 2019

Michelle Aiello
Trinity Health Corporation
20555 Victor Parkway
Livonia, Michigan 48152

**Re:**       *Criminal Matter* **– Indictments for 25 Charges of Murder under Ohio Law**

### DENIAL OF COVERAGE RE: DR. WILLIAM S. HUSEL

Dear Ms. Aiello:

Trinity Assurance, Ltd. ("TAL") has received indictments in a criminal case against Dr. William S. Husel, D.O. ("Dr. Husel"), which charge Dr. Husel with 25 counts of murder of patient victims ("Victims") in the State of Ohio under Revised Code §2903.02 (UF) (collectively, the "Criminal Indictments"[1]). TAL understands that Dr. Husel has requested a defense and indemnity for the Criminal Indictments to be provided by Trinity Health ("Trinity") under the relevant TAL Policies at issue (discussed below).

TAL has reviewed questions of coverage for the Criminal Indictments under the (i) Integrated Risk Liability Policy, Policy No. V-18/19-INTPR-1001 (the "Primary Policy"); (ii) Follow Form Buffer Layer Liability Policy, Policy No. V-18/19-HPL-BUF (the "Buffer Policy"); (iii) Excess Integrated Risk Liability Policy, Policy No. VXSR-18/19-1 (the "Excess Policy"); and (iv) Follow Form High Excess Layer Policy, Policy No. V-XSPLGL-18/19 (the "High Excess Policy"), in effect from July 1, 2018 to July 1, 2019 (the collectively, the "Policies").

This letter advises you that TAL denies coverage under the Policies with respect to the Criminal Indictments against Dr. Husel. TAL asks that Trinity, as the designated representative and the **First Named Insured** under the Policies, communicate the determination set forth in this letter to Dr. Husel. The bases for the denial of the Criminal Indictments are set forth below.

### *Criminal Matter – The Criminal Indictments*

The Criminal Indictments contain 25 counts of murder against Dr. Husel. Specifically, Dr. Husel is charged criminally with having "purposely caused the death" of the Victims. The dates of offenses contained in the Criminal Indictments range from February of 2015 to November of 2018.

---

[1] All 25 Criminal Indictments charge Dr. Husel with the same count of purposeful murder and only materially differ as to the names and the dates of offense to each individual Victim.

31781971.1

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

While we do not hold any opinion as to the truth or veracity of these criminal allegations, we must assume the allegations to be true for purposes of coverage.

### *Relevant Policy Language*

*The Primary Policy*

Part I (Healthcare Professional Liability and Managed Care Liability), Section A (Coverage) of the Primary Policy states that "[TAL] will indemnify the **First Named Insured** for such **Loss** arising from **Healthcare Professional Liability** […] which an **Insured** shall be obligated to pay as a result of a claim first made against the **Insured** and reported to the Company during the **Coverage Period** which arises from a **Medical Incident** …" [TAL] will also indemnify the **First Named Insured** for **Defense Expenses** incurred in connection with a claim arising from **Healthcare Professional Liability** […] covered under this Policy, even if any of the allegations of the claim are groundless, false or fraudulent. [TAL] shall not, however, be obligated to indemnify the **First Named Insured** for **Defense Expenses** after the applicable limit of [TAL]'s liability has been exhausted by payment of **Loss**."

The Primary Policy defines "**Healthcare Professional Liability**" as liability arising out of a **Medical Incident**." "**Medical Incident**" is defined as "any act, error or omission in the furnishing of or failure to furnish **Medical Services**." Furthermore, the Primary Policy states that "any such act, error or omission together with all related acts, errors or omissions in the furnishing or failure to furnish **Medical Services** that result(s) in injury to any one person or any number of persons will be considered one **Medical Incident**. That one **Medical Incident** will be deemed to have happened at the time of the first act, error, or omission within those related acts, errors or omissions." **Medical Incident** also includes "any **Loss Event**, other than a **Named Peril**, that results in injury to any one **Patient** or any number of **Patients**."

Among other activities, "**Medical Services**" includes "medical, surgical, dental, nursing, chiropractic, osteopathic, psychiatric, or mental health care, home health care, or other medical or physical therapies, treatment, evaluation, or care to any person, including (a) the furnishing of medications, drugs, blood, blood products, or medical, surgical, dental, psychiatric or chiropractic equipment, supplies or applications in connection therewith; (b) the furnishing of counseling or other social services in connection therewith; or (c) the furnishing of food or beverage in connection therewith."

Part II (General Liability), Section A (Coverage A – Bodily Injury) of the Primary Policy states that "[TAL] will indemnify the **First Named Insured** for such **Loss** in excess of the applicable retention which an **Insured** shall be obligated to pay as a result of a claim first made against the **Insured** and reported during the **Coverage Period** which arises out of **Bodily Injury** […] to which this insurance applies caused by an **Event** occurring within the **Policy Territory**

2

31781971.1

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

on or subsequent to the **Insured's Retroactive Date** and prior to the **Insured's Termination Date**. [TAL] will also indemnify the **First Named Insured** for **Defense Expenses** incurred in connection with a claim for **Bodily Injury** […] covered under this Policy, even if any of the allegations of the claim are groundless, false or fraudulent. [TAL] shall not, however, be obligated to indemnify the **First Named Insured** for **Defense Expenses** after the applicable limit of [TAL]'s liability has been exhausted by payment of **Loss**."

