# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DR. WILLIAM S. HUSEL, M.O.,

      Plaintiff,

v.

TRINITY HEALTH CORPORATION,          Case No. 19-cv-12478
and TRINITY ASSURANCE LIMITED
(CAYMAN),                       Hon. George Caram Steeh

      Defendants.

---

# DEFENDANT TRINITY HEALTH CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................................... iii

INDEX OF EXHIBITS ..........................................................................................vi

I.  INTRODUCTION ........................................................................................1

II.  COUNTERSTATEMENT OF FACTS .........................................................2

    A.  Investigation and Reporting of Plaintiff's Conduct ..............................2

    B.  The Civil Matters....................................................................................3

    C.  The Murder Indictment ..........................................................................4

    D.  The Relevant Policy at Issue ..................................................................5

III.  ARGUMENT.................................................................................................6

    A.  Preliminary Injunction Standards...........................................................6

    B  Plaintiff's motion is premised on a misreading of the Policy and
        conflation of the follow-form policies. .................................................7

    C.  Plaintiff cannot show a strong likelihood of success on the merits of
        his claim. ...............................................................................................10

        1.  The Policy only covers a "Loss," which does not include
            criminal penalties ......................................................................12

        2.  The Policy does not cover criminal liability.............................15

        3.  The Policy excludes claims seeking non-pecuniary relief........18

    D.  Plaintiff cannot demonstrate imminent, irreparable harm. ..................19

        1.  Plaintiff has not met his burden to demonstrate irreparable
            harm..........................................................................................20

2.      There is no constitutional right to have someone else pay for counsel of your choice. ...........................................................22

E.      There is no substantial harm to third parties implicated by the issuance of a preliminary injunction. .................................................................24

F.      The public interest would not be served by the issuance of an injunction in this case and the equities tip in THC/TAL's favor. ........24

IV.   CONCLUSION..............................................................................................25

# INDEX OF AUTHORITIES

## Cases

|People v. Williams,
244 Mich. App. 249; 625 N.W.2d 132 (2001) .....................................................15

|Spiegel v. State Farm Fire & Cas. Co.,
277 Ill. App. 3d 340, 342; 660 N.E.2d 200 (1995) .............................................14

Apex Tool Grp., LLC v. Wessels,
119 F. Supp. 3d 599 (E.D. Mich. 2015) ............................................................20

Auto-Owners Ins. Co. v. Harrington,
565 N.W.2d 839 (Mich. 1997) ..........................................................................11

Busch v. Holmes,
256 Mich. App. 4; 662 N.W.2d 64 (2003) ..........................................................12

Cincinnati Indemn. Co. v. Martin,
85 Ohio St. 3d 604, 710 N.E.2d 677 (1999)........................................... 12, 13, 14

Cox v. Fletcher Allen Health Care,
No. 05-cv-180, 2005 WL 2457632 (D. Vt. Oct. 5, 2005) ...................................21

Gearing v. Nationwide Ins. Co.,
76 Ohio St. 3d 34, 665 N.E.2d 602 (1996)..........................................................17

Gideon v. Wainwright,
372 U.S. 335 (1963) ..........................................................................................23

Gonzales v. Nat'l Bd. of Medical Examiners,
225 F.3d 620 (6th Cir. 2000) .............................................................................11

Jaffe v. Cranford Ins. Co.,
168 Cal. App. 3d 930, 935; 214 Cal. Rptr. 567 (1985) .......................... 14, 16, 17

Johnson v. Kay,
860 F.2d 529 (2d Cir. 1988) ................................................................................7

Kelly v. Robinson,
479 U.S. 36 (1986) ...................................................................................... 18, 19

*Leary v. Daeschner*,
  228 F.3d 729 (6th Cir. 2000) ...................................................................6

*Mayfield v. Miles*,
  No. 13-10341, 2014 WL 5605301 (E.D. Mich. Nov. 4, 2014) ...........................7

*McLean v. Romanowski*,
  No. 13-cv-14116, 2014 WL 3870830 (E.D. Mich. Aug. 7, 2014) ......................22

*Moore v. First Security Casualty Co.*,
  568 N.W.2d 841 (Mich. App. 1997) .....................................................11

*Munaf v. Geren*,
  553 U.S. 674 (2008) ........................................................................6

*NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*,
  246 F. Appx. 929 (6th Cir. 2007) ......................................................20

*National Viatical, Inc. v. Universal Settlements Intern., Inc.*,
  716 F.3d 952 (6th. Cir. 2013) ..........................................................21

*Patio Enclosures, Inc. v. Herbst*,
  39 F. App'x 964 (6th Cir. 2002) .......................................................24

*Patterson v. Standard Acc. Ins. Co.*,
  178 Mich. 288, 144 N.W. 491 (1913) ..................................................17

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ......................................................................11

*Schrier v. Univ. of Colorado*,
  427 F.3d 1253 (10th Cir. 2005) ..........................................................7

*State v. Whitfield*,
  124 Ohio St. 3d 319; 922 N.E.2d 182, 186 (2010) .................................15

*Taylor v. Corizon Med. Corp.*,
  No. 17-cv-12271, 2018 WL 2437561 (E.D. Mich. May 10, 2018) ....................7

