UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. WILLIAM S. HUSEL, M.O.,

       Plaintiff,

vs.

TRINITY HEALTH CORPORATION, and
TRINITY ASSURANCE LIMITED
(CAYMAN),

       Defendants.

_____/

Case No.: 19-cv-12478

Hon. George Caram Steeh

### DEFENDANT TRINITY ASSURANCE LIMITED'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................iii

MOST APPROPRIATE AUTHORITY .............................................................vi

INTRODUCTION ..............................................................................................1

FACTUAL BACKGROUND ..............................................................................3

LEGAL STANDARD..........................................................................................9

ARGUMENT.....................................................................................................10

    I.    Husel is not likely to succeed in his claims against TAL....................10

        A.    TAL has no obligation to make *any* payment to Husel.........................10

        B.    TAL's Policy does not cover the Murder Indictments. .........................11

                1.    TAL's obligation to indemnify defense expenses is limited to covered claims. ............................................................11

                2.    Ohio law does not permit insurance for criminal conduct........13

                3.    The Murder Indictments are not a covered claim under TAL's Policy, because they cannot result in a "Loss." ..............14

                4.    Husel is not an "Insured" under the Primary Policy, because the Murder Indictment accuses him of conduct outside the scope of his employment...........................................17

                5.    The Primary Policy's exclusions also preclude indemnification of Husel's criminal defense expenses..............18

                6.    Application of the Primary Policy's exclusions does not require a final adjudication of Husel's guilt................................19

    II.    Husel will not suffer irreparable harm because he is neither being denied a defense nor has established himself as incapable of paying for his own defense. .....................................................................................21

    III.    The balance of equities favors denial of coverage for criminal defense..........23

IV.    The public interest is best served by denying Husel's Motion...........................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apex Tool Grp., LLC v. Wessels*,
  119 F. Supp. 3d 599 (E.D. Mich. 2015)......................................................................9

*Busch v. Holmes*,
  256 Mich. App. 4 (Mich. Ct. App. 2003). .............................................................. 12

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
  511 F.3d 535 (6th Cir. 2007) ....................................................................................9

*Chiquita Brands Int'l, Inc. v. Nat. Union Ins. Co.*,
  988 N.E.2d 897 (Ohio Ct. App. 2013)................................................ 12, 13, 20, 25

*Dover Steel Co. v. Hartford Accident and Indemnity Co.*,
  806 F. Supp. 63 (E.D. Pa. 1992) .............................................................................22

*Gearing v. Nationwide Ins. Co.*,
  76 Ohio St. 3d 34 (Ohio 1996)......................................................................... 11, 13

*Hastings Mut. Ins. Co. v. Safety King, Inc.*,
  286 Mich. App. 287 (2009) .....................................................................................10

*Holloway Sportswear, Inc. v. Transp. Ins. Co.*,
  58 F. App'x. 172 (6th Cir. 2003) ...................................................................... 12, 20

*In re Enron Corporation Securities*,
  391 F. Supp. 2d 541 (S.D. Tex. 2005) ...................................................................20

*In re Kenai Corp.*,
  136 B.R. 59 (S.D.N.Y. 1992)............................................................................ 20, 24

*Jaffe v. Cranford Ins. Co.*,
  168 Cal. App. 3d 930 (1985).................................................................................. 16

*Leary v. Daeschner*,
  228 F.3d 729 (6th Cir. 2000). ...................................................................................9

*Liberty Coins, LLC v. Goodman,*
    748 F.3d 682 (6th Cir. 2014) ............................................................................................9

*Little v. MGIC Idem. Corp.,*
    836 F.2d 789 (3d Cir. 1987). .........................................................................................21

*Lucero v. Detroit Pub. Sch.,*
    160 F. Supp. 2d 767 (E.D. Mich. 2001)..........................................................................22

*Luis v. United States,*
    578 U.S. __; 136 S. Ct. 1083 (2016). ............................................................................23

*Mongelli II v. Chicago Ins. Co.,*
    No. 99 CV 8149, 2002 WL 32096578 (E.D.N.Y Jan. 15, 2002) .......................................22

*Motorists Mut. Ins. Co. v. Trainor,*
    33 Ohio St. 2d 41 (1973).................................................................................................14

*Patio Enclosures, Inc. v. Herbst,*
    39 F. App'x 964 (6th Cir. 2002) .....................................................................................21

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797, 816 (1985) ...............................................................................................10

*Potomac Electric Power Co. v. California Union Ins. Co.,*
    777 F.Supp. 980 (D.D.C.1991)........................................................................................16

*Red Head Brass, Inc. v. Buckeye Union Ins. Co.,*
    135 Ohio App.3d 616 (Ohio Ct. App. 1999) ...................................................................24

*Schrier v. Univ. of Colorado,*
    427 F.3d 1253 (10th Cir. 2005)........................................................................................10

*Sharonville v. Am. Employers Ins. Co.,*
    109 Ohio St. 3d 186 (2006) ........................................................................................... 18

*Spiegel v State Farm Fire and Cas. Co.,*
    277 Ill. App. 3d 340 (1995) ...................................................................................... 16, 20

*Stuckey v. Nat. Union Fire Ins. Co. of Pittsburgh, PA.,*
    131 F. Supp.3d 73 (S.D.N.Y. 2015)..................................................................................22

*Thomas Noe, Inc. v. Homestead Ins. Co.*,
 173 F.3d 581 (6th Cir. 1999) ................................................................................................18

