**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

DR. WILLIAM S. HUSEL, M.O.

       Plaintiff,

          – against –

TRINITY HEALTH
CORPORATION, and TRINITY
ASSURANCE LIMITED
(CAYMAN),

          Defendants.

Case No.: 19-CV-12478-GCS-DRG

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION AND DECLARATORY**
**RELIEF AGAINST TRINITY ASSURANCE LIMITED (CAYMAN)**

October 7, 2019

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................................1

LEGAL ARGUMENT........................................................................................1

    I.   Dr. Husel is a named third-party beneficiary of the Policies and is entitled to collect directly from TAL, if THC continues to refuse to comply with its "duty to defend"........................................................................................1

    II.  Dr. Husel was acting within the scope of his employment when he prescribed the pain medication that forms the basis of the allegations in the criminal proceeding, and as such he is an "Insured" entitled to coverage for his claim against the Policy....................................................2

    III. The Policies provide Defense Expenses for claims based on Criminal Proceedings as plainly stated in the policies .............................................3

CONCLUSION....................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amerisure Mut. Ins. Co. v. Carey Transp., Inc.*,
  578 F. Supp. 2d 888 (W.D. Mich. 2008) ........................................................6, 7

*Bryant v. Brannen*,
  180 Mich. App. 87, 99, 446 N.W.2d 847, 853 (1989) ...............................2 FN. 1

*Hamed v. Wayne Co.*,
  490 Mich. 1, 10 – 11, 803 N.W.2d 237 (2011) ...................................................2

*Kolstad*,
  527 U.S. 526 (1999) ............................................................................................2

*McDougald v. Garber*
  73 NY2d 246, 251**,** ......................................................................................7 FN 3

*Tyson v. Connecticut Gen. Life Ins. Co.*,
  495 F. Supp. 240 (E.D. Mich. 1980) ...................................................................1

*Unencumbered Assets, Tr. v. Great Am. Ins. Co.*,
  817 F. Supp. 2d 1014 (S.D. Ohio 2011) ..............................................................6

## Statutes and Rules

Rest. 2d Agency § 229 ...............................................................................................3

## PRELIMINARY STATEMENT

Dr. Husel is defending himself against twenty-five counts of murder for writing prescription pain-relief medication for terminally-ill ICU patients *after* they had been removed from life support on their families' wishes. While laws were written to protect palliative care doctors who are tasked with making subjective decisions regarding the appropriate amount of pain relief to be administered necessary to prevent undue suffering as a patient lay dying, obtaining the benefit of those laws and his ultimate exoneration on these criminal charges requires skillful defense counsel to guide his way. Thankfully, he is the beneficiary of an Integrated Risk Insurance Policy (and follow form policies) that unambiguously provide coverage for his Defense Expenses in "criminal proceedings."

## ARGUMENT

I.   **Dr. Husel is a named third-party beneficiary of the Policies and is entitled to collect directly from TAL, if THC continues to refuse to comply with its "duty to defend."**

TAL starts with the assertion that it cannot be forced to advance Dr. Husel's defense costs because the insurance contract is between THC and TAL and Dr. Husel is not a party to that contract. TAL ignores universally accepted black-letter law: Contracts entered into between employers and an insurance company for the benefit of the employees of the employer are enforceable by the employee

1

beneficiary against the insurer. *See e.g.*, *Tyson v. Connecticut Gen. Life Ins. Co.*, 495 F. Supp. 240, 243 (E.D. Mich. 1980) citing Corbin on Contracts § 807.

