UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DR. WILLIAM S. HUSEL, M.O.<br><br>Plaintiff,<br><br>– against –<br><br>TRINITY HEALTH CORPORATION, and TRINITY ASSURANCE LIMITED (CAYMAN),<br><br>Defendants. | Case No.: 19-CV-12478-GCS-DRG |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND DECLARATORY RELIEF AGAINST TRINITY HEALTH CORPORATION**

October 7, 2019

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................1

    I.    Contrary to THC's Argument, the Policy Provides Coverage for "Loss Events," Which Is Defined Differently than "Loss" and Includes "Defenses Expenses" "Incurred In Connection" With "Liability" Arising Out of "Any Act, Error or Omission in the Furnishing of or Failure to Furnish Medical Services" ...................................................................1

    II.   A Preliminary Injunction Is Appropriate Here ...........................................5

    III.  THC Must Abide by its Contractual Obligations as a Matter of Public Policy ..........................................................................................................6

CONCLUSION ..............................................................................................7

Case 2:19-cv-12478-GCS-DRG ECF No. 18 filed 10/07/19 PageID.515 Page 3 of 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abercrombie & Fitch Co. v. Fed. Ins. Co.,*
   No. 2:06-CV-831, 2009 WL 150676, at *2 (S.D. Ohio Jan. 21, 2009), *aff'd,* 370 F. App'x 563 (6th Cir. 2010)..............................................................................5

*Amerisure Mut. Ins. Co. v. Carey Transp., Inc.*,
   578 F. Supp. 2d 888 (W.D. Mich. 2008) ............................................................5

*Busch v. Holmes*,
   256 Mich. App. 4; 662 N.W.2d 64 (2003) ..........................................................4

*Cincinnati Indemnity Co. v. Martin*,
   85 Ohio St.3d 604 (Ohio 1999)...........................................................................4

*In re WorldCom, Inc., Securities Litigation*
   354 F.Supp.2d 455, 469 (S.D.N.Y.2005)............................................................6

*The Unencumbered Assets Tr. v. Great Am. Ins. Co.*,
   No. 2:04 CV 908, 2007 WL 2029063, at *7 (S.D. Ohio July 10, 2007)............5

*XL Specialty Insurance Co. v. Level Global Investors*, L.P
   874 F.Supp.2d 263, 272 (S.D.N.Y.2012). ..........................................................

ii

# ARGUMENT

I. **Contrary to THC's Argument, the Policy Provides Coverage for "Loss Events," Which Is Defined Differently than "Loss" and Includes "Defenses Expenses" "Incurred In Connection" With "Liability" Arising Out Of "Any Act, Error or Omission in the Furnishing of or Failure to Furnish Medical Services"**

THC's (as well as TAL's) primary argument is that for a claim against the policy to be covered there must be a "Loss," and Dr. Husel only alleges a "Loss Event." ("Husel must establish that he may be obligated to pay damages to others as a result of the [Indictment]") (THC Br. 16). In support of this position, THC suggests that under "Part I Coverage" there is no reference to a "Loss Event," only a "Loss." (*Id.* pg. 8). In making this deceptive argument, THC conceals two critical points from the Court. First, "Loss" and "Loss Event" are separately defined. While "Loss" is circumscribed to "damages imposed by law" or "assumed by the Insured under contract" (Integrated Risk Liability Policy, pg. 26), "Loss Event" is defined broadly to encompass *any* "liability" whether civil or criminal arising out of "any act, error or omission in the furnishing of or failure to furnish medical services," including "all related acts, errors or omissions" that "result[] in injury." (Integrated Risk Liability Policy, pg. 26 - 27). Second, the policy itself expressly provides for $15,000,000 for "each Loss Event." Thus, *the cover page* and Declarations of the Policy provides:

1

| Item IV. | Policy Number: | V-18/19-INTPR-1001 |
|---|---|---|
| Item V. | Limits of Liability: | |
| | Part I.<br>**Healthcare Professional Liability** and **Managed Care Liability** | $15,000,000 Each **Loss Event**, inclusive of $1,000,000 retention |

Defendants also propose that "Loss Event" is not used under Part I Coverage, and thus "Loss Events" do not qualify for coverage. But the reason "Loss Event" is not under Part I (or Parts II-V) is because that defined term is used to encompass all five Coverage Parts. Indeed, the very first page of the policy – above the coverage sections – applicable to all five Coverage Parts provides:

