UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM S. HUSEL,

           Plaintiff,

    v.

TRINITY HEALTH CORP. and
TRINITY ASSURANCE LIMITED,

           Defendants.

_____/

CASE NO. 19-CV-12478

HON. GEORGE CARAM STEEH

**ORDER DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION (ECF No. 4)**

Plaintiff Dr. William S. Husel has brought suit against the insurer,

Trinity Assurance Limited ("TAL"), and the first named insured Trinity

Health Corporation ("THC"), seeking declaratory judgment that Defendants

must pay his defense costs in the criminal proceedings pending against

him on 25-counts of murder.  Now before the court is Plaintiff's motion for a

preliminary injunction to compel Defendants to advance all defense

expenses to him in the criminal action.  On October 16, 2019, this court

heard over two hours of argument on this matter.  Counsel for both sides

are to be commended for their presentations.  Having failed to demonstrate

a likelihood of success on the merits, irreparable harm, or that the public

would be served by the issuance of a preliminary injunction, Plaintiff's motion shall be denied.

## I. Factual Background

Dr. Husel worked as a doctor in the Intensive Care Unit at Ohio's Mount Carmel West, a Catholic Hospital. Mount Carmel West is a subsidary of the parent corporation THC which is a named defendant in this lawsuit, along with the insurer TAL. Plaintiff's employer is Mount Carmel Health Providers, Inc. ("MCHP"). Under his employment agreement, MCHP obtained and paid for professional liability insurance. THC obtained four separate indemnification contracts (the "Policies"), only one of which provides for potential indemnification of defense expenses, the Integrated Risk Liability Policy (the "Policy").

Dr. Husel was terminated on December 5, 2018, following an investigation that determined he had ordered significantly excessive and potentially fatal doses of pain medication for at least 27 patients who were near death. On January 25, 2019, the Ohio State Medical Board suspended Plaintiff's medical license, and issued its finding that Plaintiff's continued practice "present[ed] a danger of immediate and serious harm to the public." Dr. Husel was indicted on June 5, 2019 in Franklin County, Ohio, with causing the death of 25 individuals between February 10, 2015

and November, 2018.  All of his patients died after Dr. Husel allegedly prescribed a lethal dose of pain medication, sometimes fentanyl, after his patients were removed from life support.  There are currently 30 pending civil claims for negligence and wrongful death against Dr. Husel.  THC assigned civil defense counsel to defend Dr. Husel in these civil actions, but TAL has issued several reservation of rights letters relating to the civil complaints.  Husel has hired as his criminal defense attorney, Jose Baez, a high-profile attorney who has represented Casey Anthony, Aaron Hernandez, and Harvey Weinstein.

In early August, 2019, Dr. Husel made a demand on THC/TAL for defense expenses in connection with the criminal indictments.  On August 5, 2019, TAL issued a denial of coverage with respect to his request.

## II. Standard of Law

The court must consider the following four factors when ruling on a motion for preliminary injunction:

> (1) whether the movant has a strong likelihood of success on the merits; [(2)] whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.

*Bailey v. Callaghan*, 715 F.3d 956, 958 (6th Cir. 2013) (quoting *Hunter v.*

*Hamilton Cty. Bd. of Elections,* 635 F.3d 219, 233 (6th Cir. 2011)).  Under these four factors, Plaintiff is not entitled to injunctive relief.

### III. Analysis

### A.    Likelihood of Success on the Merits

Although the court must conduct a balancing test of the four preliminary injunction factors, "a finding that there is simply no likelihood of success on the merits is usually fatal."  *Gonzales v. Nat'l Bd. of Med. Exam's*, 225 F.3d 620, 625 (6th Cir. 2000).  Here, based on the plain language of the policy, Plaintiff has not demonstrated a likelihood that Defendants must advance defense costs in his criminal case.[1]

### 1.    Choice of Law

In reaching its decision here, the court first must address which law governs.  The insurance policies do not provide for any choice of law.  This case involves an Ohio Plaintiff, Defendant THC is incorporated in Indiana with its principal place of business in Michigan, and Defendant TAL is incorporated and has its principal place of business in the Cayman Islands.  The parties have referenced both Michigan and Ohio law in their briefs.

