UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. WILLIAM S. HUSEL, M.O.,

       Plaintiff,

vs.

TRINITY HEALTH CORPORATION, and
TRINITY ASSURANCE LIMITED,

       Defendants.

Case No.: 19-cv-12478

Hon. George Caram Steeh

/
_____

## DEFENDANT TRINITY ASSURANCE LIMITED'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Trinity Assurance Limited ("TAL") respectfully moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint because he fails to state a claim on which relief can be granted.  The grounds and legal authority are set forth in the accompanying memorandum.

Pursuant to Local Rule 7.1(a), TAL requested Plaintiff's consent to this motion, and Plaintiff does not consent.

Dated: February 12, 2020

Respectfully submitted,

HONIGMAN LLP
*Attorneys for Defendant Trinity*
*Assurance Limited (Cayman)*

By: /s/    *Jason R. Abel*
      Jason R. Abel (P70408)
      Sara J. Brundage (P75791)
      Mohamed Awan (P77402)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000
jabel@honigman.com
sbrundage@honigman.com
mawan@honigman.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. WILLIAM S. HUSEL, M.O.,

       Plaintiff,

vs.

TRINITY HEALTH CORPORATION, and
TRINITY ASSURANCE LIMITED,

       Defendants.

Case No.: 19-cv-12478

Hon. George Caram Steeh

/

_____

**MEMORANDUM IN SUPPORT OF
TRINITY ASSURANCE LIMITED'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................1

FACTUAL BACKGROUND .............................................................................3

LEGAL STANDARD .......................................................................................6

ARGUMENT ....................................................................................................6

    I.     Plaintiff Fails to State a Claim for Breach of Contract (Count IV) Because the Primary Policy Does Not Cover the Murder Indictments. ...........................................................................................6

          A.    TAL's obligation to indemnify defense costs is limited to covered claims. ..................................................................6

          B.    The Murder Indictments are not a covered claim under the Primary Policy because they cannot result in a "Loss." ...................................................................................8

          C.    The Primary Policy's exclusions also preclude indemnification of Husel's criminal defense expenses. ..............10

          D.    Ohio law does not permit insurance for criminal conduct..........12

          E.    Husel is not an "Insured" under the Primary Policy because the Murder Indictments accuse him of conduct outside the scope of his employment. ...............................13

    II.    Husel Fails to State a Viable Claim for Declaratory Judgment (Count I). ...................................................................................14

    III.   Husel Fails to State Viable Claims for Specific Performance and Injunctive Relief (Counts II & III). ...................................................14

CONCLUSION ..............................................................................................15

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................6

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................6

*Berger Enterprises v. Zurich Am. Ins. Co.,*
   No. 15-CV-13879, 2016 WL 4011262 (E.D. Mich. July 27, 2016) .........................14

*Chiquita Brands Int'l, Inc. v. Nat. Union Ins. Co.,*
   988 N.E.2d 897 (Ohio Ct. App. 2013) ................................................7, 13

*Farm Bureau Gen. Ins. Co. of Mich. v. Blue Cross Blue Shield,*
   655 F. App'x 483 (6th Cir. 2016) ........................................................3

*Gearing v. Nationwide Ins. Co.,*
   76 Ohio St. 3d 34 (1996). ................................................................7, 12

*Holloway Sportswear, Inc. v. Transp. Ins. Co.,*
   58 F. App'x. 172 (6th Cir. 2003) .........................................................8

*Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.,*
   108 F.3d 658 (6th Cir. 1997) ............................................................14

*Jaffe v. Cranford Ins. Co.,*
   168 Cal. App. 3d 930 (1985) ............................................................10

*Luxury Limousine, Inc. v. Nat'l Indem. Co.,*
   No. 19-10893, 2019 WL 3714458 (E.D. Mich. Aug. 7, 2019) ...............................15

*Potomac Electric Power Co. v. California Union Ins. Co.,*
   777 F. Supp. 980 (D.D.C. 1991) .........................................................10