The Primary Policy defines **"Bodily Injury"** as "any physical injury, sickness or disease, including death, and mental anguish, mental injury or mental illness whether or not accompanied by physical impact, illness or injury." The Primary Policy defines an **"Event"** as respects to **"Bodily Injury"** as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which results in **Bodily Injury** […] neither expected nor intended from the standpoint of the **Insured**, except that (i) such an **Event** other than a **Named Peril**, that results in injury to one or more **Patients** will be considered a **Medical Incident;** and (ii) the use of reasonable force for the purpose of protecting persons or property shall be considered an **Event** under Part II of this Policy, and any claim for assault and battery against an **Insured** resulting from such use of reasonable force shall be deemed to have arisen out of an **Event** under Part II of this policy."

**"Insured"** is defined in Part VI (Definitions) of the Primary Policy and includes entities listed on the Schedule of Named Insureds, as well as "[a]n **Employee** of a **Named** Insured, including without limitation any physician, resident, or fellow who is an **Employee**, but while within the scope of his/her duties as such."

**"Defense Expenses"** is defined in Part VI (Definitions) of the Primary Policy and means "those amounts incurred in the investigation, adjustment, defense, settlement, or adjudication of any claim brought against an **Insured** that is covered under this Policy. **Defense Expenses** include (1) legal expenses, attorney's fees, and court costs; (2) costs taxed against an **Insured;** (3) premiums on appeal bonds and bonds to release attachments, but only for amounts not exceeding [TAL]'s limit of liability, and [TAL] has no obligation to apply for or furnish such bonds; and (4) reasonable expenses of an **Insured** that are incurred at the **First Named Insured's** request. The salaries of a **Named Insureds'** regular **Employees** shall not be treated as **Defense Expenses.** Expenses and costs of any third party claim administrator shall not be treated as **Defense Expenses**." Part VII (Limits of Liability) of the Primary Policy provides that **Defense Expenses** are in addition to, and are not included in, [TAL]'s Limits of Liability.

**"Loss"** under Part VI (Definitions) of the Primary Policy means "all sums which the **Insured** becomes legally obligated to pay to others as damages, whether imposed by law by reason of judgment or settlement, or assumed by the **Insured** under contract, because of a claim covered under this Policy. **Loss** includes pre-judgment interest and post-judgment interest. **Loss** does not include **Defense Expenses**."

3

31781971.1

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

**"Loss Event"** under Part VI (Definitions) of the Primary Policy means: (1) as respects Part I, **Healthcare Professional Liability** [...]: A **Medical Incident** [...]; and (2) as respects Coverage A [...] Bodily Injury Liability [...] of Part II:  An **Event**." "Event" means "...An accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**; ..."

Finally, the Primary Policy provides in Part VII (Limits of Liability):

\* \* \*

B.  **Defense Expenses** are in addition to, and are not included in, [TAL]'s Limits of Liability.

C.  The Retentions and Retained Limits shown in Item V. of the Declarations are deemed eroded only by payment of **Loss,** and are not deemed eroded by payment of **Defense Expenses.**

D.  [TAL]'s Limits of Liability either apply excess of, or are deemed to include, the Retentions or Retained Amounts, as applicable, as set forth in Item V. of the Declarations.

E.  For purposes of determining the applicable Limit of Liability of this policy and the applicable Retention with respect to Part I, Healthcare Professional Liability [...], and Part II, **General Liability**, regardless of the number of claimants or claims made:

(1)  All injury to one person or to any number of persons arising out of the same or related act(s), error(s), or omission(s) in the providing of or failure to provide the services set forth in the definition of **Medical Incident** will be deemed to have resulted from one **Medical Incident,** and only one each **Loss Event** Limit of Liability and one each **Loss Event** Retention will apply to that one **Medical Incident**.

(3)  All **Bodily Injury** [...] to one or more persons, organizations, or properties arising (a) out of the same accident, or (b) out of exposure, including continuous or repeated exposure, to substantially the same general harmful conditions, [...], will be deemed to have resulted from one **Loss Event,** and only one each **Loss Event** Limit of Liability and one each **Loss Event** Retention will apply to that one Event.

4

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

F.   If a claim is covered by more than one Coverage Part, the each **Loss Event** limits for those Coverage Parts shall not apply cumulatively. Only one each **Loss Event** limit shall apply to that claim, which shall be the highest applicable each **Loss Event** limit available under any such Coverage Part. [...].