*Univ. of Tex. v. Camenisch*,
  451 U.S. 390 (1981) .......................................................................6

*Ward v. United Foundries, Inc.*,
   951 N.E.2d 770 (Ohio 2011) ...............................................................................11

*Welch v. Brown*,
   551 F. Appx. 804 (6th Cir. 2014) ......................................................................20

*Wells Fargo & Co. v. WhenU.com, Inc.*,
   293 F. Supp. 2d 734 (E.D. Mich. 2003) ............................................................19

*Wesco Ins. Co. v. Roderick Linton Belfance Llp*,
   No. 17-cv-1813, 2018 WL 4510093 (N.D. Ohio Sept. 19, 2018)............... 16, 17

*Wheat v. United States*,
   486 U.S. 153, 108 S. Ct. 1692 (1988) ...............................................................23

*Whitaker v. M.T. Auto., Inc.,* 111 Ohio St. 3d 177; 855 N.E.2d 825, 830
   (2006)........................................................................................................... 15, 19

*William Beaumont Hosp. v. Federal Ins. Co.*,
   552 Fed. Appx. 494 (6th Cir. 2014) ..................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................................... 20, 21

## Rules

E.D. Mich. LR 5.3(b) ................................................................................................5

## <u>INDEX OF EXHIBITS</u>

Exhibit 1    Declaration of Ruth Goodell in Support of Trinity Health Corp's
            Opposition to Plaintiff's Motion for Preliminary Injunction

Exhibit 2    Ohio State Medical Board License Look-up

Exhibit 3    Case No. 19CR-2735 Filings and Orders

## I. INTRODUCTION

Plaintiff would lead this Court to believe he is being deprived of his constitutional right to counsel (or the counsel of his choice) to defend himself against 25 murder charges. This is categorically false. What he truly wants is to replace his personally selected Ohio criminal counsel with Florida celebrity lawyer Jose Baez, famous for his defense of Aaron Hernandez, George Zimmerman, Casey Anthony, and others. Further, he would like the parent corporation of his former employer, Trinity Health Corporation ("THC"), a Catholic health care institution, to pay for his criminal defense team. In fact, he wants this Court to grant an injunction immediately ordering that to happen.

This is not an ordinary injunction request. Plaintiff asks this Court to take the extraordinary step of granting 1) a mandatory injunction which would 2) in essence resolve all issues before trial or even discovery. Both type of injunctions are "particularly disfavored."

Plaintiff admits he personally prescribed fentanyl to each of the 25 deceased patients. Although he categorizes that treatment as a customary method of minimizing pain, the fentanyl dosage was so exceptionally high it could only expedite death. This conduct generated numerous civil suits as well as these criminal charges. Plaintiff argument appears to be that, since the criminal charges are basically the same as the civil claims, and since THC is defending the civil

1

cases, THC should defend Plaintiff against the criminal case.  The claims/charges are not even close.  The civil claims are for negligence; Plaintiff here seeks a multi-million-dollar defense against 25 charges of murder. However, and more importantly, the defense requested here is contrary to the explicit policy language and the law.

Among several other reasons why there is not even the potential for coverage here, there is no "loss" under the policy.  Loss is defined as "all sums which [Plaintiff] becomes legally obligated to pay to others as damages." In this criminal prosecution for murder, there is not even the potential for "damages," and thus no potential for coverage; full stop.[1]

Plaintiff cannot meet his heavy burden required for an affirmative and mandatory injunction ordering THC to pay the cost of a Florida criminal defense lawyer to defend two dozen murder charges in Ohio.  The petition should be denied.

## II.     COUNTERSTATEMENT OF FACTS

### A.     Investigation and Reporting of Plaintiff's Conduct

---

[1] There is also no potential for coverage because Plaintiff was not acting in the course and scope of his employment and therefore was not an "Insured" under the Policy, and the Policy expressly excludes claims involving knowing and willful violations of penal statutes as well as claims involving physical abuse. These reasons are discussed more fully in the August 5, 2019 Denial of Coverage Letter issued by TAL (Compl. Ex. 13) and TAL's Opposition to Plaintiff's Motion.

Mount Carmel Health System ("MCHS") received a formal report on October 25, 2018, that related to Dr. Husel's care. Sept. 23, 2019 Declaration of Ruth Goodell ¶ 4 attached as Exhibit 1. An investigation was initiated and Dr. Husel was removed from patient care on November 21, 2018. *Id.* The investigation determined Dr. Husel ordered significantly excessive and potentially fatal doses of pain medication for at least 27 patients who were near death. *Id.* Mount Carmel Medical Group ("MCMG" and, together with MCHS, "Mount Carmel"), Dr. Husel's employer, terminated his employment on December 5, 2018. *Id.* ¶ 5.

Mount Carmel reported its findings to authorities. *Id.* ¶ 4. On January 25, 2019, the Ohio State Medical Board summarily suspended Plaintiff's medical license, finding there was "clear and convincing evidence" that Plaintiff was in violation of Sections 4731.22(B)(2), 4731.22(B)(6), and/or 4731.22(B)(34) of the Ohio Revised Code and that his continued practice "presents a danger of immediate and serious harm to the public." *See,* Ex. 2.