*Univ. of Texas v. Camenisch*,
 451 U.S. 390 (1981) ...............................................................................................................9

*Ward v. United Foundries, Inc.*,
 129 Ohio St. 3d 292 (2011) .....................................................................................10, 12, 20

*Wedge Prods. v. Hartford Equity Sales Co.*,
 31 Ohio St. 3d 65 (1987)........................................................................................ 13, 14, 20

**Statutes**

Ohio Rev. Code § 2903.02 ........................................................................... 4, 13, 20, 21

Ohio Rev. Code § 2929.02 .....................................................................................21

Ohio Rev. Code § 4731.22B .....................................................................................4

**Other Authorities**

Sixth Amendment ...........................................................................................23

*Black's Law Dictionary* (11th ed. 2019)........................................................................19

Restatement (Second) Agency § 229 ...........................................................................17

# MOST APPROPRIATE AUTHORITY

*Apex Tool Grp., LLC v. Wessels*,
  119 F. Supp. 3d 599 (E.D. Mich. 2015)........................................................................9

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
  511 F.3d 535 (6th Cir. 2007)........................................................................9

*Gearing v. Nationwide Ins. Co.*,
  76 Ohio St. 3d 34 (1996)........................................................................11, 13

*Holloway Sportswear, Inc. v. Transp. Ins. Co.*,
  58 F. App'x. 172 (6th Cir. 2003)........................................................................12, 20

*Liberty Coins, LLC v. Goodman*,
  748 F.3d 682 (6th Cir. 2014)........................................................................9

*Ward v. United Foundries, Inc.*,
  129 Ohio St. 3d 292 (2011)........................................................................10, 12, 20

## INTRODUCTION

Defendant Trinity Assurance Limited ("TAL") has never directly indemnified, and has no obligation to directly indemnify, Plaintiff Dr. William Husel ("Husel") for anything, including his defense costs.

TAL's professional liability indemnification policies with Co-Defendant Trinity Health Corporation ("THC") require TAL to indemnify THC and to advance defense costs to THC for claims defended by THC that are covered by those policies. Consistent with its obligations under those policies and under a reservation of rights, TAL advanced defense costs to THC to defend against numerous civil actions brought against THC and Husel seeking damages for, among other things, alleged medical negligence and wrongful death arising from Husel's administration of lethal doses of drugs to certain of his patients (the "Civil Actions").

Trading upon TAL's good faith advancement of defense costs to THC in the Civil Actions, Husel now argues that this Court should take the extraordinary step of issuing what is essentially a permanent injunction, ordering TAL to pay all of Husel's costs associated with engaging a high-profile criminal defense attorney to defend him against the 25 counts of murder—each count claiming that Husel "did purposefully cause the death" of one of his patients—for which Husel has been charged in Ohio (the "Murder Indictments").

Based upon the plain reading of the policies and the application of settled law, Husel's request for injunctive relief should be denied.

*First*, Husel's defense against the Murder Indictments is not covered by TAL's policies. Leaving aside the fact that TAL is not obligated to directly indemnify Husel, the Murder Indictments do not constitute covered claims for which defense cost may be indemnified, because the policies only cover claims that could give rise to a "Loss" —defined as damages, excluding defense costs—and the Murder Indictments do not have the potential for resulting in insurable damages. Moreover, Husel cannot even be considered an "insured" under the policies with regard to the Murder Indictments, since he was acting outside the scope of his employment in murdering his patients.

*Second*, coverage of defense costs in conjunction with the Murder Indictments also is precluded by the policies' exclusions for claims arising from physical abuse or willful violation of penal statutes and claims seeking "non-pecuniary relief."

*Third*, Husel cannot establish that he would suffer irreparable harm if Defendants do not advance to him the costs of his *two* defense counsel, including his new, high-profile criminal defense attorney, Jose Baez—the attorney who previously represented Casey Anthony, Aaron Hernandez, and Harvey Weinstein, and who is among the most expensive practitioners in the country. Husel fails to present any allegations or evidence demonstrating that he is incapable, absent injunctive relief, of paying for counsel to defend against the Murder Indictments. And, even if he proves that he cannot pay for counsel himself, Husel presumably is not suggesting that the public defender's office would provide him so inadequate a defense

as to constitute irreparable harm, and he certainly presents no authority to support this argument.

*Finally*, the balance of the equities also mitigates against issuance of an injunction here. Specifically, to the extent that this Court orders TAL to advance Husel's defense fees, TAL likely will never be able to recover those fees even if it is ultimately successful in this action. Indeed, the very same evidence that Husel must present to establish that he lacks the funds necessary to pay for his defense would simultaneously confirm that he lacks the resources to repay TAL. A preliminary injunction here, therefore, would practically grant final judgment against TAL before it has even answered Husel's complaint.

Husel's Motion should be denied.

## FACTUAL BACKGROUND

### The Lawsuits, License Suspension and Murder Indictments

Husel worked as a physician in the Intensive Care Unit of Mount Carmel West hospital (the "Hospital") in Columbus, Ohio from 2013 until 2018. In December 2018, TAL became concerned that Husel was prescribing pain medication in dosages that were much higher than was typical for the type of patients that were typically under his care. Following an internal investigation, the Hospital reported Husel to the authorities for ordering excessive and potentially fatal doses of pain medication that allegedly led to at least 25 patient deaths.