**II.    Dr. Husel was acting within the scope of his employment when he prescribed the pain medication that forms the basis of the allegations in the criminal proceeding, and as such he is an "Insured" entitled to coverage for his claim against the Policy.**

TAL argues that Dr. Husel should be denied coverage because he was acting outside of the scope of his employment when he prescribed the pain medication at the heart of criminal indictment because "purposeful murder" was not part of his employment duties. This argument confuses how courts analyze scope of employment for purposes of determining coverage. "Within the scope of employment" means "engaged in the service of his master, or while about his master's business" Hamed *v. Wayne Co*., 490 Mich. 1, 10–11 (Mich. 2011) (citations omitted).  Indeed, "even intentional [acts] are within the scope of an agent's employment if the conduct is 'the kind [the employee] is employed to perform,' 'occurs substantially within the authorized time and space limits,' and 'is actuated, at least in part, by a purpose to serve the' employer." *Kolstad*, 527 U.S. 526, 543 (1999) (citations omitted).[1]

---

[1] Michigan follows the Restatement (Second) of Agency in determining whether an act by an employee is within the scope of employment.  *See Bryant v. Brannen,* 180 Mich. App. 87, 99 (1989). The Restatement explains: (1) To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized. Restatement (Second) of Agency § 229 (1957) (quoted in *Bryant,* 180 Mich. App. at 99-100).

The key issue, therefore, is whether Dr. Husel's actions were of the same general nature as that authorized, or incidental to the conduct authorized. Dr. Husel was required to administer pain medication to terminally ill ICU patients after having been removed from life support.  These actions form the basis of the criminal indictment.  He was acting within the scope of his employment.

## III.   The Policies provide Defense Expenses for claims based on Criminal Proceedings as plainly stated in the policies.

The crux of this case is whether Dr. Husel's claim against TAL (and THC) for advancement of Defense Expenses is covered under the policies. Both THC and TAL address this issue by intentionally mixing up the difference between Husel's "claim" against the policy and the underlying civil and criminal proceedings that form the "Loss Event" on which coverage is based for those proceedings. TAL acknowledges that what constitutes a "claim" covered under the policy is not defined or explicit, and is therefore ambiguous.[2]  (TAL Br. pg. 15)  TAL then asserts that the "claim" at issue is a "claim" for "purposeful murder" or is a "claim" based on a "The Murder Indictments." (TAL Br. pg. 12)  Based on this argument for the definition of the word "claim," TAL argues that Husel's "claim" for Defense Expenses incurred in connection with a Loss Event is not covered under the Primary Policy because "purposeful murder" and "Murder Indictments"

---

[2] Indeed, TAL's assertion that the word "claim" is ambiguous, and it is not clear "which claims are covered under the policy" itself provides sufficient grounds to find that Dr. Husel's claim is covered because all ambiguities in the insurance policy must be resolved in Dr. Husel's favor.

3

are not covered by the Policy.

This is bootstrapping. The relevant "claim" that the insurance company must consider is Husel's claim on the policy, and it must look to the allegations that form the basis of the liability for which coverage is sought.  Indeed, as TAL highlighted in its own brief, "The duty to indemnify for defense costs…does not attach where the *conduct* alleged is indisputably outside the scope of coverage." (TAL Br. pg. 11-12, citing *Chiquita Brands Int'l Inc*.) (emphasis added). Put another way, *and to use TAL's own words*, "[t]o determine whether a party has a duty to defend, the Court must examine *the allegations* in the underlying action." (TAL Br. pg.12) (emphasis added).  The allegations in "the underlying action" are that Dr. Husel prescribed pain relief to patients that had been removed from life support in a dosage larger than the prosecutor and insurance company believe necessary. The question is whether this *conduct* results in liability that the policy intended to cover. It does.  The alleged "acts" constitute a "Loss Event," under the unambiguous Policy Definitions and Coverage, and thus Dr. Husel's claim here is covered. Repeating that "purposeful murder" is not covered under the policy ignores the actual necessary analysis.

TAL hinges its remaining arguments on the position that the policy is not intended to cover defense expenses resulting from criminal proceedings because "exclusions" apply.  But these exclusions make clear two critical points, which contradict TAL's position.  First, that "Loss Events" are entitled to coverage

4

without allegations of "Loss." (Because they are defined differently and appear in the exclusions as different basis for coverage, Part I B 4 "Any Claim, **Loss** or **Loss Event**. . . ").  Second, that coverage for criminal liability is *explicitly intended*.  It is the exclusion for "physical abuse" that makes clear that no exclusion is intended to take claims for Defense Expenses for criminal proceedings out of coverage, until and unless a final non-appealable determination as to the conduct has been made.