> **TRINITY ASSURANCE, LTD.**
> **INTEGRATED RISK LIABILITY POLICY**
>
> CERTAIN COVERAGE PARTS UNDER THIS POLICY PROVIDE CLAIMS MADE COVERAGE. IN THOSE CASES, COVERAGE APPLIES TO CLAIMS THAT ARE FIRST MADE AGAINST THE **INSURED** AND REPORTED TO THE COMPANY DURING THIS **COVERAGE PERIOD** ARISING OUT OF **LOSS EVENTS** OCCURRING ON OR SUBSEQUENT TO THE **INSURED'S RETROACTIVE DATE.**

The policy expressly includes coverage for insurance claims "ARISING OUT OF **LOSS EVENTS**" as Dr. Husel's claims here do. In further support of their misleading argument that the Policy only covers insurance claims subject to a "Loss," Defendants refer to only the first paragraph in Part I Coverage, excising the second paragraph entirely. But both paragraphs read together express a clear intent to provide two distinct types of coverage. First, they permit Dr. Husel to make a claim for coverage of "Loss," which Dr. Husel is *not* seeking here, and

2

second, they permit Dr. Husel to make a claim for coverage of "Defense Expenses" arising from "Healthcare Professional Liability."

> Part I. **HEALTHCARE PROFESSIONAL LIABILITY** AND **MANAGED CARE LIABILITY**
>
> A. COVERAGE
>
> The Company will indemnify the **First Named Insured** for such **Loss** arising from **Healthcare Professional Liability** or **Managed Care Liability** in excess of the applicable retention which an **Insured** shall become obligated to pay as a result of a claim first made against the **Insured** and reported to the Company during the **Coverage Period** which arises from a **Medical Incident** or **Managed Care Incident** that occurs within the **Policy Territory** on or subsequent to the **Insured**'s **Retroactive Date** and prior to the **Insured**'s **Termination Date**. Such coverage shall be subject to the limit of liability specified in the Declarations Page and the limitations, terms, exclusions and conditions herein.
>
> The Company will also indemnify the **First Named Insured** for **Defense Expenses** incurred in connection with a claim arising from **Healthcare Professional Liability** or **Managed Care Liability** covered under this Policy, even if any of the allegations of the claim are groundless, false or fraudulent. The Company shall not, however, be obligated to indemnify the **First Named Insured** for **Defense Expenses** after the applicable limit of the Company's liability has been exhausted by payment of **Loss**.

This second paragraph provides that the insurer, TAL, will provide Defense Expenses (for which THC has the "duty to defend") incurred in connection with liability arising from the furnishing of Medical Services such as the "furnishing of medication." The Policy states that it will provide this coverage *in addition to* coverage for "Loss." Nowhere does the Policy suggest that this second paragraph is intended to provide only Defense Expenses for claims where there is a "Loss," as THC asserts. Quite the contrary, in Part I B, Exclusions, the Policy explicitly distinguishes between (1) Claims, (2) Losses, and (3) Loss Events, thus further undermining TAL's request that the Court read the specifically defined term "Loss Event" to mean the exact same thing as "Loss." If the Policy intended to define

3

"Loss Events" as an event giving rise to "Loss" (as defined), and only intended to cover claims that could result in "Loss" the Policy would have said so. It does not.

Having started from the false proposition that the Policy covers only "Loss," THC then satisfies itself by reciting a litany of "exclusions" that supposedly preclude coverage for Dr. Husel's claim – even though the exclusions unambiguously provide that liability based on allegations of "physical abuse," as THC argues is the case here, is entitled to coverage until the alleged conduct has been established pursuant to final, non-appealable adjudication. And, as set forth more fully in Dr. Husel's opening memorandum and in his reply to TAL, none of the exclusions preclude coverage for his claim against the Policy.