---

[1]In analyzing this issue, the court has rejected TAL's argument that TAL's duty to indemnify is solely to THC and not to Plaintiff.  Contracts between employers and insurance companies for the benefit of employees of the employer are enforceable by the beneficiary against the insurer.  *Tyson v. Connecticut Gen. Life Ins. Co.*, 495 F. Supp. 240, 243 (E.D. Mich. 1980) (citing Corbin on Contracts § 807); *Elom v. Fidelity & Guar. Ins. Co.,* 208 F. Supp. 2d 867, 868 (N.D. Ohio 2002).

Both agree that whether this court applies Michigan or Ohio law will not change the court's analysis. Accordingly, the court proceeds under the law of both Michigan and Ohio.

**2.    Standard of Law for Interpretation of an Insurance Policy**

It is settled law in both Michigan and Ohio that an insurance policy is a contract between the insurer and insured, is governed by the same principles used to interpret ordinary contracts, and must be read as a whole to give meaning to all of their terms. *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 553 (6th Cir. 2003); *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997); *Ward v. United Foundries, Inc.*, 951 N.E.2d 770, 773 (Ohio 2011). Any ambiguity in an insurance policy is construed in favor of the insured. *Cincinnati Ins. Co.*, 329 F.3d at 553. But the court must be careful not to read an ambiguity into a policy where none exists. *Moore v. First Sec. Cas. Co.*, 568 N.W.2d 841, 844 (Mich. App. 1997). An "insurer only has a duty to defend the insured if the charges against the insured in the underlying action arguably fall within the language of the policy." *Advance Watch Co., Ltd v. Kemper Nat. Ins. Co.*, 99 F.3d 795, 799 (6th Cir. 1996) (internal quotation marks and citation omitted).

3.    **The Policy**

The most important question for the court to decide is if the Policy

language requires Defendant-insurer TAL to advance defense costs in

Plaintiff's criminal prosecution.  The court begins this analysis by analyzing

the relevant provisions in the Policy.  First, the Policy defines coverage as

follows:

> The Company will indemnify the **First Named Insured** for
> such **Loss** arising from **Healthcare Professional Liability**
> or **Managed Care Liability** in excess of the applicable
> retention which an **Insured** shall become obligated to pay
> as a result of a claim first made against the **Insured** and
> reported to the Company during the **Coverage Period**
> which arises from a **Medical Incident** or **Managed Care
> Incident** that occurs within the **Policy Territory** on or
> subsequent to the **Insured's Retroactive Date** and prior
> to the **Insured's Termination Date.**  Such coverage shall
> be subject to the limit of liability specified in the
> Declarations Page and the limitations, terms, exclusions
> and conditions herein.
>
> The Company will also indemnify the **First Named Insured**
> for **Defense Expenses** incurred in connection with a claim
> arising from **Healthcare Professional Liability**  or
> **Managed Care Liability** covered under this Policy, even if
> any of the allegations of the claim are groundless, false or
> fraudulent.  The Company shall not, however, be obligated
> to indemnify the **First Named Insured** for **Defense
> Expenses** after the applicable limit of the Company's
> liability has been exhausted by payment of **Loss.**

(ECF No. 1-3, PageID.50) (emphasis in original).  Plaintiff argues that

criminal defense costs are covered under the Policy's definition of Defense

- 6 -

Expenses which is set forth below:

> **Defense Expenses** means those amounts incurred in the investigation, adjustment, defense, settlement, or adjudication of any claim brought against an **Insured** that is covered under this Policy.  **Defense Expenses** include (1) legal expenses, attorney's fees, and court costs.

*Id.* at PageID.67 (emphasis in original).  The Policy does not define the term "claim."  Black's Law Dictionary defines an insurance claim as follows: "A policyholder's formal report to an insurance company about a loss with a request for a payment based on the insurance policy's terms."  Black's Law Dictionary (11th ed. 2019).  The Policy defines Loss as follows:

> **Loss** means all sums which the **Insured** becomes legally obligated to pay to others as damages, whether imposed by law by reason of judgment or settlement, or assumed by the **Insured** under contract, because of a claim covered under this Policy.  **Loss** includes pre-judgment interest and post-judgment interest.  **Loss** does not include **Defense Expenses**.