*Sharonville v. Am. Employers Ins. Co.,*
   109 Ohio St. 3d 186 (2006) .............................................................11

*Spiegel v. State Farm Fire and Cas. Co.,*
   277 Ill. App. 3d 340 (1995) .............................................................10

*Thomas Noe, Inc. v. Homestead Ins. Co.*,
173 F.3d 581 (6th Cir. 1999) ...................................................................11

*Ward v. United Foundries, Inc.*,
129 Ohio St. 3d 292 (2011).......................................................................7

*Wedge Prods. v. Hartford Equity Sales Co.*,
31 Ohio St. 3d 65 (1987) ........................................................................13

**Statutes**

Ohio Revised Code § 2903.02 .......................................................................3

Ohio Revised Code § 2929.02 .....................................................................12

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)..................................................9, 12

Restatement (Second) Agency § 229...........................................................13

**Rules**

Fed. R. Civ. P. 12(b)(6). ...............................................................................6

## STATEMENT OF ISSUES PRESENTED

1. Should this Court dismiss Plaintiff's causes of action for breach of contract and declaratory judgment because the Murder Indictments are not covered claims under a plain reading of the relevant policy as that policy only covers claims that could give rise to a "Loss"—defined as damages, excluding defense costs—and the Murder Indictments cannot result in damages?

2. Should this Court dismiss Plaintiff's causes of action for breach of contract and declaratory judgment because several policy exclusions preclude coverage of defense costs in conjunction with the Murder Indictments, including exclusions for claims seeking non-pecuniary relief and those arising from physical abuse or willful violation of penal statutes?

3. Should this Court dismiss Plaintiff's causes of action for breach of contract and declaratory judgment because Plaintiff cannot be an "insured" under the policies with regard to the Murder Indictments, since he would have been acting outside the scope of his employment in murdering his patients?

4. Should this Court dismiss Plaintiff's causes of action for breach of contract and declaratory judgment because requiring TAL to advance Plaintiff's criminal defense costs would be against Ohio law and public policy, which disfavor insurance for criminal conduct?

5. Should this Court dismiss Plaintiff's causes of action for specific performance and injunctive relief because specific performance is a remedy, not a cause of action, and because both counts are rendered moot by the Court's Order Denying Plaintiff's Motion for a Preliminary Injunction?

TAL answers "yes" to each of these questions.

# MOST APPROPRIATE AUTHORITY

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................6

*Gearing v. Nationwide Ins. Co.*,
    76 Ohio St. 3d 34 (1996). ................................................................7, 12

*Holloway Sportswear, Inc. v. Transp. Ins. Co.*,
    58 F. App'x. 172 (6th Cir. 2003)............................................................8

*Ward v. United Foundries, Inc.*,
    129 Ohio St. 3d 292 (2011)......................................................................7

## INTRODUCTION

Defendant Trinity Assurance Limited ("TAL") has no obligation to indemnify Plaintiff Dr. William Husel ("Husel") for his criminal defense costs.  Husel's theory that TAL must pay all of his costs associated with engaging defense counsel to defend him against 25 counts of murder fails as a matter of law.

TAL's professional liability indemnification policies with Co-Defendant Trinity Health Corporation ("THC") require TAL to indemnify THC and to advance defense costs to THC for claims defended by THC that are covered by those policies.  Consistent with its obligations under those policies and under a reservation of rights, TAL advanced defense costs to THC to defend against numerous civil actions brought against THC and Husel seeking damages for, among other things, alleged medical negligence and wrongful death arising from Husel's administration of lethal doses of drugs to certain of his patients (the "Civil Actions").

In an attempt to capitalize on TAL's good faith advancement of defense costs in the Civil Actions, Husel filed suit against TAL and THC claiming that TAL must also pay all of the costs associated with hiring a criminal defense attorney to defend him against the 25 counts of purposeful murder for which he has been charged (the "Murder Indictments").  Husel's Complaint contains causes of action for: Declaratory Judgment, Specific Performance, Preliminary and Permanent Injunctions, and Breach of Contract.  However, based on a plain reading of the policies, and the fact that the parties do not dispute the

material facts, the Court should dismiss the Complaint for failure to state a claim.