## *The Buffer Policy*

The Buffer Policy is a follow-form policy; "[i]t applies in conformance with, and is subject to the same terms, insuring agreements, exclusions, conditions, definitions, endorsements, and other provisions that apply to Part I, Healthcare Professional Liability [...], of the **Followed Policy** [(the Primary Policy)], except as regards the premium, limits of liability, and as otherwise provided by this policy. In no event will this policy provide broader coverage than Part I of the **Followed Policy**. If any of the terms or provisions applicable to Part I of the **Followed Policy** are inconsistent with the terms and provisions of this policy, the terms and provisions of this policy will control." *See* Buffer Policy, Part I (Insuring Agreements), Sections C and D.

The Buffer Policy states that "[...] [TAL] will indemnify the **Insured** for that amount of **Damages** in excess of the applicable **Underlying Amount**[2] that the **Insured** is legally obligated to pay as a result of a **Medical Incident** [...] that is covered by the **Followed Policy** [(the Primary Policy)], or that would have been covered by the **Followed Policy** but for exhaustion by payment of the applicable **Underlying Amount**, but only if: (i) The **Medical Incident** [...] happens in the **Policy Territory** on or after the **Insured's Retroactive Date** and prior to the **Insured's Termination Date**; and (2) A claim for the **Medical Incident** [...] is first made against the **Insured** and reported to [TAL] during the **Policy Period**. [TAL] will not indemnify the **Insured** for any **Defense Expenses** incurred in connection with a claim covered by this policy; and [TAL] has no duty to defend any claim." *See* Buffer Policy, Part I (Insuring Agreements).

An **"Insured"** under the Buffer Policy includes "any person or entity who is insured under Part I, of the [Primary Policy], but not for broader coverage than is available to that person or entity under Part I of the [Primary Policy]." *See* Buffer Policy, Part II (Who is an Insured).

The Buffer Policy defines **"Medical Incident"** almost identical to the definition contained in the Primary Policy; just as with the Primary Policy, the Buffer Policy deems any act, error or omission together with all related acts, errors or omissions that result(s) in an injury to any one person or any number of persons to be one **Medical Incident,** deemed to have

---

[2] The **"Underlying Amount"** means the applicable amount(s) as stated in Item 5 of the Declarations in excess of which [the Buffer Policy] is written. The **Underlying Amounts** will be deemed eroded or exhausted only by payment of **Damages**. Payment of **Defense Expenses** will not be deemed to erode or exhausted the **Underlying Amounts**. *See* Buffer Policy, Part VI (Definitions), Letter K.

5

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

happened at the time of the first act, error, or omission within those related acts, errors or omissions. *See* Buffer Policy Part VI (Definitions), Letter I.

"**Damages**" under the Buffer Policy means "all sums which the **Insured** is legally obligated to pay as a result of a claim covered by this policy. **Damages** includes pre-judgment interest and post-judgment interest. **Damages** do not include **Defense Expenses**." *See* Buffer Policy, Part VI (Definitions), Letter A.

"**Defense Expenses**" under the Buffer Policy means "those amounts incurred in the investigation, adjustment, defense, settlement or adjudication of a claim covered by this policy, including legal expenses, attorney's fees, court costs, costs taxed against an **Insured**, premiums on appeal bonds and bonds to release attachments, and reasonable expenses of an **Insured** that are incurred at the **First Named Insured's** request. **Defense Expenses** do not include salaries of a **Named Insured's** regular **Employees**." *See* Buffer Policy, Part VI (Definitions), Letter B.

The Limits of Liability of the Buffer Policy apply in excess of the applicable **Underlying Amount**. For purposes of determining the Limit of Liability of this policy and the applicable **Underlying Amount**: "All injury to one person or to any number of persons arising out of the same or related act(s), error(s), or omission(s) in the providing of or failure to provide the services set forth in the definition of **Medical Incident** will be deemed to have resulted from one **Medical Incident**, and only one Each **Loss Event** Limit of Liability and one Each **Loss Event Underlying Amount** will apply to that one **Medical Incident**." *See* Buffer Policy. Part III (Limits of Liability).

Additionally, "[TAL] will not indemnify any **Insured** for any **Defense Expenses** incurred in connection with any claim covered by this policy. [TAL] will not be obligated to indemnify for any **Damages** after the applicable Limit of Liability has been exhausted." *See* Buffer Policy. Part III (Limits of Liability).

Finally, the Buffer Policy Provides that "[a]ll claims and potential claims arising out of the same or related **Medical Incident(s)** […] (hereafter collectively referred to as "related claims" in this provision) will be deemed one claim. That one claim will be deemed to have been first made and reported at the time that the first such claim within those related claims was deemed first made and reported. Only the policy in effect when the first such claim was deemed first made and reported will apply to all such related claims." *See* Buffer Policy, Part I (Insuring Agreements), Letter E (3).