### B.    The Civil Matters

Beginning in or about January 2019, civil complaints were filed against Plaintiff and Mount Carmel for damages, generally alleging claims of negligence and wrongful death. Ex. 1 ¶ 6. On January 29, 2019, Defendant Trinity Assurance Limited, Ltd. ("TAL") issued a Reservation of Rights letter relating to the initial civil complaints that were filed against Plaintiff, which was provided to Dr. Husel

by THC. Compl. Ex. 9. On August 2, 2019, TAL issued a Supplemental Reservation of Rights letter to Plaintiff relating to additional civil complaints filed against him. Compl. Ex. 10. On August 5, 2019, TAL issued a Second Supplemental Reservation of Rights letter relating to additional civil complaints filed against him. Compl. Ex. 12. Nonetheless, civil defense counsel was assigned by THC to defend Dr. Husel in these civil actions. Ex. 1 ¶ 6.

### C. The Murder Indictment

On June 5, 2019, Plaintiff was indicted on 25 counts of murder in Franklin County, Ohio, pursuant to 2903.02 UF of the Ohio Revised Code. Compl. Ex. 6. All 25 counts of purposeful murder "do find and present that William Scott Husel late of said County, on or about [date], within the County of Franklin aforesaid, in violation of section 2903.02 of the Ohio Revised Code, did purposely cause the death of [Patient.]" Compl. Ex. 6.

In early August, Plaintiff made a demand on THC/TAL for defense expenses in connection with the *criminal* indictments so that he could engage prominent defense attorney Jose Baez. Goodell Decl. ¶ 7. On August 5, 2019, TAL issued a Denial of Coverage with respect to this request. *Id.*; Compl. Ex. 13. On August 28, 2019, Plaintiff's then criminal counsel filed a motion to withdraw from the criminal case. *See* Ex. 3. That same day, Mr. Baez filed an affidavit to appear *pro hac vice* as lead counsel for Plaintiff. *Id.* The court granted both motions and

4

entered an order appointing Mr. Baez as counsel of record in place of prior counsel, relieved Plaintiff's prior counsel of any further responsibility in the case, and set a trial date of June 1, 2020. *Id.*

On August 22, 2019, Plaintiff filed the instant lawsuit (Dkt. 1) and on August 26, 2019, filed his Motion for Preliminary Injunction (Dkt. 4).

### D.   The Relevant Policy at Issue[2]

For purposes of Plaintiff's motion, the Integrated Risk Policy ("Policy") states in relevant part:

> The Company will indemnify the First Named Insured for such *Loss* arising from Healthcare Professional Liability or Managed Care Liability in excess of the applicable retention which an Insured shall become obligated to pay as a result of a claim first made against the Insured and reported to the Company during the Coverage Period… The Company will also indemnify the First Named Insured for Defense Expenses incurred in connection with a claim arising from Healthcare Professional Liability or Managed Care Liability *covered under this Policy*, even if any of the allegations of the claim are groundless, false, or fraudulent. Compl. Ex. 2, §I.A.

> *Loss means all sums which the Insured becomes legally obligated to pay to others as damages*, whether imposed by law by reason of judgment or settlement, or assumed by the Insured under contract, because of a claim covered under this Policy. Loss includes pre- judgment interest and post-judgment interest. Loss does not include Defense Expenses. Compl. Ex. 2, §VI.Q.

> Coverage under Part I of this Policy does *not* apply to:

> A claim seeking *non-pecuniary relief*. Compl. Ex. 2, §I.8.

---

[2]Defendant is filing a Motion for Authority to Seal Complaint Exhibits 2, 3, 4, and 5 (the insurance policies) pursuant to E.D. Mich. LR 5.3(b).

### III. ARGUMENT

### A. Preliminary Injunction Standards

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689 (2008). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). When deciding whether to issue a preliminary injunction, the district court considers the following four factors: (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). The proof required for a plaintiff to obtain a preliminary injunction is "much more stringent than the proof required to survive a summary judgment motion." *Id.* at 739. Not only does the plaintiff carry the burden of proof, but he also carries the burden of persuasion to show a likelihood of success on the merits. *Id.* (citation omitted).

This Court has recently denied preliminary injunction motions and, in doing so, considered the heightened standards adopted by the Second and Tenth Circuits for "particularly disfavored" preliminary injunctions: "(1) preliminary injunctions

that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." *Mayfield v. Miles*, No. 13-10341, 2014 WL 5605301, at *5 (E.D. Mich. Nov. 4, 2014) (*quoting Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005)) (a disfavored preliminary injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course"); *see also Taylor v. Corizon Med. Corp.*, No. 17-cv-12271, 2018 WL 2437561, at *2 (E.D. Mich. May 10, 2018), *report and recommendation adopted*, No. 17-cv-12271, 2018 WL 2431704 (E.D. Mich. May 30, 2018) *citing Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988) (same). These cases are instructive because they highlight the extraordinary nature of the preliminary injunction and emphasize the great care courts must exercise in deciding whether to issue such relief. Notwithstanding any heightened standards, Plaintiff cannot carry his burdens and his motion should be denied.