During this same period, the State Medical Board of Ohio suspended Husel's license, concluding that there was "clear and convincing evidence" that he violated Ohio's Medical

Practices Act (Ohio Rev. Code ("ORC") §4731.22B) and that his "continued practice creates a danger of immediate and serious harm to the public." *See* Ex. 1, "License Look Up."[1]

Following the Hospital's public apology for these deaths and its disclosure that it had reported Husel to the authorities, numerous Civil Actions were filed against Husel, the Hospital and its staff, and the Hospital's parent company, THC. The Civil Actions, examples of which are attached to Husel's Complaint, seek damages against Husel and the other named defendants for negligence and wrongful death, among other causes of action. *See* Dkt. 1-13 at PageID 279–81.

In June of 2019, Husel also was indicted on 25 counts of "Murder" under ORC § 2903.02 (the "Murder Indictments"). *See* Ex. 2, Murder Indictments. Each count of the Murder Indictments states that the grand jury found that Husel "did purposefully cause the death" of a separate individual. To TAL's knowledge, Husel was the only person charged or indicted for these deaths.

**The Relevant Agreements**

Husel is not a party to any agreement with THC or TAL. He entered into an Employment Agreement, effective June 24, 2018 (the "Employment Agreement") with Mount Carmel Health Providers, Inc. ("MCHP"). *See* Ex. 3, Employment Agreement. Under the Employment Agreement, MCHP was to obtain and pay for professional liability insurance

---

[1] *Available at* <<https://elicense.ohio.gov/oh_verifylicensedetails?pid=a0Rt000000081T0EAI>> (last visited Sept. 23, 2019).

coverage "for all activities conducted in the course of employment pursuant to th[e] Agreement. . . ." *Id.* at §5.2. The Employment Agreement does not state this insurance would include coverage for defense costs, and it makes clear that "[a]ny activities that fall outside the scope of Physician's employment or that are not authorized by [MCHP] will not be covered by [MCHP's] professional liability insurance coverage." *Id.*[2]

MCHP is an affiliate of THC. THC obtained four separate indemnification contracts (collectively, the "Policies") from TAL covering healthcare professional liability:

- The Integrated Risk Liability Policy, Policy No. V-18/19-INTPR-1001 (the "Primary Policy"). *See* Dkt. 1-3 at PageID 46-103.

- The Follow Form Buffer Layer Liability Policy, Policy No. V-18/19-HPL-BUF (the "Buffer Policy"). *See* Dkt. 1-4 at PageID 104-12.

- The Excess Integrated Risk Liability Policy, Policy No. VXSR-18/19-1 (the "Excess Policy"), which covered Plaintiff as an employee of one of THC's subsidiary hospitals. *See* Dkt. 1-5 at PageID 114-53.

- The Follow Form High Excess Layer Policy, Policy No. V-XSPLGL-18/19 (the "High Excess Policy"), in effect from July 1, 2018 to July 1, 2019. *See* Dkt. 1-6 at PageID 154–62.[3]

---

[2] Husel was bound by these same terms in his previous employment agreement (as amended September 7, 2016, the "Initial Agreement"). *See* Ex. 6, Initial Agreement. The Initial Agreement was in effect from September 9, 2013 until it was superseded by the Employment Agreement on June 24, 2018. *See id.* and Ex. 3 at ¶ 16 (providing that the Employment Agreement "contains the entire agreement between the parties and supersedes any prior or contemporaneous . . . agreements between them relating to [Husel's] employment or professional services[.]").

[3] All four of the Policies are confidential and were subject to a Non-Disclosure Agreement with Husel's counsel. TAL and THC will be moving separately to place these agreements under seal.

The only one of the Policies that provides for the potential indemnification of defense expenses arising from a covered claim is the Primary Policy.[4] Specifically, the Primary Policy provides that: "[TAL] will also indemnify the **First Named Insured [(*e.g.*, THC)]** for **Defense Expenses** incurred in connection with a claim arising from **Healthcare Professional Liability** or **Managed Care Liability** covered under this Policy, even if any of the allegations of the claim are groundless, false or fraudulent."  Dkt. 1-3 at PageID 50.

As Husel admits in his brief, this plain language of the Primary Policy only requires TAL to indemnify ***THC*** for defense costs.  *See* Dkt. 4 at PageID 324 ("While it is TAL that must indemnify Trinity Health").  THC then bears the obligation to actually defend covered claims.  *See* Primary Policy, Dkt. 1-3 at PageID 79 ("[THC] has the duty to defend all claims that are covered by this policy.")

In keeping with THC's defense rights and obligations, the Primary Policy provides further that: (i) the authority to select and direct defense counsel is "vested solely with [THC's Risk Management Services Department ("IRMS")] and not with any Insured" and (ii) an "Insured shall not, except at his/her own cost, voluntarily make any payment, assume any

_____

[4] Each of the other Policies explicitly excludes indemnification for defense expenses related to Healthcare Professional Liability claims.  *See* Buffer Policy, Dkt. 1-4 at §1.B ("The Company will not indemnify the Insured for any Defense Expenses incurred in connection with a claim covered by this Policy. . . ."); Excess Policy, Dkt. 1-5 at §I ("the indemnification against Expenses and Costs shall not apply with respect to those coverages designated as Group I as set forth in Item 5 of the Declarations [*e.g.*, Healthcare Professional Liability]."); High Excess Policy, Dkt. 1-6 at §V.A (noting that this policy does not apply to any claim not covered as a Healthcare Professional Liability in the Excess Policy.)

obligation or incur any expense without express approval from IRMS." *Id.* at PageID 68. The Primary Policy also makes clear that TAL "will have the right to deny coverage for Loss and Defense Expenses" if an insured fails to comply with these conditions. *Id.* Notably, there is no provision in the Primary Policy that requires TAL to pay Husel's defense costs, or allows Husel to undertake his own defense of a covered claim or engage his own counsel at TAL's expense.