Dr. Husel agrees with TAL and THC that the criminal indictment subjects Dr. Husel to criminal liability based on allegations of "physical abuse," which is listed as an "exclusion" to Coverage under parts I and II of the policy. (TAL Br. pg. 19). Yet the Policy explicitly states that this "exclusion" does not take effect until final non-appealable adjudication, which has not occurred here.  Specifically, the policy states, "Coverage under Part I [and II] of this Policy does not apply to Any claim, **Loss** or **Loss Event** arising out of any physical abuse. . . However, this exclusion does not apply: unless it is determined (i) by final and non-appealable adjudication in any civil or criminal proceeding. . . ."  It is only *after* this non-appealable finding, the policy makes absolutely clear, that "coverage for Defense Expenses for such Insured will cease." Prior to any such determination, THC has a duty to defend Dr. Husel and TAL has the duty to indemnify. There is no good faith argument that this policy excludes defense expenses for criminal proceedings, since the policy provides that such payments will be made until a non-appealable adjudication, and only at that point will defense expenses "cease."

Since Defense Expenses based on allegations of "physical abuse" alleged in a criminal proceeding are entitled to coverage until final adjudication, it would be illogical to read the very next exclusions as excluding Defense Expenses for allegations stemming from willful violations of penal statutes and "non-pecuniary relief" as intended to exclude advancement for Defense Expenses in all criminal proceedings *ab initio*. For example, in *Unencumbered Assets, Tr. v. Great Am. Ins. Co.,* a case addressing exclusions drafted with language asserting they only applied after a final determination – as the relevant exclusions here – the court found coverage was not appropriately precluded until *after* jury conviction and the Sixth Circuit upheld it. 817 F. Supp. 2d 1014, 1032 (S.D. Ohio 2011).[3]  To be clear, Michigan courts strictly construe exclusions and ambiguities in favor of the insured, against the insurer. *Amerisure Mut. Ins. Co. v. Carey Transp., Inc.,* 578 F. Supp. 2d 888, 901 (W.D. Mich. 2008).

Notably, nothing in the Policy explicitly excludes claims for Defense Expenses for criminal proceedings until after final adjudication – and as such the Court should interpret coverage in favor of Dr. Husel.  If this court finds outstanding issues of fact must be resolved before a final determination can be

---

[3] There, the court found "[t]he language is clear. If a 'judgment or other final adjudication' establishes that the insured party committed a 'deliberately fraudulent or dishonest act,'" then he will not receive coverage for any claim brought about by his fraudulent or dishonest act. *Id.*

made, then THC's duty to defend by advancing costs to Dr. Husel should begin immediately and only cease if a different determination is made.[4] *See Carey Transp., Inc.,* 578 F. Supp. 2d at 927. ("there was enough uncertainty that Amerisure had a duty to defend [Insured] in the underlying action, at least initially.")

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for a preliminary injunction declaring that Defendants must advance Defense Expenses to Dr. Husel so that he may properly defend himself in the criminal action.

Dated: October 7, 2019

Respectfully submitted,

FORD O'BRIEN LLP
Adam C. Ford
Robert S. Landy
575 Fifth Avenue 17th Floor
New York, NY 10017
(212) 858-0040
aford@fordobrien.com
*Attorneys for Plaintiff Dr. William S. Husel*

---

[4] Nor does the exclusion for "non-pecuniary relief" apply to criminal proceedings. In his opening brief, Dr. Husel explained that this exclusion referred to an Insured seeking from the Insurer something other than monetary relief, such as injunctive relief from the insurance company.  It is also possible – although unlikely – that this exclusion prohibits Dr. Husel from making a claim for non-quantifiable damages, including certain physical and emotional injuries.  Regardless, this exclusion has nothing to do with excluding Defense Expenses for a criminal proceeding.