Unable to defend their position by referring directly to the Policy language, THC highlights inapposite cases, such as *Busch v. Holmes*, 256 Mich. App. 4 (Mich Ct. App. 2003) and *Cincinnati Indemnity Co. v. Martin*, 85 Ohio St.3d 604 (Ohio 1999). Neither case applies here, since they each involved an insurance policy that *did not include any duty to defend* and expressly excluded certain conduct, which was determined to have occurred because Defendants admitted to it. In other words, both cases involved materially different policies, policy language, and underlying facts. The "duty to defend" language THC agreed to as part of its policy obligations, along with the "exclusion" language from Part 1 that

4

only kicks in *after a final and non-appealable determination*, makes Defendants' cases inapplicable.

## II.     A Preliminary Injunction Is Appropriate Here

THC appears to argue that this case is not subject to summary disposition on the papers, and that this case should be litigated through trial before the Court determines whether coverage is applicable. But courts in the Sixth Circuit following Ohio and Michigan law consistently find that claims for insurance coverage should be decided summarily – and when they are not, advancement for legal fees must be ordered until a final determination is made that they are not required. *See Amerisure Mut. Ins. Co. v. Carey Transp., Inc.*, 578 F. Supp. 2d 888, 926–27 (W.D. Mich. 2008). Indeed, once the court interprets the insurance policy to include a duty to defend and to advance Defense Expenses – as the Policy here unambiguously does – courts are inclined to require advancement "until a different allocation is judicially determined." *See Abercrombie & Fitch Co. v. Fed. Ins. Co.*, 2009 WL 150676, at *2 (S.D. Ohio Jan. 21, 2009), *aff'd,* 370 F. Appx. 563 (6th Cir. 2010).

THC's blanket assertion that failure to advance legal fees can never constitute irreparable harm (THC Opp. Br. pg. 19–23) contradicts the law. While courts in the Sixth Circuit have had few opportunities to consider the question whether refusal to advance defense expenses constitutes irreparable harm in

5

criminal proceedings, they have consistently approved looking towards and relying on cases from outside the Circuit. Thus, the Court may consider the persuasive reasoning of numerous courts that have held, "[t]he failure to receive defense costs under a professional liability policy at the time they are incurred constitutes an immediate and direct injury sufficient to satisfy the irreparable harm requirement." *See, e.g.*, *In re WorldCom, Inc., Securities Litigation*, 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005) ("It is impossible to predict or quantify the impact on a litigant of a failure to have adequate representation at this critical stage of litigation…The impact of an adverse judgment will have ramifications beyond the money that will necessarily be involved…") Similarly, in *XL Specialty Insurance Co. v. Level Global Investors*, *L.P.*, the court granted a preliminary injunction finding if the insurer was "not directed to resume paying [the] costs [of the insureds' criminal defense], the insureds are likely to suffer 'extreme or very serious damage,' the highest of standards the Second Circuit uses to measure irreparable harm."  874 F. Supp. 2d 263, 272 (S.D.N.Y. 2012).

### III. THC Must Abide by its Contractual Obligations as a Matter of Public Policy

THC's argument that Ohio and Michigan law preclude insurance from covering "criminal liability" is a red herring.  While public policy precludes coverage *after* a finding of criminal liability, there is no public policy or law precluding an "integrated risk" policy from covering Defense Expenses to defend

6

against criminal allegations. Thus, THC attempts to fall back on the position that "THC is a Catholic healthcare institution with clearly stated principles relating to end of life care, and forcing it to provide defense expenses…violates those principles." This argument fails to set forth any legitimate public policy concerns, and is otherwise offensive, especially since THC has agreed to provide defense expenses for civil lawsuits alleging *intentional torts*[1] against Dr. Husel based on the exact same underlying conduct. Rather, it would be against public policy to permit health care providers to avoid contractual obligations. Having hired Dr. Husel to provide palliative care as an ICU doctor (and having purchased an insurance policy for him as required under his employment agreement) THC must now defend against any liability incurred in connection with alleged acts, errors, or omissions in connection with that care. THC should uphold its end of its bargain.

Dated: October 7, 2019

Respectfully submitted,

_____
FORD O'BRIEN LLP
Adam C. Ford
Robert S. Landy
575 Fifth Avenue 17th Floor
New York, NY 10017
(212) 858-0040
aford@fordobrien.com

*Attorneys for Plaintiff Dr. William S. Husel*

---

[1] As THC knows, its suggestion that the civil suits against Dr. Husel assert only causes of action for negligence is wrong and appears calculated to mislead the Court.