*Id.* at  PageID.71 (emphasis in original).  Plaintiff argues coverage is not limited to Losses, as defined in the Policy, but extends to "Loss Events" which the Policy defines in relevant part, as "[a]s respects Part I, **Healthcare Professional Liability** and **Managed Care Liability**: A **Medical Incident** or **Managed Care Incident."**  *Id.* at PageID.71 (emphasis in original).  This is consistent with the Coverage Provision set forth in Part I, A of the Policy which states that coverage exists for losses

arising out of claims which arise from a "Medical Incident" or "Managed Care Incident."  *Id.* at PageID.50 (emphasis in original). The Policy further defines a "Medical Incident" as "any act, error or omission in the furnishing of or failure to furnish **Medical Services**."  *Id.* at PageID.72 (emphasis in original).

Giving the Policy its plain meaning, it is clear that it provides coverage for "Loss" which is defined as "all sums which [Plaintiff] becomes legally obligated to pay to others as damages."  *Id.* at PageID.71.  While Plaintiff is correct the Policy defines "Loss Event" as a "Medical Incident" which is further defined as "any act, error or omission in the furnishing or failure to furnish Medical Services," this language does not broaden coverage beyond liability for civil damages claims, but merely sets forth with specificity those events for which a claim may arise.  A criminal prosecution is not a "claim" which will result in a "sum" that Plaintiff will be obligated to pay as damages.  A successful prosecution by the state would result in a criminal conviction.  The Policy at issue here is a professional liability and managed care liability policy to cover the risk of civil damages claims, not the risk of public prosecution for crimes committed in the provision of medical services.

Also, the Policy expressly excludes coverage for (1) any claim

"seeking non-pecuniary relief," (2) "the knowing and willful violation of a penal statute," and (3) for "physical abuse."  *Id.* at PageID.51.  The mandatory punishment for a murder conviction under ORC § 2903.02 is life imprisonment or death, neither of which is pecuniary.  It is significant to note that the Indictment in this case does not seek damages.  (ECF No. 15-3).  Even if the criminal indictment is interpreted to seek a fine in addition to imprisonment, courts do not consider such to be pecuniary relief.  Courts in other jurisdictions faced with similar policies as here, have found that criminal actions do not invoke coverage under policies covering "damages." *See, e.g., Potomac Elec. Power Co. v. California Union Ins. Co.*, 777 F. Supp. 980, 983-84 (D.D.C. 1991) (fees incurred in defending against possible criminal charges are not recoverable under a liability policy because "fines and incarcerations" are not damages, and "allowing fees spent on criminal defense to be recovered under a liability policy would violate public policy."); *State Farm Fire & Cas. Co. v. Superior Ct.*, 191 Cal. App. 3d 74, 78 (1987) ("Restitution is ordered as punishment in a criminal case.  No conceivable justification exists for allowing an individual to pass on such liability to an insurance carrier."); *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 935 (1985) (no duty to defend in criminal suit under malpractice policy because duty to defend arises from insurer's coverage

- 9 -

obligations and where there is no potential for coverage, there is no duty to defend and distinguishing between restitution and damages); *Spiegel v. State Farm Fire & Cas. Co.*, 277 Ill. App. 3d 340, 342 (1995) (no coverage for criminal defense costs where criminal complaint does not seek damages but is penal in nature).

In his Reply, Plaintiff argues that *Unencumbered Assets, Tr. v. Great Am. Ins. Co.*, 817 F. Supp. 2d 1014, 1032 (S.D. Ohio 2011) supports his position that defense costs are owing. In that case, which involved a Directors and Officers Liability Policy, the court held that the insurer was not liable for criminal defense costs because the insureds were convicted of securities fraud and wire fraud and other charges. *Id.* at 1032. The district court did not address the issue here as to whether criminal defense costs are owing at the time criminal charges are brought against an insured, and there is no discussion of the policy language which would have required an advancement of defense costs. In addition, when summarizing the procedural history of the case, the district court noted that the insured's prior motion for the advancement of defense costs was denied for a myriad of defects. *Id.* at 1021-22.

Next, the court considers the exclusion, which provides there is no coverage for "[a] claim arising from the knowing and willful violation of a

penal statute committed by or with the knowledge of the **Insured.**" *Id.* at PageID.51, ¶ 5 (emphasis in original).  The murder indictment alleges that Plaintiff "purposely caused the death" of 25 people in violation of ORC § 2903.02.  Plaintiff has failed to demonstrate why this exclusion would not preclude coverage here.  Also, the exclusion for '[a] claim arising from the knowing and willful violation of a penal statute," does not require a final adjudication of guilt to be implicated. *Id.* at PageID.51, ¶5.  By contrast, the policy very clearly sets forth that the exclusion for claims arising out of sexual acts and misconduct are only excluded when it is determined "(i) by final and non-appealable adjudication in any civil or criminal proceeding, or (ii) by a plea of nolo contendere in any criminal proceeding, or (iii) by such **Insured's** admission in any context, or (iv) otherwise to the **First Named Insured's** satisfaction, that such **Insured** did commit such sexual act or misconduct." *Id.* at PageID.51, ¶ 4.b).   Where the policy very clearly limits the exclusion for sexual acts or misconduct by requiring an adjudication of guilt, it is significant that the policy contains no such prerequisite for the exclusion for "[a] claim arising from the knowing and willful violation of a penal statute."