First, Husel's Breach of Contract (Count IV) and Declaratory Judgment (Count I) Counts fail because:

- The Murder Indictments are not covered claims under a plain reading of the relevant policy because that policy only covers claims that could give rise to a "Loss"—defined as damages, excluding defense costs—and the Murder Indictments cannot result in damages;

- Several policy exclusions preclude coverage of defense costs in conjunction with the Murder Indictments, including exclusions for claims seeking non-pecuniary relief and those arising from physical abuse or willful violation of penal statutes;

- Husel cannot be an "insured" under the policies with regard to the Murder Indictments, since he would have been acting outside the scope of his employment in murdering his patients; and

- Requiring TAL to advance Husel's criminal defense costs would be against Ohio law and public policy, which disfavor insurance for criminal conduct.

Second, Husel fails to state a claim for Specific Performance and Preliminary Injunction (Count II) and Specific Performance and Permanent Injunction (Count III) because specific performance is a remedy, not a cause of action, and because both Counts are rendered moot by the Court's Order Denying Plaintiff's Motion for a Preliminary Injunction ("Order"). *See* Dkt. 26.

Indeed, as the Court noted in that Order, "the Policy at issue here is a professional liability and managed care liability policy to cover the risk of civil damages claims, not the risk of public prosecution for crimes committed in the provision of medical services." *Id.* at PageID.804. Husel's Complaint should be dismissed.

2

## FACTUAL BACKGROUND

### I.    The Lawsuits and Murder Indictments

Husel worked as a physician in the Intensive Care Unit of Mount Carmel West hospital (the "Hospital") in Columbus, Ohio from 2013 until 2018.  Dkt. 1 at PageID.3.  In December 2018, Husel was fired by the Hospital after an internal investigation revealed that he ordered excessive and potentially fatal doses of painkillers that allegedly led to at least 25 patient deaths.  *See* Dkt. 1-3 at PageID.173 (June 5, 2019 Columbus Dispatch Article).[1]

After the results of the investigation became public, numerous Civil Actions were filed against Husel, the Hospital and its staff, and the Hospital's parent company, THC.  *See* Dkt. 1 at PageID.8-10.  The Civil Actions, examples of which are attached to Husel's Complaint, seek damages against Husel and the other named defendants for negligence and wrongful death, among other causes of action.  *See* Dkt. 1-13 at PageID.279–81.

In June 2019, Husel was indicted on 25 counts of "Murder" under Ohio Revised Code ("ORC") § 2903.02 (the "Murder Indictments").  *See* Dkt. 1 at PageID.12-13; Dkt. 1-7 at PageID.163-72.  Each count of the Murder Indictments states that the grand jury found that Husel "did purposefully cause the death" of a separate individual.  Dkt. 1-7.

---

[1] Husel attaches the June 5, 2019 Columbus Dispatch article to his Complaint.  The Court may review documents cited in "and central to the plaintiff's claim[s]" when considering a motion to dismiss.  *Farm Bureau Gen. Ins. Co. of Mich. v. Blue Cross Blue Shield*, 655 F. App'x 483, 487 (6th Cir. 2016).

## II.   The Relevant Agreement

Husel is not a party to any agreement with THC or TAL.  He entered into an employment agreement, effective June 24, 2018 with Mount Carmel Health Providers, Inc., an affiliate of THC.  *See* Dkt. 1-2 at PageID.29.  THC obtained four separate indemnification contracts (collectively, the "Policies") from TAL covering healthcare professional liability.  *See* Dkt. 15 at PageID.419.  Most pertinent to this Motion is the Integrated Risk Liability Policy, Policy No. V-18/19-INTPR-1001 (the "Primary Policy"). *See* Dkt. 1-3 at PageID.46-103.