*The Excess Policy*

Part I (Insuring Agreement) of the Excess Policy states:

In connection with coverage under Group I (Healthcare Professional Liability):

6

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

    A.  […] [TAL] hereby agrees to indemnify the **First Named Insured** against **Ultimate Net Loss**[3] in excess of: (1) with respect to Layer 1:  the RETAINED AMOUNT which the **Insured** is legally obligated to pay by reason of liability imposed by law or assumed under contract for **Damages**[4] to which this Policy applies; or (2) with respect to Layer 2:  the Limits of Liability of Layer 1, as described in Item 4.B of the Declarations.

In connection with coverage under Group III (General Liability):

    C.  […] [TAL] hereby agrees to indemnify the **First Named Insured** against **Ultimate Net Loss** in excess of: (1) with respect to Layer 1:  the RETAINED AMOUNT which the **Insured** is legally obligated to pay by reason of liability imposed by law or assumed under contract for **Damages** to which this Policy applies; or (2) solely with respect to the General Liability coverage in Group III, the Limits of Liability as described in Item 4.B of the Declarations.  **Only Claims First Made Against, or First Recognized by the Insured and First Reported to the Company during the Policy Period** arising out of **Loss Event(s)** taking place on or after the Retroactive Date specified in Item 8. of the Declarations and prior to the **Insured's** termination date shall be covered under this Policy.

Further, "[i]n addition to the indemnification of **Ultimate Net Loss**, and in accordance with the provisions of Article VI. Defense, hereunder, [TAL] agrees to indemnify the **First Named Insured** against **Expenses and Costs** incurred and paid by the **First Named Insured** arising out of and in connection with claims which are covered under this Policy, but:

    (1)    the indemnification against **Expenses and Costs** shall not apply with respect to those coverages designated as Group I [(healthcare professional liability)] as set forth in Item 5. of the Declarations; […];

    (3)    only after **Ultimate Net Loss** exceeds the RETAINED AMOUNT with respect to those coverages designated as Group III as set forth in Item 5. of the Declarations, the indemnification of **Expenses and Costs** under Group III shall be the same

---

[3] "**Ultimate Net Loss**" means the amounts paid by the **Insured** as **Damages** in settlement of claims or in satisfaction of awards or judgments, including gore-judgment interest and post-judgment interest thereon, as a result of a **Loss Event.**" *See* Excess Policy, Part (V) (Definitions), Letter Y.

[4] "**Damages**" means all sums which the **Insured** shall become legally obligated to pay by reason of liability imposed upon the **Insured** by law or assumed by the **Insured** under contract because of injury to which this insurance applies.  **Damages** includes pre-judgment interest and post-judgment interest.  **Damages** does not include (1) **Expenses and Costs**; or as respects Groups I and III only, fines, penalties or any increase in **Damages** by statute or regulation (except with respect to punitive or exemplary damages).  *See* Excess Policy, Part (V) (Definitions), Letter D.

31781971.1

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

proportion of such **Expenses and Costs** that the Company bears to the total **Ultimate Net Loss**.

The liability of [TAL] under this agreement for **Ultimate Net Loss** and **Expenses and Costs** combined shall not exceed [TAL]'s **Limit of Liability** set forth in Item 4. of the Declarations."

*See* Excess Policy, Part I (Insuring Agreement).

The Excess Policy also provides that:

With respect to those coverages designated as Group I [(healthcare professional liability)] and Group III ([general liability)] as set forth in Item 5. of the Declarations, as respects each **Loss Event**, [TAL] shall be liable only for **Ultimate Net Loss** in excess of the amount specified in Item 6. of the Declarations. The **Insured** has, and shall at all times retain, the obligation and responsibility for the RETAINED AMOUNT. The RETAINED AMOUNT shall be governed by the provisions contained in this Policy, except for the limits thereof. [TAL]'s obligation to indemnify the **Insured** for **Ultimate Net Loss** in excess of the RETAINED AMOUNT shall apply only after the RETAINED AMOUNT(S) have been paid, whether or not the **Insured** obtains insurance with respect to all or part of the RETAINED AMOUNT.

If the RETAINED AMOUNT has a sublimit of liability, the RETAINED AMOUNT shall be deemed reduced and eroded by payment of such sublimit. However, this policy shall not drop down over such sublimit. If the RETAINED AMOUNT has a coinsurance provision, the RETAINED AMOUNT shall be deemed reduced and eroded by the **Insured's** payment of such coinsurance. A Buffer layer policy issued by [TAL] is not considered to be a sublimit for purposes of this policy.

If the RETAINED AMOUNT(S) are subject to an aggregate limit as specified in Item 6. of the Declarations, and if the RETAINED AMOUNT(S) are reduced or exhausted solely by amounts paid in settlement of claims or in satisfaction of awards or judgments with respect to **Loss Events** to which this insurance applies, then this Policy shall:

1. in the event of reduction, drop down to continue in force in excess of the reduced RETAINED AMOUNT(S);

2. in the event of exhaustion, drop down to continue in force in place of the exhausted RETAINED AMOUNT(S);

but nothing in this paragraph shall operate to increase the limits of [TAL]'s liability.