### B.    Plaintiff's motion is premised on a misreading of the Policy and conflation of the follow-form policies.

Plaintiff incorrectly claims that "Part I of the Policy provides coverage for certain Loss Events" and that the "Policy at issue provides coverage for defense expenses incurred by Plaintiff in defense of the allegations contained in the criminal indictment." Mot. at 3. He then claims that "Loss" is not required for

7

coverage, only a "Loss Event." Mot. at 12. These statements are patently incorrect and are contradicted by the plain language of the Policy. The Policy covers: "*Loss* arising from Healthcare Professional Liability or Managed Care Liability in excess of the applicable retention which an Insured shall become obligated to pay as a result of a claim first made against the Insured and reported to the Company during the Coverage Period." (emphasis added) Compl. Ex. 2, VI.Q. "Loss does not include Defense Expenses." *Id.* "Loss Event" is not even referenced in the Coverage section of the Policy. Compl. Ex. 2, I.A. The Policy defines "Loss Event" separately: "[a]s respects Part I, Healthcare Professional Liability and Managed Care Liability: a Medical Incident or Managed Care Incident." *Id.*, Part VI, Sec. R.1. The Policy covers "Loss," not "Loss Events."

Plaintiff alleges that TAL issued a "reservation of rights letter agreeing to indemnify [THC]… in defending thirty civil claims, TAL issued a letter denying coverage for… the criminal indictment – notwithstanding the allegations in each being identical." Mot. at 11. First, the allegations in the civil complaints and criminal indictment are not identical. Plaintiff goes to great length describing the substantive factual allegations comprising the civil complaints (Mot. at 8) but then states that the criminal indictment "provides no factual allegations whatsoever…" Mot. at 10. Plaintiff cannot even maintain his claim that the civil complaints and criminal indictment are identical throughout his own Motion. Next, Plaintiff

8

appears to be insinuating that by providing Plaintiff civil defense counsel for the civil complaints, THC and TAL are estopped from denying coverage for the criminal indictments because they are "identical." Plaintiff not only contradicts this argument within his Motion, he provides no authority for this claim.[3] THC and TAL have acknowledged their obligation under the Policy to provide coverage and Defense Expenses to Plaintiff in connection with the civil lawsuits, all of which seek money damages. As Plaintiff concedes in his motion, the civil lawsuits and the criminal indictment are not identical.

While Plaintiff correctly characterizes as "follow-form" policies the Follow Form Buffer Policy, Excess Integrated Risk Policy, and Follow Form High Excess Policy (the "Follow-Form Policies"), he inexplicably urges this Court to conflate the Follow-Form Policies together and analyze them in conjunction with the Policy.[4] Mot. at 13-14. Plaintiff's proposed interpretation is contradicted by the

---

[3] *See, e.g.*, *Safeco Ins. Co. of Am. v. White*, 2009-Ohio-3718, 122 Ohio St. 3d 562, 573; 913 N.E.2d 426 (policy exclusions that preclude coverage for illegal acts do not preclude coverage for negligence actions predicated on the commission of the illegal acts).

[4] Plaintiff's proposed interpretation still fails, however, as the Follow-Form Policies plainly and explicitly exclude indemnification for defense costs. The relevant language of the Follow-Form Policies is quoted here: "*The Company will not indemnify the Insured for any Defense Expenses incurred in connection with a claim covered by this Policy.*" Compl. Ex. 3, Follow Form Buffer Policy at 1.B; "T]he indemnification against Expenses and Costs shall not apply with respect to those coverages designated as Group I as set forth in Item 5 of the Declarations [e.g. Healthcare Professional Liability]." Compl. Ex. 4, Excess Integrated Risk

plain language of the Follow-Form Policies, which provide, in relevant part: "This Policy applies *only in excess* of Underlying Amounts for Healthcare Professional Liability and Managed Care Liability" Compl. Ex. 3, Follow Form Buffer Policy at 3; "With respect to those coverages designated in Item 5 of the Declarations as Group I only, the Company hereby agrees to indemnify the First Named Insured against *Ultimate Net Loss in excess of*." Compl. Ex. 4, Excess Integrated Risk Policy at 6; "This *Policy applies only in excess* of the Underlying Amounts for Group I and Group III of the Followed Policy" Compl. Ex. 5, Follow Form High Excess Policy at 3. The plain language of the Follow-Form Policies provide that they are only applicable once certain defined amounts have been exhausted by the preceding policies, which first requires that the Policy have been exhausted. Compl. Ex. 3, Follow Form Buffer Policy at 3. The only policy relevant to this Court's preliminary injunction analysis is the Policy.

### C.    Plaintiff cannot show a strong likelihood of success on the merits of his claim.

Plaintiff is not entitled to a preliminary injunction because he cannot establish a strong likelihood of success on the merits of his claim. It is a well-

---

Policy §I; "[Follow Form High Excess Policy] does not apply… to any claim not covered by Group I, Healthcare Professional Liability… of the [Excess Integrated Risky Policy]." Compl. Ex. 5, Follow Form High Excess Policy §V.A.

settled principle of law in both Michigan and Ohio[5] that an insurance policy is a

contract between the insurer and insured, and courts must rely on the plain and

ordinary meaning of the words to best effectuate the intent of the parties and the

clear, unambiguous language of the policy. *Auto-Owners Ins. Co. v. Harrington*,

565 N.W.2d 839, 841 (Mich. 1997); *see also Ward v. United Foundries, Inc.*, 951

N.E.2d 770, 773 (Ohio 2011). Courts must be careful not to read an ambiguity into

a policy where none exists. *Moore v. First Security Casualty Co*., 568 N.W.2d 841,

844 (Mich. App. 1997).