**TAL's Reservations of Rights and Denial of Coverage**

In connection with the Civil Actions, TAL issued several Reservation of Rights letters to THC.[5]  In each Reservation of Rights letter, TAL notes that plaintiffs in the Civil Actions are seeking damages and have asserted causes of action that included negligence. *See* Dkt. 1-10 at PageID 231-46; Dkt. 1-11 at PageID 247–54.  Based on these claims, and because TAL "assume[d] the allegations to be true for purposes of coverage," TAL reserved its rights and defenses with regard to coverage but agreed to advance THC's defense expenses in conjunction with THC's defense of the Civil Actions brought against it and Husel. *Id.*

On August 5, 2019, TAL issued a denial letter to THC with regard to the Murder Indictments, denying coverage under the Policies because, among other things, the Murder Indictments were not a covered claim under the Policies for which defense expenses are required to be paid to THC.

---

[5] Although Husel asserts in his brief that TAL communicated directly with him, all of TAL's reservation of rights letters were addressed and directed to THC. *See* Dkt. 1-10 at PageID 231-46; Dkt. 1-11 at PageID 247-54.

**Husel's Criminal Trial**

Husel originally was represented in his criminal case by Richard Blake of the Ohio firm of McDonald Hopkins.  However, on August 28, 2019 (almost four weeks after TAL issued its denial of coverage letter), Husel chose to replace Mr. Blake with Jose Baez—the Florida attorney who previously represented Casey Anthony, Aaron Hernandez, and Harvey Weinstein.  And, presumably because he believes that one law firm is insufficient for his defense, Husel also is represented in the criminal action by Columbus-based attorney, Diane Menashe.  *See* Ex. 4, Aug. 28, 2019 Columbus Dispatch Article.  Husel's criminal trial is scheduled for June 1, 2020.  *Id.*

**Husel's Action Against THC and TAL**

On August 22, 2019, following TAL's denial of coverage to THC, Husel filed an action against both THC and TAL asserting the following "causes of action": (i) Declaratory Judgment; (ii) Specific Performance and Preliminary Injunction; (iii) Specific Performance and Permanent Injunction; and (iv) Breach of Contract.  *See* Compl., Dkt. 1 at PageID 20–26.  Notably, although Husel's only contract is with his employer—MCHP—Husel did not name MCHP as a co-defendant in this litigation.

Husel then filed the instant Motion on August 26, 2019, seeking an injunction to force TAL to advance directly to Husel all of his defense costs—for his two law firms—in his criminal case.  As discussed below, Husel's Motion is without merit and should be denied.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 606 (E.D. Mich. 2015) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). The Court generally considers four factors when deciding whether the circumstances "clearly demand" a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Id.* (quotation omitted). Each of these factors should "be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014) (citation omitted).

In determining whether injunctive relief should be granted, this Court should bear in mind the purpose of a preliminary injunction, which "is merely to preserve the relative positions of the parties until a trial on the merits can be had." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). This is why injunctive relief—as is sought by Husel here—that disrupts the status quo and essentially grants the movant all of the relief

he could receive at a full trial is especially disfavored. *Schrier v. Univ. of Colorado,* 427 F.3d 1253, 1259 (10th Cir. 2005).

## ARGUMENT

### I.      Husel is not likely to succeed in his claims against TAL.

#### A.      TAL has no obligation to make *any* payment to Husel.

It is well settled that, in interpreting a policy of insurance or indemnification, the Court must "look to the policy language and rely on the plain and ordinary meaning of the words used to ascertain the intent of the parties to the contract." *Ward v. United Foundries, Inc.*, 129 Ohio St. 3d 292, 295 (2011).[6]

Here, the plain language of the Primary Policy with regard to TAL's defense indemnification obligation is clear: "The Company ([TAL]) will also ***indemnify the First Name Insured ([THC])*** for Defense Expenses incurred in connection with a claim arising from Healthcare Professional Liability or Managed Care Liability covered under this Policy." Dkt. 1-3 at 50 (emphases added). TAL's only obligation is to indemnify THC.

---

[6] TAL agrees with Husel that whether the Court applies Michigan law or Ohio law on this issue will not impact the Court's analysis, as courts in both states apply the same standard. *Cf. Ward*, 129 Ohio St. 3d at 295, with *Hastings Mut. Ins. Co. v. Safety King, Inc*., 286 Mich. App. 287, 294 (2009) (finding that the terms of an insurance policy must be construed according to their commonly-used meanings). *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) (where a court's application of the law of a particular state does not conflict with the law of any other state connected to the lawsuit, there is no injury to the parties).

Nowhere in the Primary Policy (or any other of the Policies) does it require TAL to make *any* payment directly to Husel or any other THC affiliate or employee.  And absent the requirement to make payments directly to Husel, it is not an actionable breach for TAL to refuse to do so.