The final exclusion provides there is no coverage for "[a]ny claim, **Loss** or **Loss Event** arising out of any physical abuse." *Id.*  Plaintiff, on the

- 11 -

other hand, relies on the caveat that the "physical abuse" exclusion does not apply unless it is determined:

> by final and non-appealable adjudication in any civil or criminal proceeding . . . that such **Insured** did commit such . . . misconduct.  If it is so determined that such **Insured** committed such . . . misconduct, coverage for **Defense Expenses** for such **Insured** will cease, and the Company will not indemnify for any **Loss.**"

*Id.* (emphasis in original).  Plaintiff argues that since defense expenses "cease" upon final adjudication of misconduct, this implies that defense expenses are available in a criminal prosecution for misconduct prior to final judgment.  The problem with Plaintiff's argument is that "Defense Expenses" are limited to "claims" brought against the Insured for which coverage exists.  There is no coverage for criminal prosecutions.

Finally, the court considers two other provisions of the Policy which Plaintiff argues supports his position that the Policy requires Defendants to pay his defenses in the criminal prosecution.  First, the first paragraph of the Policy provides:

> CERTAIN COVERAGE PARTS UNDER THIS POLICY PROVIDE CLAIMS MADE COVERAGE.  IN THOSE CASES, COVERAGE APPLIES TO CLAIMS THAT ARE FIRST MADE AGAINST THE **INSURED** AND REPORTED TO THE COMPANY DURING THIS **COVERAGE PERIOD** ARISING OUT OF **LOSS EVENTS** OCCURRING ON OR SUBSEQUENT TO THE **INSURED'S RETROACTIVE DATE**.

*Id.* at PageID.50 (emphasis in original).  Plaintiff argues this provision

means coverage exists for "Loss Events" which need not involve the

obligation to pay a sum as damages, but may extend to a criminal

prosecution.  But the above quoted language states that "COVERAGE

APPLIES TO CLAIMS THAT ARE FIRST MADE AGAINST THE

**INSURED**," and for the reasons discussed above, a "claim" does not

include a criminal prosecution.  Second, Plaintiff argues that because the

Policy provides for "$15,000,000" for each "Loss Event," this means that

Defendants are obligated to provide criminal defense costs for "Loss

Events."  But Plaintiff's suggestion that "Loss Event" includes relief for a

criminal prosecution is inconsistent with the coverage provision of the

Policy, *id.* at PageID.50, and the Policy's definition of "Defense Expenses,"

*id.* at PageID.67, both of which define coverage for "claims" brought against

the insured.  Also, the policy defines coverage for "Losses" and as counsel

for TAL argued at the hearing of this matter, it is possible to have multiple

losses arising out of one "Loss Event," as for example, in the case of blood

contamination which might give rise to 15 civil lawsuits.  The purpose of the

"Loss Event" provision, as opposed to the "Loss" provision, is to set forth

policy limits for such an occurrence as set forth on the Declarations page.

*Id.* at PageID.46, Item V.  It is not to expand on recoverable losses under

the policy which are limited to sums awarded as damages.  *Id.* at PageID.71, ¶ R.

Plaintiff also argues that because the policy does not define "liability," the ordinary meaning of liability which includes liability for criminal and civil, cases should apply.  Plaintiff is correct that Black's Law Dictionary does define liability liberally to mean, "The quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment."  Black's Law Dictionary (11th ed. 2019).  But Plaintiff has failed to show language in the policy establishing that defense costs are required based on the risk of criminal liability.  In fact, as discussed above, the policy covers losses an insured is required to pay as damages, and the insurer is required to provide defense expenses for claims brought against an insured for which coverage exists under the policy.  *Id.* at PageID.50, 67, 71.