Specifically, the Primary Policy provides that: "[TAL] will also indemnify the **First Named Insured [(*e.g.*, THC)]** for **Defense Expenses** incurred in connection with a claim arising from **Healthcare Professional Liability** or **Managed Care Liability** covered under this Policy, even if any of the allegations of the claim are groundless, false or fraudulent." Dkt. 1-3 at PageID.50.

The plain language of the Primary Policy requires TAL to indemnify THC for defense costs.  *See* Dkt. 4 at PageID.324 ("While it is TAL that must indemnify Trinity Health").  THC then bears the obligation to actually defend covered claims.  *See* Primary Policy, Dkt. 1-3 at PageID.79 ("[THC] has the duty to defend all claims that are covered by this policy.")  Notably, there is no provision in the Primary Policy that requires TAL to pay Husel's defense costs, allows Husel to undertake his own defense of a covered claim, or engage his own counsel at TAL's expense.

4

### III.   TAL's Reservations of Rights and Denial of Coverage

In connection with the Civil Actions, TAL issued several Reservation of Rights letters to THC. *See* Dkt. 1 at PageID.11-12; Dkt. 1-10 at PageID.231-46; Dkt. 1-11 at PageID.247-54.  In each letter, TAL notes that plaintiffs in the Civil Actions are seeking damages and have asserted causes of action that included negligence.  *See* Dkt. 1-10 at PageID.231-46.  Based on these claims, and because TAL "assume[d] the allegations to be true for purposes of coverage," TAL reserved its rights and defenses with regard to coverage but agreed to advance THC's defense expenses in conjunction with THC's defense of the Civil Actions.  *Id.*

On August 5, 2019, TAL issued a denial letter to THC with regard to the Murder Indictments, denying coverage under the Policies because, among other things, the Murder Indictments were not a covered claim under the Policies for which defense expenses are required to be paid to THC.  *See* Dkt. 1 at PageID.13-14; Dkt. 1-11 at PageID.247-50.

### IV.   Husel's Action Against THC and TAL

On August 22, 2019, following TAL's denial of coverage to THC, Husel filed this action against both THC and TAL asserting the following "causes of action": (i) Declaratory Judgment; (ii) Specific Performance and Preliminary Injunction; (iii) Specific Performance and Permanent Injunction; and (iv) Breach of Contract.  *See* Dkt. 1 at PageID.20-26.

Husel then filed a motion for preliminary injunctive relief, seeking an injunction to

force TAL to advance directly to Husel all of Husel's defense costs in his criminal case. The Court rightly denied that motion. *See* Dkt. 26. As discussed below, Husel's Complaint is without merit and should be dismissed.

## LEGAL STANDARD

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Though a complaint need not contain "detailed factual allegations," it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 668 (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

### I. Plaintiff Fails to State a Claim for Breach of Contract (Count IV) Because the Primary Policy Does Not Cover the Murder Indictments.

#### A. TAL's obligation to indemnify defense costs is limited to covered claims.

In interpreting a policy of insurance or indemnification, the Court must "look to the

policy language and rely on the plain and ordinary meaning of the words used to ascertain the intent of the parties to the contract." *Ward v. United Foundries, Inc.*, 129 Ohio St. 3d 292, 295 (2011). It is well-settled that "an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy." *Gearing v. Nationwide Ins. Co*., 76 Ohio St. 3d 34, 36 (1996). The duty to indemnify for defense costs thus "does not attach where the conduct alleged is indisputably outside the scope of coverage." *Chiquita Brands Int'l, Inc. v. Nat. Union Ins. Co*., 988 N.E.2d 897, 900 (Ohio Ct. App. 2013).

To determine whether a party has a duty to defend, the Court must examine the allegations in the underlying action. "If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action. But if all the claims are clearly and indisputably outside the contracted coverage, the insurer need not defend the insured." *Ward*, 129 Ohio St. 3d at 295.