*See* Excess Policy, Part II (Retained Amount).

8

31781971.1

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

Furthermore, the Excess Policy provides, as it applies to TAL's limit of liability:

A. **Expenses and Costs,** where indemnified by [TAL] pursuant to the provisions of this policy, and **Ultimate Net Loss** shall be combined to determine the total liability of [TAL]. Regardless of the number of (1) **Insureds,** (2) Coverages, (3) Persons or organizations who sustain injury, or (4) Claims made or suits brought on account of injury.

B. [TAL]'s liability for all **Ultimate Net Loss** and **Expenses and Costs** arising out of any one **Loss Event** shall not exceed the limit of liability for each **Loss Event** stated in Item 4.(a) of the Declarations.

Subject to the above provision with respect to each **Loss Event,** the total liability of [TAL] for all **Ultimate Net Loss** and **Expenses and Costs** because of all **Loss Event(s)** shall not exceed the Aggregate Limit of Liability stated:

   1. in Item 4.(b) of the Declarations as respects those coverages designated in Item 5. of the Declarations as Group I [(healthcare professional liability)] and Group III [(general liability)].

C. Notwithstanding that this policy will not drop down over any sublimit of liability in any RETAINED AMOUNT or **Underlying Limit(s) of Liability**[5], if a RETAINED AMOUNT or **Underlying Limit(s) of Liability** that has a sublimit is subject to an aggregate limit, and if such aggregate limit has been exhausted, then any such sublimit shall be considered to be a sublimit under this policy's Limits of Liability.

D. For purposes of determining the applicable Limit of Liability of this policy and the applicable RETAINED AMOUNT for Group I, **Health Care Professional Liability** and for the General Liability coverage in Group III.

   1. All injury to one person or to any number of persons arising out of the same or related act(s), error(s), or omission(s) in the providing of or failure to provide the services set forth in the definition of **Medical Incident** will be deemed to have resulted from one **Medical Incident,** and only one each **Loss Event** Limit of Liability and one each **Loss Event** RETAINED AMOUNT will apply to that one **Medical Incident.** […]

---

[5] *See* Excess Policy, Part (V) (Definitions), Letter BB for definition of "**Underlying Limit(s) of Liability.**"

31781971.1

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

    3.    All **Bodily Injury** […] to one or more persons, organizations, or properties arising (a) out of the same accident, or (b) out of exposure, including continuous or repeated exposure, to substantially the same general harmful conditions […] will be deemed to have resulted from one **Loss Event**, and only one each **Loss Event** Limit of Liability and one each **Loss Event** RETAINED AMOUNT will apply to that one **Loss Event**.

E.    If a claim is covered by more than one designated coverage, the each **Loss Event** limits for those designated coverages shall not apply cumulatively.  Only one each **Loss Event** limit shall apply to that claim, which shall be the highest applicable each **Loss Event** limit available under any such designated coverage.

F.    All claims arising out of the same or related **Loss Event(s)** (hereafter collectively referred to as "related claims" in this provision) shall be subject to only one each **Loss Event** limit, which will be the each **Loss Event** limit of [TAL] policy that was in effect when the first such claim within those related claims was first made against, or was first recognized by, the **Insured** and first reported to [TAL].

The Excess Policy's definition of **"Healthcare Professional Liability"**, **"Medical Incident"** and **"Insured"** have the same meaning as those terms do in the Primary Policy.

**"Loss Event"** under the Excess Policy means:

1.    As respects Group I, **Healthcare Professional Liability:  a Medical Incident** […].

2.    As respects the General Liability coverage in Group III of the Excess Policy:  (a) an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in **Bodily Injury** […] neither expected nor intended from the standpoint of the **Insured**; except that (i) such a **Loss Event**, other than a **Named Peril**, that results in injury to one or more **Patients** will be considered a **Medical Incident**; and (ii) the use of reasonable force for the purpose of protecting persons or property shall be deemed to be a **Loss Event**.

Finally, as it relates to defense of a claim under Part VI (Defense) of the Excess Policy, "[TAL] has no duty to defend any claim.  If no underlying insurer has a duty to defend, and if the RETAINED AMOUNT or **Underlying Limit(s) of Liability** applicable to a claim to which this policy applies have been exhausted by payment, the **First Named Insured** shall have the duty to defend claims and suits and to pay **Expenses and Costs** arising therefrom.  With respect to those coverages designated as:

1.    Group I [(healthcare professional liability)] as set forth in Item 5. of the Declarations, [TAL] shall not indemnify the **First Named Insured** against **Expenses and Costs**.

10

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

2. Group III [(general liability)] as set forth in Item 5. of the Declarations, [TAL] shall indemnify the **First Named Insured** against **Expenses and Costs** in the same proportion of such **Expenses and Costs** that [TAL] bears out of the total **Ultimate Net Loss** only after **Ultimate Net Los** exceeds the RETAINED AMOUNT."