No party here asserts that the language of the Policy is ambiguous; rather,

the dispute is how the plain language of the Policy should be applied to the

circumstances. The clear unambiguous language of the Policy does not cover

and/or excludes criminal indictments, so Plaintiff cannot establish a strong

likelihood of success on the merits of his claim, and his motion should be denied.

Courts in the Sixth Circuit conduct a balancing test of the four preliminary

injunction factors, but "a finding that there is simply no likelihood of success on

the merits is usually fatal." *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d

620, 625 (6th Cir. 2000) (affirming district court denial of preliminary injunction

on ADA discrimination claim where plaintiff failed to establish essential element

---

[5] Plaintiff is correct that the Court's reliance on either Michigan or Ohio law will
not impact its analysis. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816
(1985).

of ADA claim and declining to consider whether plaintiff would "otherwise be entitled" to a preliminary injunction).

### 1.   The Policy only covers a "Loss," which does not include criminal penalties.

Plaintiff cannot establish a duty to defend because there is no "Loss" covered by the Policy.[6] Plaintiff claims "THC has the duty to defend all claims covered by the policy" and quotes the section of the Policy that provides TAL will indemnify THC for "Defense Expenses incurred in connection with a claim arising from Healthcare Professional Liability or Managed Care Liability covered under this Policy, even if any of the allegations of the claim are groundless, false, or fraudulent." Mot. at 13. But Plaintiff's argument fails to account for that the duty to defend is contingent on coverage. An insurer is not obligated to provide a defense where, as here, there is "no set of facts alleged in the complaint, if proved true, would invoke coverage for any claim." *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St. 3d 604, 605, 710 N.E.2d 677 (1999).

Instructive here is *Busch v. Holmes*, 256 Mich. App. 4; 662 N.W.2d 64 (2003), which affirmed a trial court's grant of summary disposition in favor of the

---

[6] Plaintiff claims that he would sustain "harm that would be inflicted by the loss of funds owed to him to mount the defense." Mot. at 20. However, legal fees incurred as a result of legal actions taken against an individual are not "sums which [the insured] becomes legally obligated to pay to a third party." *Abdoo v. LMI Prudential Ins. Co*., 108 Ohio App. 3d 13; 669 N.E.2d 870, 874 (1995).

insurer on a coverage dispute involving a liability policy and indemnity for attorney fees incurred in defending a criminal indictment. For its analysis, the Michigan Court of Appeals quoted the relevant sections from the policy and noted that the policy expressly provided liability coverage for *certain removal costs and damages* incurred for violations of the Oil Pollution Act. *Id*. at 11. The court then noted that an indictment by a federal grand jury for knowingly violating the Clean Water Act did not seek removal costs or damages *but criminal penalties*. *Id*. The court held that the plain language of the insurance policy did not provide for defense costs for defending criminal charges asserting criminal responsibility. *Id.*

Similarly, in *Cincinnati Indemnity Co. v. Martin*, the Ohio Supreme Court found that because the plain language of a homeowners policy excluded liability coverage for bodily injury to an insured, including claims resulting from the insured's death, there was no duty to defend a wrongful death suit involving the death of an insured. 85 Ohio St. 3d at 609. There was no claim that the insurance policy was ambiguous. *Id*. at 607. Rather, the appellant attempted to argue that he had a distinct claim for wrongful death that was separate from the insured's "bodily injury." *Id*. The Ohio Supreme Court rejected this argument, noting that the appellant was conflating his right to bring a claim with the issue of whether there is policy coverage: "Even though appellant may pursue an independent

13

wrongful death claim, [] this does not mean that he can create liability coverage where there is none." *Id*. at 608-609.

Courts in other jurisdictions have considered similar disputes and also held that criminal actions do not invoke coverage under policies covering "damages" because criminal actions do not seek damages and therefore do not invoke the insurer's duty to defend. *See, e.g.*, *Spiegel v. State Farm Fire & Cas. Co.,* 277 Ill. App. 3d 340, 342; 660 N.E.2d 200 (1995) (where the policy only covered "damages," no duty to defend in criminal case existed because it did not seek "damages"); *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 935; 214 Cal. Rptr. 567 (1985) ("damages" describes a "payment made to compensate a party for injuries suffered" and criminal actions generally show no potential for "damages").

Here, the plain language of the Policy, which covers "Loss," does not include criminal penalties. Plaintiff incorrectly claims that Part I of the Policy provides coverage for certain "Loss Events." "Loss" and "Loss Event" are separately and distinctly defined in the Policy, and the Policy only provides coverage for certain "Loss." See Section III.B, *supra*. Plaintiff does not claim that the Policy or the definitions for "Loss" or "Loss Event" are ambiguous. The Policy is clear that it only provides coverage for a "Loss," which is defined as "all sums which [Plaintiff] becomes legally obligated to pay to others *as damages*." (emphasis added) Compl. Ex. 2 at §I.A, §VI.Q.