And the reason why TAL is not obligated to directly indemnify Husel should be obvious: the Policies do not allow Husel or anyone other than THC and THC's authorized representative to defend claims or incur defense costs.  It is only THC that has the right to defend claims covered by the Policies, so it is only THC to which TAL could owe a payment obligation.  *See id.* at PageID 81.  Indeed, the Primary Policy makes clear that Husel cannot incur any expense without the approval of THC's Risk Management Services Department and that if he chooses to do so, TAL has the right to deny coverage.  *See id.*

To the extent that Husel has engaged his own counsel and incurred defense costs, the Primary Policy is clear that those expenses are Husel's responsibility alone.

B. **TAL's Policy does not cover the Murder Indictments.**

1. **TAL's obligation to indemnify defense expenses is limited to covered claims.**

It is well-settled that "an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy."  *Gearing v. Nationwide Ins. Co.*, 76 Ohio St. 3d 34, 36 (1996).  The duty to indemnify for defense costs thus "does not attach where the conduct

alleged is indisputably outside the scope of coverage." *Chiquita Brands Int'l, Inc. v. Nat. Union Ins. Co.*, 988 N.E.2d 897, 900 (Ohio Ct. App. 2013).[7]

To determine whether a party has a duty to defend, the Court must examine the allegations in the underlying action. "If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action. But if all the claims are clearly and indisputably outside the contracted coverage, the insurer need not defend the insured." *Ward*, 129 Ohio St. 3d at 295.

There is only one claim in the Murder Indictments: that Husel "did purposefully cause the death" of 25 people in violation of ORC § 2903.02, which provides that "whoever violates this section is guilty of murder. . . ." *See* Ex. 2. Unlike the Civil Actions, the Murder Indictments do not accuse Husel of negligence or merely suggest that he "hastened" his patients' death. Nor can Husel expand the scope of the allegations in the Murder Indictments by bringing in claims from the Civil Actions. *See Holloway Sportswear, Inc. v. Transp. Ins. Co.*, 58 F. App'x. 172, 175 (6th Cir. 2003) ("courts need not stretch the allegations beyond reason to impose a duty on the insurer" because it "would effectively impose an absolute duty on the insurer to provide a defense to the insured regardless of the cause of action stated in the complaint.").

---

[7] As an initial matter, the Primary Policy is clear that TAL has no duty to defend Husel. As such, the cases on which Husel relies to suggest that TAL's obligations with regard to indemnification for defense costs are broader than its duty to indemnify are inapplicable. *See Busch v. Holmes*, 256 Mich. App. 4 (Mich. Ct. App. 2003).

Determination of whether TAL owes an obligation to indemnify defense costs associated with the Murder Indictments thus turns on whether the Primary Policy covers murder.  It does not.

### 2.     Ohio law does not permit insurance for criminal conduct.

As an initial matter, leaving aside the plain language of the Primary Policy, that Policy cannot be deemed to cover claims of murder, because Ohio law forbids it.  The Ohio Supreme Court made this clear in *Gearing*, holding that "[l]iability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial, criminal conduct."  *Gearing*, 76 Ohio St. 3d at 38; *id*. at 34 ("The public policy of the state of Ohio precludes issuance of insurance to provide liability coverage for injuries produced by criminal acts of sexual misconduct against a minor"); *Wedge Prods. v. Hartford Equity Sales Co.*, 31 Ohio St. 3d 65, 67(1987) ("public policy is contrary to insurance against intentional torts"); *Chiquita Brands Int'l, Inc*., 988 N.E.2d at 900 ("Further, Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts").

Husel cannot circumvent this public policy preclusion of coverage, and thus defense-cost indemnification, by essentially arguing that the allegations in the Murder Indictments are rendered "groundless, false, or fraudulent" merely by his belief that he is not guilty of murder.  Indeed, Husel's actual guilt or innocence is wholly irrelevant for purposes of determining coverage.  Rather, as discussed above, the only issue this Court need consider to determine the scope of TAL's defense indemnification obligation is whether murder—the only allegations

in the Murder Indictments—constitutes a covered claim. *See Wedge Prods.*, 31 Ohio St. 3d at 68 (holding that insurer had no duty to defend against intentional tort claim, because "whether the allegations are true, false, fraudulent or groundless" is irrelevant where "no theory of recovery within the policy coverage has been pleaded"); *Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St. 2d 41 (1973) (duty to defend is not determined by ultimate outcome of the action or insurer's ultimate liability).  And given that public policy precludes coverage for murder, TAL has no obligation to indemnify Husel's defense of the Murder Indictments.

Husel, however, ignores the requirement that insurers defend only those claims that are potentially within the scope of coverage and instead seeks to hold Defendants responsible for defending every false or groundless suit that may have been brought against him.  Defendants' obligations, of course, do not extend that far.  For example, if a groundless suit were brought against Husel by someone alleging that he ran a red light while driving to work and caused an accident, no serious case can be made that Defendants owed him a duty to defend that suit for the simple reason that the Primary Policy does not provide coverage for that type of claim.  Indeed, Defendants did not sign on for the defense of every suit brought against Husel merely because they agreed to defend claims that were "groundless, false, or fraudulent."  Rather, the threshold for triggering coverage must at the outset be met—*i.e.*, that a claim be "covered under the Policy."