Plaintiff also directs the court to Follow-Form policies, but Defendants respond that the Follow-Form Policies do not apply until certain defined amounts have been exhausted which has not occurred here (ECR No. 1-4, PageID.106; ECF No. 1-5, PageID.119; ECF No. 1-6, PageID.156).  Thus, for purposes of the preliminary injunction hearing, the court limits its analysis to the Policy.  Also, the Follow-Form Policies explicitly exclude

indemnification for defense costs.  Specifically, the Follow-Form Buffer

Policy provides, "The Company will not indemnify the **Insured** for any

**Defense Expenses** incurred in connection with a claim covered by this

Policy."  (ECF No. 1-4, PageID.106) (emphasis in original).

4.    **Precedent in the Cases Involving Director and Officer Policies Fails to Support Coverage in this Case**

Plaintiff relies on several cases, most of which involve Director and

Officer Policies, not Healthcare Professional Liability Policies.   Plaintiff

relies primarily on *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, 391 F.

Supp. 2d 541 (S.D. Tex. 2005), where the court found an excess liability

policy covered defense costs in a criminal prosecution.  To the extent *In re*

*Enron Corp.* is persuasive authority, it is distinguishable.  In that case, the

Policy specifically defined claim as "any demand, suit *or proceeding* against

any DIRECTORS and/or OFFICERS during the POLICY PERIOD,  . . .

which seeks actual monetary damages or other relief."  *Id.* at 569.  Unlike in

this case, the Policy referenced a "proceeding" and provided coverage

beyond mere monetary damages as it referred to "other relief."  Also, the

policies provided coverage for any "ULTIMATE NET LOSS," expressly

including defense costs, that an officer or director becomes legally

obligated to pay arising out of a "WRONGFUL ACT" committed in his

capacity as a director or officer of Enron.  *Id.* at 571.  The definition of

"wrongful act" included conduct that could be considered criminal in nature. Also, there was an exclusion of coverage for fines imposed in a criminal suit, and an exemption for claims where a "final adjudication" found that an officer or director acted criminally.  *Id.* at 572.  The court found these exemptions would not be necessary if the policy did not cover defense costs in a criminal case.  *Id.*  By contrast, there is no comparable policy language in this suit.  Also, the prosecution of securities violations is different than the prosecution of murder charges.  To provide coverage for the defense of securities crimes may be intended in the context of a Directors and Officers Professional Liability policy, whereas coverage for murder appears well outside the scope of the professional liability policy at stake here.

## 5.   Duty to Defend in Civil Cases Does Not Implicate Duty to Defend in Criminal Cases

At oral argument, Plaintiff's counsel argued that because Defendant THC is defending Dr. Husel in the 30 pending civil claims for negligence and wrongful death, it must also defend him in the criminal cases as civil and criminal cases arise out of the same alleged wrongdoing.  Plaintiff's counsel further argued that defense costs in the criminal cases are owing because convictions in the criminal cases would eviscerate Defendants' obligation to defend in the civil cases which will likely be decided after the

criminal prosecution. While Plaintiff is no doubt correct that criminal convictions would bar coverage for civil defense costs, this unfortunate possibility for Dr. Husel cannot be used to rewrite the plain language of the policy which simply does not provide for defense costs in a criminal case.

### 6. Ohio Law Prohibits Liability Insurance for Criminal Conduct

Finally, as TAL argues, Ohio law disfavors insurance for criminal conduct. In *Gearing v. Nationwide Ins. Co.*, 665 N.W.3d 1115, 1120 (Ohio 1996), the Ohio Supreme Court held than an insured could not recover defense costs under his homeowner's policy arising out of civil litigation alleging he sexually molested minors. The Court stressed the policy was intended to cover accidents not intentional acts, and emphasized that "[t]he public policy of the state of Ohio precludes issuance of insurance to provide liability coverage for injuries produced by criminal acts." *Id.* The Court also stated "[l]iability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial, criminal conduct." *Id.* at 1118. This general public policy suggests that Dr. Husel's professional liability insurer is not responsible for providing criminal defense expenses.

In sum, based on the plain language of the Policy and persuasive precedent interpreting similar policies, Plaintiff is unlikely to succeed on the merits of his claim that Defendants are required to advance defense costs

now. In reaching its decision that Plaintiff is unlikely to prevail on the merits, the court need not reach TAL's argument that Plaintiff cannot be considered an "insured" as he was acting outside the scope of his employment when he allegedly murdered his patients.