Here, there is only one claim in the Murder Indictments: that Husel "did purposefully cause the death" of 25 people in violation of ORC § 2903.02, which provides that "whoever violates this section is guilty of murder. . . ." *See* Dkt. 1-7 at PageID.163-72. Unlike the Civil Actions, the Murder Indictments do not accuse Husel of negligence or merely suggest that he "hastened" his patients' death. Nor can Husel expand the scope of the allegations in the Murder Indictments by bringing in claims from the Civil Actions.

*See Holloway Sportswear, Inc. v. Transp. Ins. Co.*, 58 F. App'x. 172, 175 (6th Cir. 2003) ("courts need not stretch the allegations beyond reason to impose a duty on the insurer" because it "would effectively impose an absolute duty on the insurer to provide a defense to the insured regardless of the cause of action stated in the complaint.").

Determining whether TAL owes an obligation to indemnify defense costs associated with the Murder Indictments thus turns on whether the Primary Policy covers murder.  It does not.

> **B.    The Murder Indictments are not a covered claim under the Primary Policy because they cannot result in a "Loss."**

The plain language of the Primary Policy makes clear that TAL is not obligated to indemnify Husel for his criminal defense costs because the Murder Indictments cannot result in a "Loss."  As discussed above, TAL's obligation under the Primary Policy is to indemnify THC "for Defense Expenses incurred in connection ***with a claim*** arising from Healthcare Professional Liability or Managed Care Liability ***covered under this Policy***[.]" Primary Policy, Dkt. 1-3 at PageID.50 (emphasis added).  "Defense Expenses" are then defined as "amounts incurred in the investigation, adjustment, defense, settlement, or adjudication of any ***claim*** brought against an Insured ***that is covered under this Policy***." *Id.* at PageID.67.

The Primary Policy does not define what constitutes a "claim" that "is covered under this Policy."  As the Court noted in the Order, a claim is "'[a] policyholder's formal report to an insurance company about a **loss** with a request for payment based on the

insurance policy's terms.'"  Dkt. 26 at PageID.803 (citing Black's Law Dictionary (11th ed. 2019) (emphasis added)).  Moreover, the Primary Policy's other "Coverage" provision also describes the scope of covered claims in terms of "Loss," providing that TAL will indemnify THC "for such **Loss** arising from **Healthcare Professional Liability** or **Managed Care Liability**[.]"  Dkt. 1-3 at PageID.50 (emphasis in original.)[2]  Accordingly, there are two prerequisites for coverage under the Primary Policy (subject to exclusions, discussed below): a claim must (i) have the potential to result in a "Loss" and (ii) arise from a Healthcare Professional Liability or Managed Care Liability.

The Murder Indictments, however, cannot result in a covered "Loss," thus precluding coverage.  "Loss" is defined in the Primary Policy as "all sums which the **Insured** becomes legally obligated to pay to others as damages . . . because of a claim covered under this Policy. . . .  Loss does not include **Defense Expenses**."  *Id*. at PageID.71.

Because a Loss does not include the incurring of defense expenses, Husel must establish that he may be obligated to pay damages as a result of the Murder Indictment. He cannot, as "damages" are not possible in conjunction with the Murder Indictments.  As the Court noted in the Order, "[a] criminal prosecution is not a 'claim' which will result in a 'sum' that [Husel] will be obligated to pay as damages."  Dkt. 26 at PageID.804.

---

[2] Husel previously claimed that coverage is provided for both a "Loss" and a "Loss Event." *See* Dkt. 4 at PageID.329.  However, only a "Loss," not a "Loss Event," is mentioned in the coverage provisions of the Primary Policy.  *See* Dkt. 1-3 at PageID.50.

Although the courts of Michigan and Ohio have not directly addressed this issue, courts in other jurisdictions have confirmed that fines and penalties associated with a criminal conviction are not "damages." *See, e.g., Potomac Electric Power Co. v. California Union Ins. Co.,* 777 F. Supp. 980, 983–84 (D.D.C. 1991) ("fees expended in defending [solely] against possible criminal charges are not recoverable under a liability policy" because "criminal punishments—fines and incarceration—are not 'damages' caused to the property of another" and because "allowing fees spent on criminal defense to be recovered under a liability policy would violate public policy"); *Spiegel v. State Farm Fire and Cas. Co.*, 277 Ill. App. 3d 340, 342 (1995) (holding that where policy only covered "damages," no duty to defend in criminal case existed because the criminal indictment did not seek "damages"); *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 935 (1985) (reasoning that "neither imprisonment nor a fine constitute 'damages' for insurance purposes").

Last, as further discussed below, even if Husel were issued a fine for his criminal conduct, "courts do not consider such to be pecuniary relief." *See* Order, Dkt. 26 at PageID.807.

## C. The Primary Policy's exclusions also preclude indemnification of Husel's criminal defense expenses.

Even if the Murder Indictments were within the Primary Policy's coverage provisions (they are not), indemnification of Husel's criminal defense expenses is still precluded by the Primary Policy's exclusions for claims: (1) arising from the knowing and

10

willful violation of penal statutes; (2) for non-pecuniary relief; and (3) for physical abuse.

When an exclusionary clause in an insurance contract is clear and unambiguous, "Ohio law requires that the plain language of the clause be given effect." *Thomas Noe, Inc. v. Homestead Ins. Co.*, 173 F.3d 581 (6th Cir. 1999) (citation omitted). And here, there is no question as to the plain language of the relevant exclusions.

First, the Primary Policy excludes claims "arising from the knowing and willful violation of a penal statute committed by or with the knowledge of the **Insured**." Primary Policy, Dkt. 1-3 at PageID.50 (emphasis in original). Application of this exclusion to this matter is clear: the only allegation in the Murder Indictments is that Husel "purposely caused the death" of 25 people in violation of OCR § 2903.02—Ohio's penal statute defining "murder." Thus the Primary Policy's exclusion for criminal claims clearly precludes coverage. *See Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St. 3d 186, 189 (2006) (stating that an "insurer need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage"). Husel "has failed to demonstrate why this exclusion would not preclude coverage here." *See* Order, Dkt. 26 at PageID.807.

Second, the Murder Indictments are also precluded from coverage under the Primary Policy's exclusion of claims "seeking non-pecuniary relief." Dkt. 1-3 at PageID.50. The mandatory punishment for a murder conviction under ORC § 2902.03 is

either life imprisonment or death, neither of which is pecuniary.  *See* ORC § 2929.02.[3]

Dkt. 26 at PageID.807.

Third, the Primary Policy's exclusion for claims "arising out of any physical abuse"

also precludes coverage for the Murder Indictments.  Although the Primary Policy does

not define physical abuse, the common understanding of the term is the "cruel or violent

treatment of someone; specif., physical or mental maltreatment, often resulting in mental,

emotional, sexual, or physical injury" or "to injure (a person) physically or mentally."

*Black's Law Dictionary* (11th ed. 2019).  And it cannot be challenged that the intentional

murder of a person constitutes injury or maltreatment.

### D.     Ohio law does not permit insurance for criminal conduct.

Leaving aside the plain language of the Primary Policy, that Policy also cannot be

deemed to cover claims of murder because Ohio law forbids it.  The Ohio Supreme Court

made this clear in *Gearing*, holding that "[l]iability insurance does not exist to relieve

wrongdoers of liability for intentional, antisocial, criminal conduct."  *Gearing*, 76 Ohio St.

3d at 38, 40 ("The public policy of the state of Ohio precludes issuance of insurance to

provide liability coverage for injuries produced by criminal acts").  This Court cited to

---

[3] Husel suggested in his preliminary injunction motion that this exclusion does not
apply because "the Indictment seeks pecuniary relief in the form of fines of $15,000 for each
of the 25 counts."  Dkt. 4 at PageID.335.  But as the Court noted in the Order, "[e]ven if the
[Murder Indictments are] interpreted to seek a fine in addition to imprisonment, courts do
not consider such to be pecuniary relief."  Dkt. 26 at PageID.807.

*Gearing* with approval in the Order, finding that the *Gearing* court "stressed the policy was intended to cover accidents not intentional acts."  Dkt. 26 at PageID.813; *see also Wedge Prods. v. Hartford Equity Sales Co.*, 31 Ohio St. 3d 65, 67 ("[P]ublic policy is contrary to insurance against intentional torts."); *Chiquita Brands*, 988 N.E.2d at 900 ("Further, Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts.").  Given this overall public policy, "Husel's professional liability insurer is not responsible for providing criminal defense expenses."  Dkt. 26 at PageID.813.  TAL thus has no obligation to indemnify Husel's defense of the Murder Indictments.

## E. Husel is not an "Insured" under the Primary Policy because the Murder Indictments accuse him of conduct outside the scope of his employment.

Finally, the intentional murder of patients—the crime for which Husel was indicted—is outside the scope of a physician's employment and thus not covered under the Primary Policy.  Under that Policy, an employee of a "Named Insured" may be considered an "Insured" for purposes of determining whether TAL is required to indemnify THC, but only "while [the employee is] acting within the scope of his/her duties as such."  Primary Policy, Dkt. 1-3 at PageID.69.  In determining whether an employee's actions were in the scope of his duties, courts generally utilize the factors found in the Restatement (Second) Agency, which include: "whether or not the act is one commonly done by such servants"; "whether or not the master has reason to expect that such an act will be done"; and "whether or not the act is seriously criminal."  Restatement (Second) Agency § 229.  Here, applying

these factors to the Murder Indictments' allegations—charging Husel with intentional murder arising from purposely causing the death of others—confirms that Husel cannot be considered an employee acting within the scope of his duties when he is alleged to have murdered 25 people.

## II.   Husel Fails to State a Viable Claim for Declaratory Judgment (Count I).

Husel's Declaratory Judgment Count seeks a declaration from the Court that, under the Primary Policy, he is entitled to advancement of legal costs and fees in connection with his defense to the Murder Indictments.   Because Husel's cause of action for breach of contract (Count IV) fails, his cause of action for declaratory judgment is likewise barred. *See Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997) ("A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred.").

## III.   Husel Fails to State Viable Claims for Specific Performance and Injunctive Relief (Counts II & III).

Husel's remaining claims, for specific performance and preliminary and permanent injunctive relief, are deficient and should be dismissed.   Husel's claims for injunctive relief are mooted by the Court's Order, in which the Court described Husel's failure to satisfy the required elements for an injunction.   *See* Dkt. 26 at PageID.800.

As to specific performance, that claim is barred because "specific performance is not a cause of action, it is a remedy."   *Berger Enterprises v. Zurich Am. Ins. Co.*, No. 15-CV-13879, 2016 WL 4011262, at *5 (E.D. Mich. July 27, 2016) (dismissing claim for

14

specific performance) (citation omitted).  And specific performance is only appropriate when there is an "inadequate remedy at law." *Luxury Limousine, Inc. v. Nat'l Indem. Co.*, No. 19-10893, 2019 WL 3714458, at *2 (E.D. Mich. Aug. 7, 2019) (quotation omitted). Husel has made no showing that there is an inadequate remedy at law, as evidenced by the Court's denial of injunctive relief.

## CONCLUSION

For these reasons, TAL respectfully requests dismissal of all causes of action.

Dated: February 12, 2020

Respectfully submitted,
HONIGMAN LLP
*Attorneys for Defendant Trinity*
*Assurance Limited (Cayman)*

By: /s/    *Jason R. Abel*
        Jason R. Abel (P70408)
        Sara J. Brundage (P75791)
        Mohamed Awan (P77402)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000
jabel@honigman.com
sbrundage@honigman.com
mawan@honigman.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2020 a copy of the foregoing was filed with the Court using the ECF system which will send notification of such filing to all attorneys of record.

By: /s/   *Jason R. Abel*
       Jason R. Abel (P70408)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000
jabel@honigman.com
*Attorneys for Defendant Trinity*
*Assurance Limited (Cayman)*

16