## *The High Excess Policy*

The High Excess Policy is also a follow-form policy; it "follows applies in conformance with, and is subject to the same terms, insuring agreements, exclusions, conditions, definitions, endorsements, and other provisions that apply to Group I, **Health Care Professional Liability**, or the General Liability coverage in Group III of the **Followed Policy** [(the Excess Policy)], except as regards the premium, limits of liability, and as otherwise provided by this policy. In no event will this policy provide broader coverage than those parts of the **Followed Policy.** If any of the terms or provisions applicable to Group I, **Health Care Professional Liability**, or the General Liability coverage in Group III of the **Followed Policy** are inconsistent with the terms and provisions of this policy, the terms and provisions of this policy will control." *See* High Excess Policy, Part I (Insuring Agreements).

The High Excess Policy provides in Part I (Insuring Agreements) that:

A. Subject to the Limits of Liability of this policy and all other terms and provisions of this policy, [TAL] will indemnify the **First Named Insured** for that amount of **Ultimate Net Loss** in excess of the applicable **Underlying Amount**[6] that the **Insured** is legally obligated to pay as a result of a **Loss Event** that is covered by Group I, **Health Care Professional Liability**, or the General Liability coverage in Group III of the **Followed Policy**, or that would have been covered by those parts of the **Followed Policy** but for exhaustion by payment of the applicable **Underlying Amount**, but only if:

    1. The **Loss Event**[7] happens on or after the **Insured's Retroactive Date** and prior to the **Insured's Termination Date**; and

    2. A claim for the **Loss Event** is **First Made Against or First Recognized by the Insured and First Reported to the Company** during the **Policy Period**.

B. [TAL] will also indemnify the **Insured** for any **Expenses and Costs** incurred in connection with a claim covered by this policy.

---

[6] **"Underlying Amount(s)"** means the applicable amount(s) as stated in Item 5 of the Declarations in excess of which this Policy is written. *See* High Excess Policy, Part VI (Definitions), Letter B.
[7] **"Loss Event"** means the same as it does in the Excess Policy.

11

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

An **"Insured"** under the High Excess Policy means the same as it does in the Excess Policy. *See* High Excess Policy, Part II (Who is an Insured).

With respect to the underlying amounts, the High Excess Policy provides: "This policy provides excess coverage only with respect to Group I, **Health Care Professional Liability**, and the General Liability Coverage in Group III of the **Followed Policy**. However, for purposes of determining when this policy attaches, the **Underlying Amounts** will be deemed eroded by payments made by [TAL], other insurers, or the **Insured** with respect to Group I and all coverages provided by Group III of the **Followed Policy**, [...] including without limitation payments made with respect to [...] General Liability coverages in Group III." *See* High Excess Policy, Part III (Underlying Amounts).

With respect to TAL's limits of liability, the High Excess Policy provides in Part IV (Limits of Liability):

A. The Limits of Liability shown in the Declarations and the rules below fix the most [TAL] will indemnify for **Ultimate Net Loss** and **Expenses and Costs**, regardless of the number of (1) **Insureds**, (2) Coverages, (3) claims made or suits brought, or (4) persons or entities injured.

B. The Limits of Liability of this policy apply in excess of the applicable **Underlying Amount.**

C. The Aggregate Limit of Liability for Health Care Professional Liability and General Liability Combined set forth in Item 4.B of the Declarations is the most [TAL] will indemnify all **Insureds** for all **Ultimate Net Loss** and **Expenses and Costs** for all claims to which this policy applies.

D. Subject to Paragraph C above, the Each **Loss Event** Limit of Liability set forth in Item 4.A of the Declarations is the most [TAL] will indemnify all **Insureds** for all **Ultimate Net Loss** and **Expenses and Costs** arising out of any one **Loss Event.**

E. For purposes of determining the Limit of Liability of this policy and the applicable **Underlying Amount**:

All injury to one person or to any number of persons arising out of the same or related act(s), error(s), or omission(s) in the providing of or failure to provide the services set forth in the definition of **Medical Incident** will be deemed to have resulted from one **Medical Incident,** and only one Each **Loss Event** Limit of Liability and one Each **Loss Event Underlying Amount** will apply to that one **Medical Incident.**

12

31781971.1

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

F.  **Expenses and Costs** are included in the Limits of Liability of this policy.

G.  [TAL] will not be obligated to indemnify for any **Ultimate Net Loss** or **Expenses and Costs** after the applicable Limit of Liability has been exhausted.

### _Denial of Coverage to Dr. Husel for the Criminal Indictments in the Criminal Matter_

TAL denies coverage under all Policies to Dr. Husel for the Criminal Indictments on at least the following grounds.

First, no coverage exists under the Policies because the Criminal Indictments do not qualify as or constitute a "**Loss**" under the Primary and Buffer Policy, or "**Ultimate Net Loss**" under the Excess and High Excess Policy. A "**Loss**" is defined as all sums which the Insured becomes "_legally obligated to pay others as damages_" (emphasis added.) Unlike the Civil Claims brought by plaintiffs against Dr. Husel which seek compensatory damages on behalf of third parties for acts of alleged negligence,[8] the Criminal Indictments are being brought by the State of Ohio for intentional conduct only (_i.e._ murder) and do not seek damages that Dr. Husel would be "legally obligated to pay to others." Similarly, "**Ultimate Net Loss**" means "amounts paid by the **Insured** as **Damages**…" Again, the Criminal Indictments do not allege "**damages**…to which this insurance applies" alleged to be paid by Dr. Husel because of a covered injury. Furthermore, **Defense Expenses** are not considered to be a **Loss** under the Policies. Without any potential for **Loss** or **Ultimate Net Loss**, there is no coverage available for the Criminal Indictments under the Policies and thus no requirement to provide or indemnify for Dr. Husel's defense.

Second, even if it were determined that a "**Loss**" has been alleged, which TAL denies, the "**Loss**" does not arise from "**Healthcare Professional Liability**" or an "**Event**." In order for the Criminal Indictments to arise out of "**Healthcare Professional Liability**," they must also arise out of a "**Medical Incident**." In order to qualify as a "**Medical Incident**," the Criminal Indictments must be related to an act, error or omission in the furnishing or failure to furnish "**Medical Services**." The term "**Medical Services**" includes care and treatment related to medical and mental health; it does _not_ include alleged "purposeful murder." In order to qualify as an "**Event**," the Criminal Indictments must arise out of an "accident … neither expected nor intended from the standpoint of the **Insured**…"; again, purposeful murder does not qualify. Therefore, the Criminal Indictments do not arise out of "Healthcare Professional Liability" or "Event" and thus, coverage is not available for the Criminal Indictments under the Policies.

---

[8] TAL is aware of and has reserved its rights with respect to multiple civil lawsuits (the "Civil Claims") in which various plaintiffs brought claims against Dr. Husel, among others, for damages related to the allegedly negligent wrongful deaths of certain patients during their respective admissions to Mount Carmel, an affiliate of Trinity Health.

13

31781971.1

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

Third, Dr. Husel does not qualify as an **Insured** under the Policies because the Criminal Indictments do not allege that he was acting within the scope of his duties as an employee of Mount Carmel Health System, d/b/a Mount Carmel West ("Mount Carmel") or any other insured entity. Dr. Husel is being charged with the intentional murder of 25 Victims; purposeful murder is undeniably outside the scope of Dr. Husel's duties as an employee of Mount Carmel or any other insured entity and thus, Dr. Husel does not qualify as an **Insured** under the Policies.

Fourth, there is no coverage under the Policies because, even if a "**Loss**" occurred, which TAL denies, such "**Loss**" does not qualify as a payment obligation as the result of a claim. Although the Policies do not define the term "claim," the term "**Loss**" is defined and, as discussed above a "**Loss**" has not occurred because no potential for **Damages** to be paid to others is alleged in the Criminal Indictments.

Fifth, the Criminal Indictments are excluded from coverage based on any and all of the following exclusions.

The Primary Policy specifically excludes from coverage:

B.   EXCLUSIONS

Coverage under Part I of the Policy does not apply to:

4.   Any claim, **Loss** or **Loss Event** arising out of any <u>physical abuse</u>, threatened abuse, sexual act (even if consensual) or sexual misconduct, including without limitation sexual intimacy, sexual molestation, sexual assault, sexual harassment, sexual exploitation, sexual abuse, requests for sexual favors, sexual advances, sexual contact, or other verbal or physical conduct of a sexual nature. However, this exclusion does not apply:

a.   To any **Named Insured**;

b.   To the specific individual **Insured** who allegedly committed such sexual act or misconduct, unless it is determined (i) by final and non-appealable adjudication in any civil or criminal proceeding, or (ii) by a plea of nolo contendere in any criminal proceeding, or (iii) by such **Insured's** admission in any context, or (iv) otherwise to the **First Named Insured's** satisfaction, that such **Insured** did commit such sexual act or misconduct. If it is so determined that such **Insured** committed such sexual act or misconduct, coverage for **Defense Expenses** for such **Insured** will cease, and the

14

# Trinity Assurance, Ltd.

Caribbean Plaza, 2ⁿᵈ Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

        Company will not indemnify for any **Loss** on behalf of such **Insured;**

c.    To any other individual **Insured** who did not commit, participate in, or have prior knowledge of such sexual act or misconduct.

5.    A claim arising from the knowing and willful violation of a penal statute committed by or with the knowledge of the **Insured**. This exclusion shall not apply to a **Named Insured**, nor shall it apply to any other **Insured** who did not commit, participate in, or have prior knowledge of such violation.

8.    A claim seeking non-pecuniary relief.

9.    A claim arising out of a **Loss Event** covered under Parts II, III, IV or V of this Policy.

Coverage under Part II of the Policy does not apply to:

17.    Any claim, **Loss** or **Loss Event** arising out of any <u>physical abuse</u>, threatened abuse, sexual act (even if consensual) or sexual misconduct, including without limitation sexual intimacy, sexual molestation, sexual assault, sexual harassment, sexual exploitation, sexual abuse, requests for sexual favors, sexual advances, sexual contact , or other verbal or physical conduct of a sexual nature.  However, this exclusion does not apply:

a.    To any **Named Insured;**

b.    To the specific individual **Insured** who allegedly committed such sexual act or misconduct, unless it is determined (i) by final and non-appealable adjudication in any civil or criminal proceeding, or (ii) by a plea of nolo contendere in any criminal proceeding, or (iii) by such **Insured's** admission in any context, or (iv) otherwise to the **First Named Insured's** satisfaction, that such **Insured** did commit such sexual act or misconduct. If it is so determined that such **Insured** committed such sexual act or misconduct, coverage for **Defense Expenses** for such **Insured** will cease, and the Company will not indemnify for any **Loss** on behalf of such **Insured;**

15

# Trinity Assurance, Ltd.
Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

      c.      To any other individual **Insured** who did not commit, participate in, or have prior knowledge of such sexual act or misconduct.

    18.    A claim arising out of a **Loss** covered under Parts I., III., or IV. of this Policy.

                              \*\*\*

The Buffer Policy excludes from coverage under Part IV (Exclusions), the same exclusions that apply to Part I of the Primary Policy, *supra*. In addition, the Buffer Policy does not apply:

      A.      [t]o any claim that is not covered by Part I, Healthcare Professional Liability and Managed Care Liability, of the **Followed Policy** [(the Primary Policy)], except claims that would have been so covered but for exhaustion by payment of the **Underlying Amounts**.

      B.      [t]o any claim that is covered by Parts II [(general liability)] […] of the **Followed Policy**.

The Excess Policy excludes from coverage under Part VII (Exclusions):

      H.      […] [A]ny liability arising out of dishonest, fraudulent, malicious or criminal acts committed by the **Insured**. However, for purposes of determining the applicability of this exclusion, no act of any **Insured** will be imputed to any other **Insured** who did not commit or participate in such act. Further, this exclusion will apply only if it is determined by final adjudication that the **Insured** committed such an act.

      I.      […] [A]ny liability arising out of the willful violation of any law, statute, regulation or ordinance committed by the **Insured**. However, for purposes of determining the applicability of this exclusion, no act of any **Insured** will be imputed to any other **Insured** who did not commit or participate in such act. Further, this exclusion will apply only if it is determined by final adjudication that the **Insured** committed such an act.

The High Excess Policy excludes from coverage under Part V. (Exclusions):

      A.      […] [A]ny claim that is not covered by Group I, **Health Care Professional Liability**, or the General Liability coverage in Group III of the **Followed Policy** [(the Excess Policy)], except claims that would have

31781971.1

# Trinity Assurance, Ltd.

Caribbean Plaza, 2nd Floor, North Building
878 West Bay Road
P.O. Box 1159
Grand Cayman KY1-1102
Cayman Islands

been so covered but for exhaustion by payment of the **Underlying Amounts.**

As a result of any or all of these exclusions, the Criminal Indictments are excluded from coverage under the TAL Policies.

Sixth, in light of TAL's position in denying coverage for the Criminal Indictments, TAL has considered and reserves its right, to the extent the Criminal Indictments arise out of the same or related act(s), error(s), or omission(s) in the providing or failure to provide medical services to the Plaintiffs, to deem the Criminal Indictments a single act under the Policies (*i.e.*, a "batch"). This particular reservation does not change, alter or effect in any way TAL's denial of coverage for the Criminal Indictments.

For all of the aforesaid reasons, TAL has determined that there is no defense or indemnity coverage available to Dr. Husel for the Criminal Indictments.

## _Conclusion_

If you believe that the information upon which TAL has made its decision regarding coverage for Dr. Husel in the Criminal Matter is incorrect, or if developments occur with respect to this matter which indicate that coverage may be available under the Policies, please notify TAL immediately.

TAL asks that Trinity, as the First Named Insured, communicate the denial of coverage position described in this letter to Dr. Husel and that he be advised to report the Criminal Indictments to any other carrier where coverage might apply.

Any action taken by TAL in connection with this matter does not constitute and is not intended as a waiver of any rights or defenses available to TAL and shall not estop TAL from asserting, at a later date, any rights or defenses that may be available now or at the time, or that may become apparent in the future. Subsequent developments may indicate that additional defenses or exclusions may be applicable and TAL is reserving all of its rights and defenses, whether or not specifically referred to herein, now existing or arising hereafter.

Should you have any questions about this correspondence, please do not hesitate to contact the undersigned.

Trinity Assurance, Ltd.

By: _____

Its:    Insurance Manager

17

31781971.1