14

"The fundamental rule of the law of damages is that the injured party shall have compensation for all of the injuries sustained." *Whitaker v. M.T. Auto., Inc.,* 111 Ohio St. 3d 177; 855 N.E.2d 825, 830 (2006) (citations omitted). A final criminal conviction is a determination of guilt and the sentence to be imposed. *State v. Whitfield*, 124 Ohio St. 3d 319; 922 N.E.2d 182, 186 (2010); *see also People v. Williams*, 244 Mich. App. 249; 625 N.W.2d 132 (2001) ("The prosecution of a crime is not for the benefit of the injured party, but for the public good."). The criminal indictment charges 25 counts of murder against Plaintiff. Compl. Ex. 6. A successful prosecution by the state on behalf of the public of the criminal indictment against Plaintiff would result in a criminal conviction against Plaintiff. That criminal conviction would not be a "sum" that Plaintiff would be "legally obligated to pay to others as damages." Compl. Ex. 2, §VI.Q.

Plaintiff's claim that THC has a duty to defend cannot succeed and his motion for preliminary injunction should be denied.[7]

### 2.     The Policy does not cover criminal liability.

---

[7] Plaintiff also attempts to argue that because THC/TAL provided coverage to him in the civil actions, coverage should also be provided for the criminal indictment. This argument fails for the reasons stated in Section III.C.2 of this brief. If a plaintiff successfully litigates his/her civil claim and obtains a judgement against Plaintiff, it would be for monetary damages. Monetary damages resulting from a civil lawsuit falls squarely within the Policy's definition of "Loss."

Plaintiff cannot establish a duty to defend under the Policy because the Policy does not apply to criminal liability. The California Court of Appeal considered a very similar liability policy and found that it did not cover the insured's cost of defense in a criminal proceeding in *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930; 214 Cal. Rptr. 567 (1985). In *Jaffe*, the insurance policy described the insured risk as "Psychiatrist's Professional Liability in respect of Assured's practice of Psychiatry," and provided coverage for "damages as may be awarded" against the insured." *Id.* at 933. The plaintiff sought payment of his criminal defense costs under the policy following the criminal trial and a finding that plaintiff was actually *innocent* of all charges. *Id.* at 932. The *Jaffe* court rejected this argument, noting that the plaintiff was conflating the insurer's coverage obligations with its duty to defend and that the correct inquiry was whether or not a potential for coverage existed at the time the insured's defense was required. *Id.* at 933-934. Because the outcome of the criminal case could not result in "damages," there was "no conceivable set of facts" under which coverage would be possible in the criminal action and, therefore, no duty to defend. *Id.* at 934.

Similarly, in *Wesco Ins. Co. v. Roderick Linton Belfance Llp,* No. 17-cv-1813, 2018 WL 4510093, at *5 (N.D. Ohio Sept. 19, 2018) (applying Ohio law), the policy at issue obligated the insurer to pay sums that became due as "damages," and defined damages to mean "judgments, awards and settlement." The Court found that because the underlying lawsuit sought a "sanction," there was "nothing to interpret" because the

policies defined "damages" to include "judgments, awards and settlement," and that definition did not include "sanctions." *Id.* Because the policy clearly did not cover actions for sanctions, the Court granted the insurer's motion for summary judgment and held that the insurer did not have a duty to defend or indemnify the insured in the sanctions actions. *Id.* at *6.[8]

Like *Jaffe* and *Wesco*, the Policy is unambiguous. It provides coverage for "Loss" which "means all sums which the Insured becomes legally obligated to pay to others as damages, whether imposed by law by reason of judgment or settlement, or assumed by the Insured under contract, because of a claim covered under this Policy. Loss includes pre-judgment interest and post-judgment interest. Loss does not include Defense Expenses." Compl. Ex. 2, §IV.Q. Like *Jaffe* and *Wesco*, "criminal fines" and "criminal convictions" are not included in the Policy's definition of Loss.

"The two essentials of a contract of insurance which are to be considered together in this inquiry are the subject-matter and the risk insured against." *Patterson v. Standard Acc. Ins. Co.*, 178 Mich. 288, 293, 144 N.W. 491 (1913) (it was "clearly evident" that an automobile insurance policy was intended to protect against risk of liability for injury

---

[8] It is a well-accepted principle of law in both Michigan and Ohio that criminal conduct is not insurable. *See, e.g., Gearing v. Nationwide Ins. Co.,* 76 Ohio St. 3d 34, 36, 665 N.E.2d 602 (1996) ("The public policy of the state of Ohio precludes issuance of insurance to provide liability coverage for injuries produced by criminal acts."); *see also William Beaumont Hosp. v. Federal Ins. Co*., 552 Fed. Appx. 494, 501 (6th Cir. 2014) (citing Michigan cases that Michigan public policy precluded coverage and recovery for losses sustained due to crimes).

resulting from accidents in the operation of automobiles, not risk of public prosecution

for crimes or misdemeanors committed in the use of them.)

Here, there is no dispute that the Policy is a professional liability policy on its face.

Mot. at 14. The Policy protects against the risk of damages for "Loss arising from

*Healthcare Professional* Liability or *Managed Care* Liability," not the risk of

public prosecution for crimes committed in the provision of professional medical

services. (Emphasis added).

The Policy was not intended to nor does it cover criminal fines or criminal

convictions, and Plaintiff cannot establish a duty to defend.

### 3. The Policy excludes claims seeking non-pecuniary relief.

As discussed above, a criminal conviction resulting from a successful

prosecution of a criminal proceeding on a murder charge is not a "Loss" under the

Policy. Similarly, a criminal proceeding is not covered by the Policy because

Section B.8 of the Policy expressly excludes coverage for any claim "seeking non-

pecuniary relief." Criminal proceedings cannot, by their very nature, seek

"pecuniary relief." Criminal proceedings focus on the State's interests in

*rehabilitation and punishment*, rather than the victim's desire for *compensation*.

*Kelly v. Robinson*, 479 U.S. 36, 53 (1986) (emphasis added).

Plaintiff claims that the criminal indictments seek pecuniary relief because

they "seek payment to a third-party: The state" by way of "fines of $15,000 for

each of the 25 counts [of murder.]" Mot. at 12, 24. But restitution in a criminal proceeding is not "pecuniary relief." Compensation for all injuries sustained by the injured party is the "fundamental rule of law of damages," and civil lawsuits seeking damages determine the pecuniary liability of a defendant. *Whitaker*, 855 N.E.2d at 830. By contrast, criminal fines and restitution orders are not assessed for the compensation of a victim or a measure of "actual pecuniary loss." *Kelly*, 479 U.S. at 51.

A criminal proceeding does not seek pecuniary relief because it does not seek to compensate any party with damages. Coverage for the criminal indictments are excluded by the plain terms of the Primary Policy, so there can be no duty to defend.[9]

### D.      Plaintiff cannot demonstrate imminent, irreparable harm.

Plaintiff has offered no evidence, let alone adequate evidence, to support his claim that he will suffer imminent irreparable harm if TAL/THC does not pay for the high-profile, expensive, celebrity lawyer of his choosing.

A finding of irreparable harm is the single most important prerequisite the Court must examine when ruling on a motion for preliminary injunction. *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 771 (E.D. Mich. 2003). If a

---

[9] There is no dispute here that the Policy is a *professional liability policy*, and professional liability policies are not intended to protect from the risk of public prosecution of crimes. Section III.C.2, *supra*.

plaintiff fails to meet his burden in establishing actual irreparable harm, this balances strongly against the issuance of a preliminary injunction. *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 609 (E.D. Mich. 2015) (citations omitted). Preliminary injunctions are not granted for the "possibility" of irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008). In order to obtain preliminary injunctive relief, Plaintiff must demonstrate irreparable harm that is "both certain and immediate, rather than speculative or theoretical." *Welch v. Brown*, 551 F. Appx. 804, 812–13 (6th Cir. 2014) c*iting NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc*., 246 F. Appx. 929, 943 (6th Cir. 2007).

### 1.    Plaintiff has not met his burden to demonstrate irreparable harm.

Plaintiff baselessly claims that he will be irreparably harmed because he will not be able to obtain an adequate criminal defense unless he is awarded Defense Expenses under the Primary Policy. In fact, *the opposite is true*, as Dr. Husel was represented by criminal defense counsel for a number of months prior to filing this action. *See,* Ex. 3. Moreover, he has not set forth any evidence to demonstrate that, but for engagement of the counsel of his choice (i.e., Mr. Baez), a criminal conviction is imminent.

Plaintiff claims that he "*may* face conviction solely as a result of having not been provided Defense Expenses he was guaranteed as part of his employment

contract." Mot. at 21 (emphasis added). He *may* also be convicted if his request is granted. Plaintiff offers no factual basis for this claim of irreparable harm. His claim that he "may" face a conviction "solely" as a result of not being afforded the opportunity to retain a high-profile criminal defense lawyer is the very sort of tenuous, speculative, theoretical harm that courts routinely reject when considering preliminary injunctions. Plaintiff must make a clear showing that an irreparable injury is imminent in the absence of a preliminary injunction, and he has not done that here. *See Winter* 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

Plaintiff asserts that he will be harmed "by the loss of funds owed to him to mount the defense, as he and his chosen counsel see fit."[10] Mot. at 20. This again falls far short of demonstrating irreparable harm. Plaintiff must support his claim with actual evidence. *See, e.g., Cox v. Fletcher Allen Health Care*, No. 05-cv-180, 2005 WL 2457632, at *2 (D. Vt. Oct. 5, 2005) ("The party seeking an injunction

---

[10] Furthermore, it is apparent that the only actual "harm" to Plaintiff in the absence of a preliminary injunction is that Plaintiff would be responsible for his own criminal defense costs. A "harm" is not considered irreparable if it is fully compensable by money damages. *See, e.g., National Viatical, Inc. v. Universal Settlements Intern., Inc.,* 716 F.3d 952, 957 (6th. Cir. 2013) (finding no irreparable harm where it was apparent that "the real harm [movants] seek to avoid is the payment of money").

must provide more than a bare assertion that the requested legal fees are necessary to an adequate defense."). Plaintiff's Motion makes reference to arguments that will be presented in his criminal defense, but again offers no evidence that those defenses can only be presented by Mr. Baez. *See, e.g.*, Mot. at 20. Without that showing, his claim that he will suffer irreparable harm if TAL does not pay for that counsel fails.

### 2. There is no constitutional right to have someone else pay for counsel of your choice.

Throughout his Motion, Plaintiff also makes references to a "constitutional right to counsel of choice," but there is no right to a professional liability policy payment for criminal counsel of one's choice, nor does Plaintiff demonstrate how that purported right supports a finding he will suffer imminent irreparable harm.

First, Plaintiff's claim conflates the Sixth Amendment right to counsel and the right to counsel of choice, which are conceptually and legally distinct. Unlike the right to counsel, the right to counsel of choice is not absolute and requires only that the defendant be given a fair or reasonable *opportunity* to obtain particular counsel. *McLean v. Romanowski,* No. 13-cv-14116, 2014 WL 3870830, at *22 (E.D. Mich. Aug. 7, 2014) (citations omitted). The Sixth Amendment does not ensure that a defendant will "inexorably be represented by the lawyer whom he prefers." *Wheat,* 486 U.S. at 159. (citations omitted). In contrast, the Sixth Amendment right to counsel *guarantees* an effective advocate for each criminal

22

defendant. *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692 (1988). This guarantee "secures the right to assistance of counsel, *by appointment if necessary*," in a trial for any serious crime. *Id*. citing *Gideon v. Wainwright*, 372 U.S. 335 (1963) (emphasis added).

The focus of the Sixth Amendment guarantee to counsel and the appropriate inquiry for courts evaluating Sixth Amendment claims is on the adversarial process and whether the criminal defendant received a fair trial, "not on the accused's relationship with his lawyer as such." 486 U.S. at 159 (citations omitted). There is no imminent violation of any Constitutional rights at issue here. Plaintiff is represented by criminal counsel and has been for some time. Plaintiff makes no claim that he will be deprived of his right to counsel, nor could he. Even if Plaintiff were indigent (which he is not), the Constitution guarantees the appointment of counsel for his defense. Plaintiff's motion is merely an attempt to secure funding for a new lawyer of his choice. The Sixth Amendment does not afford Plaintiff that relief.

Plaintiff cannot demonstrate actual irreparable harm or even the existence of an actual threat of any such injury. His only claim of harm—that he *may* face a conviction because his professional liability insurer is not paying for the high-profile lawyer of his choice—is on its face conclusory and speculative, and Plaintiff has offered no other support for this claim. His motion must be denied.

**E.      There is no substantial harm to third parties implicated by the issuance of a preliminary injunction.**

Because the issuance of a preliminary injunction in this case will have no appreciable impact on nonparties to this case, it is appropriate for this Court to give this factor less consideration in its balancing of the four factors involved to grant a preliminary injunction. *See, e.g.*, *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 970 (6th Cir. 2002).

**F.      The public interest would not be served by the issuance of an injunction in this case and the equities tip in THC/TAL's favor.**

The public interest would not be served by the issuance of an injunction in this case because the public has an interest in the accurate enforcement of contracts, and the Policy clearly does not cover and/or excludes coverage. *See*, Section III, *supra*. Forcing a professional liability insurer to provide coverage for criminal conduct directly violates well-settled principles of public policy. *See,* Section III.C.2, *supra*.

The crux of Plaintiff's motion is that he is entitled to defense expenses under the Policy simply because he did not commit a "purposeful murder" for which, Plaintiff admits, "no insurance company would be compelled to pay for damage or losses" if that were actually the case. Mot at 22. It is clear that the equities here tip in THC/TAL's favor. There is no dispute that there is no insurance coverage for murder. Furthermore, THC is a Catholic healthcare institution with clearly stated

principles relating to end of life care, and forcing it to provide defense expenses in the absence of the obligation to do so for criminal conduct that violates those principles would not serve the public interest and harm THC.

## IV.  CONCLUSION

Plaintiff has failed to carry his burden. Preliminary injunctions are remedies of an extraordinary and drastic nature. Plaintiff has not established any of the criteria necessary to obtain a preliminary injunction, but, most notably, Plaintiff has failed to make a showing of imminent, irreparable harm if THC/TAL do not pay for his criminal defense costs. That alone dooms Plaintiff's motion. Plaintiff's motion must be denied.

Respectfully submitted,

SCHIFF HARDIN LLP

s/Elise Yu
Elise Yu (P79344)
350 S. Main Street, Ste. 210
Ann Arbor, MI  48104
734-222-1556 (Telephone)
734-222-1501 (Fax)
eyu@schiffhardin.com (Email)

Dated:  September 23, 2019

*Attorney for Defendant Trinity Health Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23, 2019 a copy of the foregoing was filed with the Court using the ECF system which will send notification of such filing to all attorneys of record.

s/Elise Yu
Elise Yu (P79344)
350 S. Main Street, Ste. 210
Ann Arbor, MI  48104
734-222-1556 (Telephone)
734-222-1501 (Fax)
eyu@schiffhardin.com (Email)

SF\322149942.1