> **3.     The Murder Indictments are not a covered claim under the Primary Policy, because they cannot result in a "Loss."**

The plain language of the Primary Policy's coverage provisions also make clear that TAL is not obligated to indemnify Husel for his criminal defense costs, because the Murder Indictments cannot result in a "Loss."  As discussed above, TAL's defense indemnification obligation is clear:  "The Company ([TAL]) will also indemnify the First Name Insured ([THC]) for Defense Expenses incurred in connection *with a claim* arising from Healthcare Professional Liability or Managed Care Liability *covered under this Policy*. . . ."  Primary Policy, Dkt. 1-3 at PageID 50 (emphasis added). "Defense Expenses" are then defined as "amounts incurred in the investigation, adjustment, defense, settlement, or adjudication of any *claim* brought against an Insured *that is covered under this Policy*." *Id.* at PageID 67.[8]

Given that the Primary Policy does not otherwise define what constitutes a "claim" that "is covered under this Policy," it is necessary to look at the Primary Policy's other "Coverage" provision to define the scope of what claims may be covered.  That provision states that "[TAL] will indemnify [THC] for such **Loss** arising from **Healthcare Professional Liability** or **Managed Care Liability**. . . ." *Id.* at PageID 50 (emphasis in original).[9]  To trigger coverage under the Primary Policy (subject to exclusions, discussed below) there are therefore two

---

[8] Husel suggests that the Court should focus on the term "liability" in determining whether there is coverage under the Primary Policy.  *See* Dkt. 4 at PageID 329.  However, both the coverage provisions of the Primary Policy and the definition of "Defense Expenses" make clear that the critical issue is whether a "claim" is covered under the Primary Policy.

[9] Husel asserts that coverage is provided for both a "Loss" and a "Loss Event." *See* Dkt. 4 at PageID 329.  However, only a "Loss" not a "Loss Event" is mentioned in the coverage provisions of the Primary Policy.  *See* Dkt. 1-3 at PageID 50.

preconditions: a claim must (i) have the potential to result in a "Loss" and (ii) arise from a Healthcare Professional Liability or Managed Care Liability.

The Murder Indictments, however, cannot result in a covered "Loss," thus precluding coverage. "Loss" is defined in the Primary Policy as "all sums which the **Insured** becomes legally obligated to pay to others as damages . . . because of a claim covered under this Policy. . . . Loss does not include **Defense Expenses**." *Id.* at PageID 71.

Because a Loss does not include the incurring of defense expenses, Husel must establish that he may be obligated to pay damages to others as a result of the Murder Indictments. He cannot, as "damages" are not possible in conjunction with the Murder Indictments. Although the courts of Michigan and Ohio do not appear to have addressed this issue directly, courts in other jurisdictions have confirmed that fines and penalties associated with a criminal conviction are not "damages." *See, e.g., Potomac Elec. Power Co. v. California Union Ins. Co.,* 777 F.Supp. 980, 983–84 (D.D.C. 1991) ("fees expended in defending [solely] against possible criminal charges are not recoverable under a liability policy" because "criminal punishments—fines and incarceration—are not 'damages' caused to the property of another" and because "allowing fees spent on criminal defense to be recovered under a liability policy would violate public policy."); *Spiegel v. State Farm Fire and Cas. Co.*, 277 Ill.App.3d 340, 342 (1995) (holding that where policy only covered "damages," no duty to defend in criminal case existed because the criminal indictment did not seek "damages"); *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 935 (1985) (reasoning that

"neither imprisonment nor a fine constitute 'damages' for insurance purposes."). Moreover, as discussed above, if Husel were to be issued a fine for his criminal conduct, the law would preclude TAL from indemnifying him for that amount. Fines issued in conjunction with a criminal conviction thus cannot be deemed an insurable "Loss."

### 4. Husel is not an "Insured" under the Primary Policy, because the Murder Indictment accuses him of conduct outside the scope of his employment.

It cannot seriously be argued that the intentional murder of patients—the crime with which Husel was indicted—is within the scope of a physician's employment and thus subject to coverage under the Primary Policy. Under that Policy, an employee of a "Named Insured" may be considered an "Insured" for purposes of determining whether TAL is required to indemnify THC, but only "while [the employee is] acting within the scope of his/her duties as such." Primary Policy, Dkt. 1-3 at PageID 69. In determining whether an employee's actions were in the scope of his duties, courts generally utilize the factors found in the Restatement (Second) Agency, which include: "whether or not the act is one commonly done by such servants"; "whether or not the master has reason to expect that such an act will be done"; and "whether or not the act is seriously criminal." Restatement (Second) Agency § 229. Here, applying these factors to the Murder Indictments' allegations—charging Husel with intentional murder arising from purposely causing the death of others—confirms that Husel cannot be considered an employee acting within the scope of his duties when he is alleged to have murdered 25 people.

### 5.   The Primary Policy's exclusions also preclude indemnification of Husel's criminal defense expenses.

Even assuming *arguendo* that the Murder Indictments are within the Primary Policy's coverage provisions, indemnification of Husel's criminal defense expenses is still precluded by the Primary Policy's exclusions for claims: (1) arising from the knowing and willful violation of penal statutes; (2) for non-pecuniary relief; and (3) for physical abuse.

When an exclusionary clause in an insurance contract is clear and unambiguous, "Ohio law requires that the plain language of the clause be given effect." *Thomas Noe, Inc. v. Homestead Ins. Co.*, 173 F.3d 581, 583 (6th Cir. 1999) (internal citation omitted).  And here, there is no question as to the plain language of the relevant exclusions.

First, the Primary Policy excludes claims "arising from the knowing and willful violation of a penal statute committed by or with the knowledge of the **Insured**."  Primary Policy, Dkt. 1-3 at PageID 50 (emphasis in original).   Application of this exclusion to this matter is clear: the only allegation in the Murder Indictments is that Husel "purposely caused the death" of 25 people in violation of ORC § 2903.02—Ohio's penal statute defining "murder."  As this is the only claim in the Murder Indictments, the Primary Policy's exclusion for criminal claims clearly precludes coverage. *See Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St. 3d 186, 189 (2006) (stating that an "insurer need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage").

Second, the Murder Indictments are also precluded from coverage under the Primary Policy's exclusion of claims "seeking non-pecuniary relief." Dkt. 1-3 at PageID 50. The mandatory punishment for a murder conviction under ORC § 2903.02 is either life imprisonment or death, neither of which is pecuniary. *See* ORC § 2929.02. Husel suggests that this exclusion does not apply because "the Indictment seeks pecuniary relief in the form of fines of $15,000 for each of the 25 counts." Dkt. 4 at PageID 335. But this assertion is factually inaccurate and, in any event, misplaced. Nowhere do the Murder Indictments seek to impose fines. And even if that were the case, ORC § 2929.02 requires incarceration, but makes it only discretionary for the sentencing court to impose a fine on the accused. And there is nothing in the exclusion that requires "non-pecuniary relief" to be the only form of relief sought in connection with the claim. Husel's argument thus fails.

Third, the Primary Policy's exclusion for claims "arising out of any physical abuse" also applies to preclude coverage for the Murder Indictments. Although the Primary Policy does not define physical abuse, the common understanding of the term is the "cruel or violent treatment of someone; specif., physical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury" or "to injure (a person) physically or mentally." *Black's Law Dictionary* (11th ed. 2019). And it cannot be challenged that the intentional murder of a person constitutes injury or maltreatment to them as well.

### 6. Application of the Primary Policy's exclusions does not require a final adjudication of Husel's guilt.

Husel's assertion that TAL is required to indemnify him for his criminal defense expenses unless and until he is adjudged guilty of murder is wholly without merit. Indeed, courts regularly deny insureds' requests for the advancement of defense costs prior to the final adjudication of the underlying claim. *See, e.g.*, *Holloway Sportswear, Inc.*, 58 F. App'x. at 175 (holding that insurer was not required to provide a defense prior to final adjudication of the claim where "complaint did not contain a claim that arguably triggers coverage"); *In re Kenai Corp.*, 136 B.R. 59, 63–64 (S.D.N.Y. 1992) (collecting cases); *Ward*, 129 Ohio St. 3d at 295; *Spiegel*, 277 Ill.App.3d at 342; *Wedge Prods.*, 31 Ohio St. 3d at 67; *Jaffe*, 168 Cal. App. 3d at 935; *Chiquita Brands Int'l, Inc.*, 988 N.E.2d at 900. Indeed, this only makes sense in conjunction with indemnification policies, like the Primary Policy, where there is a duty to indemnify but no duty to actually defend, because if the Court "were to require insurers to advance defense costs before resolution of the underlying action, insurers inevitably would pay some losses that are not covered by their policies," resulting in prejudice to such insurers, "even if the insureds were required to reimburse the insurers for these costs once it was determined that the losses were not covered by the policy." *In re Kenai Corp.* 136 B.R. at 64.

Husel's reliance upon *In re Enron Corporation Securities*, 391 F. Supp. 2d 541 (S.D. Tex. 2005) to suggest that TAL must indemnify him until there is a final adjudication of his guilt also is misplaced. The court in *Enron* specifically noted that there is a split among the courts with regard to whether insurers have a duty to reimburse defense costs as they are incurred. *Id.* at 573–74. And the *Enron* court further noted that in many of the actions where

20

advancement of defense costs was required, the applicable policies required indemnification of "any amount the insureds became 'legally obligated to pay.'"  *Id*. at 574.  The quoted language was critical to the determination in those cases, because "[t]he only reasonable interpretation [of that phrase] is that [the duty to pay] arises at the time the insured becomes 'legally obligated to pay.'"  *Id*. (quoting *Little v. MGIC Idem. Corp.*, 836 F.2d 789 (3d Cir. 1987)).  Here, however, while the Primary Policy's definition of "Loss" also contains such language, Defense Expenses are expressly excluded from that definition, and the definition of Defenses Expenses does not contain this supposedly critical language.  *See* Primary Policy, Dkt. 1-3 at PageID 67, 71.

Husel also has no basis for relying upon the exclusions for wrongful acts in the Excess and High Excess Policies to suggest that TAL must indemnify defense costs until there is a final adjudication of the Murder Indictments. *See* Dkt. 4 at PageID 325.  As discussed above, the plain language of those Policies make clear that they do not provide for indemnification of defense costs arising from Healthcare Professional Liability claims.  *See supra* at 6, n.4.  The exclusions contained in those Policies are thus irrelevant, as there is no basis to argue that an exclusion in an inapplicable, separate policy, can modify the coverage and exclusions contained in the Primary Policy.

## II.   Husel will not suffer irreparable harm because he is neither being denied a defense nor has established himself as incapable of paying for his own defense.

Husel also is not entitled to injunctive relief because he cannot "demonstrate, by clear and convincing evidence, actual irreparable harm or the existence of an actual threat of such

injury." *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 969 (6th Cir. 2002).  To constitute

irreparable harm, the "injury must be certain, great, and actual."  *Lucero v. Detroit Pub. Sch.*,

160 F. Supp. 2d 767, 801 (E.D. Mich. 2001).

Husel claims that he will be unable to obtain an "appropriate defense" without the

advancement of defense costs, because he does not have "adequate funds to defend himself."

Dkt. 4 at PageID 331–32.  However, he fails to support either of these assertions: he has neither

shown that he is unable to afford competent counsel due to his financial condition, nor that he

needs a particular attorney to mount such "appropriate defense."  (*Id.*)

And absent clear and convincing evidence supporting his claim of irreparable harm,

Husel is not entitled to injunctive relief.  *See Mongelli II v. Chicago Ins. Co.*, No. 99 CV 8149,

2002 WL 32096578 (E.D.N.Y Jan. 15, 2002) (denying the advancement of defense costs,

because "Plaintiff's alleged injury is purely financial—the cost of retaining different counsel

at this stage of his ongoing litigation" and "[f]inancial burdens do not constitute irreparable

harm, since a monetary award would compensate for the injury suffered") (attached as Ex. 5);

*Stuckey v. Nat. Union Fire Ins. Co. of Pittsburgh, PA.*, 131 F. Supp.3d 73, 85 (S.D.N.Y. 2015)

(denying injunction where "Plaintiff offers no evidence that he is unable to continue paying

counsel, nor . . . any realistic prospect that he will 'suddenly' be unable to do so."); *Dover

Steel Co. v. Hartford Accident and Indemnity Co.*, 806 F. Supp. 63, 66 (E.D. Pa. 1992)

(denying injunctive relief where plaintiff failed to introduce "financial statements, tax returns,

general ledgers, or other documentary evidence of [its] financial health" to support its claim of irreparable harm).

Moreover, even if Husel establishes that he is unable to afford an attorney, he still has a constitutional right to appointed counsel by the State of Ohio. And Husel has made no evidentiary showing that reliance upon the Ohio public defender's office for counsel constitutes irreparable harm. Accordingly, there is no risk of violating Husel's right to assistance of counsel under the Sixth Amendment.

## III. The balance of equities favors denial of coverage for criminal defense.

The balance of the equities also favors the denial of coverage for Husel's criminal defense costs.

The only potential risk to Husel if this injunction is denied is that he would merely continue to be responsible for his own defense costs. While this may mean that he is not able to afford the attorney of his choice, Husel mischaracterizes this as harm to his "basic constitutional rights" that "puts his liberty at stake." Dkt. 4 at PageID 332. But again, Husel does not have a constitutional right to the attorney of his choice. His right to counsel merely extends to an attorney that he chooses and can also afford. *See Luis v. United States*, 578 U.S. __; 136 S. Ct. 1083, 1089 (2016). And if he is unable to afford Mr. Baez, Husel is already ably represented by Columbus-based attorney Diane Menashe and can also exercise his constitutional right to a public defender.

In sum, Husel wants the best defense attorney he believes money can buy—without having to ever pay for it. The only possible harm to him following the denial of coverage for his criminal defense is that he may be unable to hire the attorney of his choosing because he cannot afford him, not that he would be unable to be represented by competent counsel.

On the other hand, forcing TAL to advance Husel's criminal defense costs prior to any determination that such defense costs are covered under the Primary Policy would certainly harm TAL, which is unlikely to ever be able to recover those funds. Indeed, to the extent that Husel presents evidence showing that he is financially unable to afford his attorneys, that evidence equally proves that he will be unable to repay TAL for those amounts should TAL ultimately succeed in this dispute. *See In re Kenai Corp.*, 136 B.R. at 64 (holding that requiring insurers to advance defense costs under these circumstances is prejudicial to the insurer, which "inevitably would pay some losses that are not covered by their policies.").

Additionally, Husel incorrectly suggests that he is entitled to choose anyone as his counsel because of an alleged "conflict" created by the Reservation of Rights letters. Such a conflict only arises, however, if the same attorney is selected to represent Husel in both the Civil Actions and the Murder Indictments. And as Ohio courts have held, an insurer may issue a reservation of rights letter and then retain independent counsel for an insured without creating a conflict that allows the insured to choose his own counsel. *See Red Head Brass, Inc. v. Buckeye Union Ins. Co.*, 135 Ohio App.3d 616, 626 (Ohio Ct. App. 1999) (insurer's reservation of rights letter does not entitle insured to select independent counsel "so long as the

24

situation does not arise that the insurer's defense of the insured and its defense of its own interests are mutually exclusive"). That is exactly what TAL did in the Civil Actions.

## IV. The public interest is best served by denying Husel's Motion.

Finally, denying Husel's Motion best serves the public interest. Requiring the advancement of fees to defend claims of murder would effectively allow parties to create "murderer insurance"—providing criminals with the ability to commit crimes knowing that they could then hire an army of attorneys at their insurer's expense to fight the charges against them. This of course would serve to incentivize individuals to commit such crimes, and is hardly in the best interest of the public. That is why it is against public policy to allow for the indemnification of intentional acts. *See Chiquita Brands Int'l, Inc.*, 988 N.E.2d at 900 (citations omitted) ("Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts.").

Dated: September 23, 2019

Respectfully submitted,

/s/ Jason Abel_____
Jason Abel
Sara Brundage
Mohamed Awan
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000
*Attorneys for Defendant Trinity Assurance Limited*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23, 2019 a copy of the foregoing was filed with the Court using the ECF system which will send notification of such filing to all attorneys of record.

s/ Mohamed Awan

Mohamed Awan (P77402)

2290 First National Building

660 Woodward Avenue

Detroit, MI 48226-3506

313-465-7296

mawan@honigman.com