In response to Defendants' argument that Dr. Husel was acting outside the scope of his employment, Plaintiff responded at oral argument that Mount Carmel West Hospital had no policies in place regarding the specific amount of pain relief that could be administered to patients during the process of removing life support. Following oral argument, Plaintiff filed a request for leave to file a supplemental brief to support counsel's representation (ECF No. 21). Defendants oppose the motion on the grounds that Plaintiff already filed two briefs and participated in a lengthy hearing regarding his motion for injunctive relief where he could have offered the evidence but did not. In addition, Defendants argue the policy is irrelevant, hearsay, and not supported by the evidence. Plaintiff's purpose for submitting the supplemental brief is to respond to Defendants' argument that he was not acting within the scope of his employment when the patients were allegedly murdered, thus coverage is excluded under a specific exclusion of the policy. Because the court has not based its decision here on the issue of whether Dr. Husel was acting within the

scope of his employment, the materials sought to be supplemented are irrelevant.  Accordingly, Plaintiff's request to file a supplemental brief shall be denied as moot.

## B.    Irreparable Harm

Next, the court considers whether Plaintiff will be irreparably harmed if Defendants do not advance defense costs in his criminal case.  Plaintiff argues he will be irreparably harmed if THC is not compelled to advance his defense costs because he will not have adequate funds to defend himself and might risk a conviction.  Defendants respond that Plaintiff is represented by criminal counsel and has made no showing that he is indigent or unable to secure counsel.  Indeed, at the preliminary injunction hearing, Dr. Husel presented no evidence that he is incapable of paying for an attorney.  Even if he were indigent, the Sixth Amendment guarantees him the right to assistance of counsel, by appointment if necessary.  *Wheat v. United States*, 486 U.S. 153, 159 (1988).  Plaintiff has not demonstrated irreparable harm.

Plaintiff relies on *In re WorldCom, Inc. v. Sec. Litig.*, 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005), where the court held that the insured had demonstrated irreparable harm if the insurer were not compelled to advance defense costs in massive federal securities law claims including a

class action.  But that case involved civil, not criminal claims.  Also, Plaintiff relies on *XL Specialty Ins. Co. v. Level Global Invest., L.P.*, 874 F. Supp. 2d 263, 272 (S.D.N.Y. 2012), which involved a federal criminal investigation involving insider trading in the federal securities context, where the court found the insureds would be irreparably harmed if the insurer ceased advancing defense costs.  Unlike here, in that case, there was no dispute that the policy covered criminal defense costs, only an issue of fact as to whether the claim was excluded for the insured's failure to make necessary disclosures at the time of contracting.  Once again, the distinction here is that *XL Specialty* involved officers and directors accused of securities violations whose policy covered criminal defense costs, and this case involves murder charges where the policy does not cover criminal defense costs.

## C.   Substantial Harm to Third Parties

The issuance of a preliminary injunction will have no appreciable impact on non-parties in this case; thus, it is appropriate for this court to give this factor less consideration.

## D.   Public Interest

Finally, the court considers whether the public interest would be served by the issuance of an injunction.  Plaintiff argues he faces serious

criminal charges which put his liberty interests at stake.  THC, on the other hand, argues it is a Catholic healthcare institution with clearly stated principles relating to end of life care, and forcing it to provide defense expenses in this case, would cause it harm.  TAL argues that if Plaintiff is unable to afford the attorney of his choosing, that also means that Plaintiff will be unable to repay it should TAL ultimately prevail in this case.  TAL argues the public interest favors denying injunctive relief else the court will be providing for "murder insurance" by providing criminals with the ability to commit crimes knowing they could hire an attorney at their insurer's expense.  Considering these arguments, the public interest supports denying the preliminary injunction.  Equities tip in favor of Defendants to protect THC's Catholic principles on end of life issues, to comport with public policy that liability insurance does not exist to relieve wrongdoers for intentional criminal conduct, and to fulfill the court's obligation to read the insurance contract by its plain and unambiguous terms.

## IV. Conclusion

Having failed to demonstrate a likelihood of success on the merits, irreparable harm, or that the equities favor injunctive relief, Plaintiff's motion for a preliminary injunction (ECF No. 4) is DENIED.

Plaintiff's motion to file a supplemental brief (ECF No.21) is DENIED as MOOT.

**IT IS SO ORDERED**.

Dated:  January 8, 2020

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE