**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DR. WILLIAM S. HUSEL, M.O.,

      Plaintiff,

v.

TRINITY HEALTH CORPORATION,        Case No. 19-cv-12478
and TRINITY ASSURANCE LIMITED
(CAYMAN),                       Hon. George Caram Steeh

      Defendants.

---

**DEFENDANT TRINITY HEALTH CORPORATION'S**
**<u>MOTION TO DISMISS</u>**

Defendant, Trinity Health Corporation ("THC"), pursuant to Fed. R. Civ. P.

12(b)(6), hereby moves this Court for an Order granting Defendant's Motion to

Dismiss for the reasons stated in the supporting memorandum.

Pursuant to Local Rule 7.1(a)(1), Defendant's counsel contacted counsel for

Plaintiff on January 23, 2020 to explain the nature of this motion and its legal

basis. Defendant's counsel requested but did not obtain concurrence from

Plaintiff's counsel in the relief sought.

WHEREFORE, THC respectfully requests that the Court grant its Motion to

Dismiss the Complaint, award Defendants costs and attorneys' fees, and grant such

other and further relief as this Court deems just.

Dated:  February 12, 2020

Respectfully submitted,

SCHIFF HARDIN LLP

*/s/ Elise Yu*
John Worden
4 Embaracadero Center, Ste. 1350
San Francisco, CA 94111
415-901-8700 (Telephone)
415-901-8701 (Fax)
jworden@schiffhardin.com (Email)

Elise Yu (P79344)
350 S. Main Street, Ste. 210
Ann Arbor, MI  48104
734-222-1556 (Telephone)
734-222-1501 (Fax)
eyu@schiffhardin.com (Email)

*Attorney for Defendant Trinity Health Corporation*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DR. WILLIAM S. HUSEL, M.O.,

      Plaintiff,

v.

TRINITY HEALTH CORPORATION,          Case No. 19-cv-12478
and TRINITY ASSURANCE LIMITED
(CAYMAN),                         Hon. George Caram Steeh

        Defendants.

---

## DEFENDANT TRINITY HEALTH CORPORATION'S
## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................. ii

I.   INTRODUCTION .......................................................................1

II.  RELEVANT FACTUAL ALLEGATIONS .....................................2

    A.   Plaintiff's Employment, Conduct, and Termination ............................2

    B.   The Civil Lawsuits ..................................................................3

    C.   The Criminal Charges ..............................................................3

    D.   The Relevant Policy at Issue .....................................................4

III. ARGUMENT ............................................................................5

    A.   Motion to Dismiss and Policy Interpretation Standards ......................5

    B.   The Policy Only Covers "Loss," Not "Loss Events" ...........................7

    C.   "Loss" Does Not Include Criminal Penalties—Monetary
        or Otherwise .........................................................................8

    D.   The Policy Does Not Cover the Criminal Indictments .......................11

    E.   The Policy Excludes Claims Seeking Non-Pecuniary Relief .............13

    F.   Other Exclusions in the Policy Also Apply ...................................15

    G.   The Follow-Form Policies Do Not Apply Here ...............................16

IV.  CONCLUSION .......................................................................17

# INDEX OF AUTHORITIES

**Page(s)**

## Cases

*Andersen v. Highland House Co.*,
  93 Ohio St. 3d 547; 757 N.E.2d 329 (2001)......................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................5

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*,
  502 F.3d 545 (6th Cir. 2007) .............................................................................5

*Auto-Owners Ins. Co. v. Harrington*,
  565 N.W.2d 839 (Mich. 1997)...........................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................5

*Busch v. Holmes*,
  662 N.W.2d 64 (Mich. Ct. App. 2003).............................................................11

*Cincinnati Indemn. Co. v. Martin*,
  710 N.E.2d 677 (Ohio 1999) ......................................................................11, 12

*Florian v. United States*,
  No. 18-cv-13352, 2019 WL 2284938 (E.D. Mich. May 29, 2019)...................17

*Gearing v. Nationwide Ins. Co.*,
  665 N.E.2d 1115 (Ohio 1996) ......................................................................8, 10

*Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*,
  108 F.3d 658 (6th Cir. 1997) ...........................................................................17

*Jaffe v. Cranford Ins. Co.*,
  168 Cal. App. 3d 930 (Cal. Ct. App. 1985)........................................8, 9, 10, 13

*Kelly v. Robinson*,
  479 U.S. 36 (1986)......................................................................................14, 15

*Moore v. First Security Casualty Co.*,
    568 N.W.2d 841 (Mich. Ct. App. 1997)...................................................................6

*Patterson v. Standard Acc. Ins. Co.*,
    144 N.W. 491 (Mich. 1913).........................................................................10

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)....................................................................................6

*Potomac Elec. Power Co. v. California Union Ins. Co.*,
    777 F. Supp. 980 (D.D.C. 1991)...............................................................12

*Richelson v. Liberty Ins. Corp.*,
    No. 19-cv-3035, 2020 WL 113904 (6th Cir. Jan. 6, 2020) ...........................6, 7

*Spiegel v. State Farm Fire & Cas. Co.*,
    660 N.E.2d 200 (1995) ..............................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................2, 6

*University of Texas v. Camenisch*,
    451 U.S. 390 (1981)......................................................................................1

*Ward v. United Foundries, Inc.*,
    951 N.E.2d 770 (Ohio 2011) ......................................................................6

*Wesco Ins. Co. v. Roderick Linton Belfance Llp*,
    No. 17-cv-1813, 2018 WL 4510093 (N.D. Ohio Sept. 19, 2018).................9, 10

*Whitaker v. M.T. Auto., Inc.*,
    855 N.E.2d 825 (2006) .........................................................................14, 15

*State v. Whitfield*,
    922 N.E.2d 182 (2010) ..............................................................................14

*William Beaumont Hosp. v. Federal Ins. Co.*,
    552 F. App'x 494 (6th Cir. 2014)..............................................................8, 10

*People v. Williams*,
    625 N.W.2d 132 (2001) ..............................................................................14

**Statutes**

Ohio Revised Code § 2903.02 ...................................................................................3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................................5

iv

## I.     INTRODUCTION

Plaintiff's entire complaint is premised on the flawed legal conclusion that his professional liability insurance ("Integrated Risk Policy" or "Policy" attached as Exhibit 2 to Plaintiff's Complaint) requires Defendants to advance defense costs in Plaintiff's criminal prosecution for 25 counts of murder—it does not. The Policy at issue here is a professional liability and managed care liability policy to cover the risk of civil damages claims, not the risk of public prosecution for crimes committed in the provision of medical services.[1] Plaintiff's complaint cannot state a claim for any of its causes of action for breach of contract or equitable relief.  It should be dismissed with prejudice.

---

[1] This was noted by this Court in denying Plaintiff's Motion for Preliminary Injunction. Dkt. 26 at 8. Generally, a court's findings with respect to a preliminary injunction motion are not dispositive or binding on a subsequent summary judgment motion or a trial on the merits. *See, e.g.*, *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.") Unlike *Camenisch* and other "customary" preliminary injunction cases, the preliminary injunction here was decided on substantially all the evidence in this matter because the controversy is limited to a narrow question of law—whether the plain language of the Policy provides Plaintiff the relief he seeks. There was and is no allegation that the Policy is ambiguous, nor are there any material fact questions relating to the criminal indictments for which Plaintiff seeks advancement of defense costs because the criminal indictments are public court records. Therefore, the Court's Order Denying Plaintiff's Motion for Preliminary Injunction (Dkt. 26) should, at the very least, be persuasive in its analysis here.

## II.    RELEVANT FACTUAL ALLEGATIONS[2]

### A.    Plaintiff's Employment, Conduct, and Termination

As alleged in Plaintiff's complaint, Plaintiff was employed as a doctor by Mount Carmel Health System ("MCHS"), a subsidiary of THC, from 2013 to December 2018. Dkt. 1 ¶ 16. Plaintiff's employment agreement with MCHS provides, in part, that THC would provide Plaintiff with "professional liability insurance for all activities conducted in the course of employment." Dkt. 1 ¶ 20; Dkt. 1-2. As a result, THC obtained four separate indemnification policies (the "Policies") from Defendant Trinity Assurance Limited ("TAL"). Dkt. 1 ¶ 23. The four policies are the following: the Integrated Risk Policy (the "Policy") (Dkt. 1-3), Follow Form Buffer Layer Liability Policy (Dkt. 1-4), Excess Integrated Risk Liability Policy (Dkt. 1-5), and the Follow Form High Excess Layer Policy (Dkt. 1-6) (together, the "Follow-Form Policies"). Dkt. 1 ¶¶ 24-27.

In October 2018, the hospital received an internal complaint regarding the "proper" dosage of pain medication during end-of-life care. Dkt. 1 ¶ 34. The hospital then received a subsequent internal complaint regarding the dosage of pain

---

[2] Only for purposes of this motion, THC assumes the truth of well-pleaded factual allegations.  On a motion to dismiss, the Court may consider the complaint as well as documents incorporated by reference into complaint and central to Plaintiff's claims.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  All court filings and exhibits cited herein may be considered on a motion to dismiss.

medication that Plaintiff was prescribing. Dkt. 1 ¶ 36. Plaintiff's employment was terminated in December 2018. Dkt. 1 ¶ 16.

### B.   The Civil Lawsuits

Beginning on January 14, 2019, the first of multiple civil lawsuits were initiated by the families of Plaintiff's deceased patients, generally alleging claims of negligence and wrongful death against Plaintiff. Dkt. 1 ¶¶ 40-41; Dkt. 1-9. TAL issued three Reservation of Rights letters relating to the civil complaints that were filed against Plaintiff. Dkt. 1 ¶¶ 55, 59; Dkt. 1-10; Dkt. 1-11; Dkt. 1-13. Nonetheless, civil defense counsel was assigned by THC to defend Dr. Husel in the civil actions. Dkt. 1 ¶ 63.

### C.   The Criminal Charges

On June 5, 2019, Plaintiff was indicted on 25 counts of murder in Franklin County, Ohio, pursuant to 2903.02 UF of the Ohio Revised Code. Dkt. 1-7. All 25 counts of purposeful murder "do find and present that William Scott Husel late of said County, on or about [date], within the County of Franklin aforesaid, in violation of section 2903.02 of the Ohio Revised Code, did purposely cause the death of [Patient.]" Dkt. 1 ¶ 63; Dkt. 1-7.

Plaintiff made a demand on THC/TAL for defense expenses in connection with the *criminal* indictments so that he could engage prominent defense attorney

Jose Baez. Dkt. 1 ¶ 67; Dkt. 1-12. On August 5, 2019, TAL issued a Denial of

Coverage with respect to this request. Dkt. 1 ¶ 74; Dkt. 1-14.

On August 22, 2019, Plaintiff filed the instant lawsuit (Dkt. 1) and on

August 26, 2019, filed a Motion for Preliminary Injunction (Dkt. 4). Following

briefs and oral argument, on January 8, 2020, the Court denied Plaintiff's Motion

for Preliminary Injunction. Dkt. 26.

### D.   The Relevant Policy at Issue[3]

The Policies are clear and unambiguous. Dkt. 1 ¶ 88. For purposes of this

motion, the Integrated Risk Policy ("Policy") states in relevant part:

> The Company will indemnify the First Named Insured for such
> *Loss* arising from Healthcare Professional Liability or Managed Care
> Liability in excess of the applicable retention which an Insured shall
> become obligated to pay as a result of a claim first made against the
> Insured and reported to the Company during the Coverage Period . . . .
> The Company will also indemnify the First Named Insured for
> Defense Expenses incurred in connection with a claim arising from
> Healthcare Professional Liability or Managed Care Liability *covered*
> *under this Policy*, even if any of the allegations of the claim are
> groundless, false, or fraudulent. Dkt. 1-3, § I.A.

> *Loss means all sums which the Insured becomes legally*
> *obligated to pay to others as damages*, whether imposed by law by
> reason of judgment or settlement, or assumed by the Insured under
> contract, because of a claim covered under this Policy. Loss includes
> pre- judgment interest and post-judgment interest. Loss does not
> include Defense Expenses. Dkt. 1-3, § VI.Q.

---

[3]The Court granted Defendant's motion to redact the policy limits of the contracts
of indemnification between THC and TAL that are attached to Plaintiff's
Complaint. Dkt. 25. The excerpts of the Policy contained herein are not from the
redacted portions of the contracts of indemnification.

Defense Expenses means those amounts incurred in the investigation, adjustment, defense, settlement, or adjudication of any claim brought against an Insured that is covered under this Policy. Dkt. 1-3, § VI.E.

Coverage under Part I of this Policy does *not* apply to:

A claim seeking *non-pecuniary relief*. Dkt. 1-3, § I.8.

## III.   ARGUMENT

### A.   Motion to Dismiss and Policy Interpretation Standards

When deciding a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and

(4) letter decisions of government agencies may be appended to a motion to dismiss. *Tellabs*, 551 U.S. at 322.

It is a well-settled principle of law in both Michigan and Ohio[4] that an insurance policy is a contract between the insurer and insured, and courts must rely on the plain and ordinary meaning of the words to best effectuate the intent of the parties and the clear, unambiguous language of the policy. *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997); *see also Ward v. United Foundries, Inc.*, 951 N.E.2d 770, 773 (Ohio 2011). Courts must be careful not to read an ambiguity into a policy where none exists. *Moore v. First Security Casualty Co*., 568 N.W.2d 841, 844 (Mich. Ct. App. 1997).

All four counts of Plaintiff's complaint are contingent on Plaintiff's proposed interpretation of the Policies, none of which are alleged to be ambiguous. The court's analysis at the motion to dismiss stage, then, is to determine whether Plaintiff has put forward a "reasonable interpretation" of the indemnification policy upon which his claims can proceed. *See, e.g., Richelson v. Liberty Ins. Corp.,* No. 19-cv-3035, 2020 WL 113904 (6th Cir. Jan. 6, 2020) (citing *Andersen v. Highland House Co*., 93 Ohio St. 3d 547, 757 N.E.2d 329, 332 (2001)) (to assess whether a breach of contract has occurred, the court must examine the insurance

---

[4] The Court's reliance on either Michigan or Ohio law will not impact its analysis. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985).

contract as a whole, interpreting words according to their plain meaning, and decide whether the plaintiff has put forward a reasonable interpretation of the policy to proceed with his suit).

Because the plain language of the applicable Policy does not "give rise to an entitlement to relief," Plaintiff cannot state a claim under any of his causes of action for breach of contract or equitable relief.  His complaint should be dismissed with prejudice.

### B.  The Policy Only Covers "Loss," Not "Loss Events"

Plaintiff claims that a "'Loss' is not required for coverage, only a 'Loss Event.' Since a 'Loss Event' has been alleged, the policies obligate THC and TAL to advance Dr. Husel's Defense Expenses expended in defending the Indictment." Dkt. 1 ¶ 81. The Policy language is clear and unambiguous, however, that it only provides coverage for a "Loss," which is defined as "all sums which [Plaintiff] becomes legally obligated to pay to others as damages." Dkt. 1-3 §§ I.A, VI.Q. "Loss does not include Defense Expenses." *Id.* "Loss Event" is not even referenced in the Coverage section of the Policy. Dkt. § 1-3, I.A. The Policy defines "Loss Event" separately: "As respects Part I, Healthcare Professional Liability and Managed Care Liability: a Medical Incident or Managed Care Incident." *Id.* § VI.R.1. This language does not broaden coverage beyond liability for civil damages claims as defined by "Loss," but merely sets forth with specificity those

events for which a claim may arise. The Policy covers "Loss," not "Loss Events." The criminal indictments cannot result in a "Loss" covered by the Policy, so Plaintiff cannot state a claim for breach of contract, specific performance, or declaratory judgment under the Policy.

### C. "Loss" Does Not Include Criminal Penalties—Monetary or Otherwise

Plaintiff's allegation that "the Ohio statute invoked in the Indictment is punishable by a monetary fine as well as imprisonment" (Dkt. 1 ¶ 85) is misplaced. The Policy, which is a professional liability policy on its face, does not apply to criminal liability. Indeed, it is a well-settled principle of law in both Michigan and Ohio that criminal conduct is not insurable. *See, e.g., Gearing v. Nationwide Ins. Co.,* 665 N.E.2d 1115, 1120 (Ohio 1996) ("The public policy of the state of Ohio precludes issuance of insurance to provide liability coverage for injuries produced by criminal acts."); *see also William Beaumont Hosp. v. Federal Ins. Co*., 552 F. App'x 494, 501 (6th Cir. 2014) (citing Michigan cases that Michigan public policy precluded coverage and recovery for losses sustained due to crimes).

The California Court of Appeal considered a very similar liability policy and found that it did not cover the insured's cost of defense in a criminal proceeding in *Jaffe v. Cranford Ins. Co*., 168 Cal. App. 3d 930 (Cal. Ct. App. 1985). In *Jaffe*, the insurance policy described the insured risk as "Psychiatrist's Professional Liability in respect of Assured's practice of Psychiatry," and provided coverage for "damages as may be

awarded" against the insured. *Id.* at 933. The plaintiff sought payment of his criminal defense costs under the policy following the criminal trial and a finding that plaintiff was actually *innocent* of all charges. *Id.* at 932. The *Jaffe* court rejected this argument, noting that the plaintiff was conflating the insurer's coverage obligations with its duty to defend and that the correct inquiry was whether or not a potential for coverage existed at the time the insured's defense was required. *Id.* at 933-34. Because the outcome of the criminal case could not result in "damages," there was "no conceivable set of facts" under which coverage would be possible in the criminal action and, therefore, no duty to defend. *Id.* at 934.

Similarly, in *Wesco Ins. Co. v. Roderick Linton Belfance Llp,* No. 17-cv-1813, 2018 WL 4510093, at *5 (N.D. Ohio Sept. 19, 2018) (applying Ohio law), the policy at issue obligated the insurer to pay sums that became due as "damages," and defined damages to mean "judgments, awards and settlement." The Court found that because the underlying lawsuit sought a "sanction," there was "nothing to interpret" because the policies defined "damages" to include "judgments, awards and settlement," and that definition did not include "sanctions." *Id.* Because the policy clearly did not cover actions for sanctions, the Court granted the insurer's motion for summary judgment and held that the insurer did not have a duty to defend or indemnify the insured in the sanctions actions. *Id.* at *6.

Like *Jaffe* and *Wesco*, the Policy here is unambiguous. It provides coverage for "Loss" which "means all sums which the Insured becomes legally obligated to pay to others as damages, whether imposed by law by reason of judgment or settlement, or assumed by the Insured under contract, because of a claim covered under this Policy. Loss includes pre-judgment interest and post-judgment interest. Loss does not include Defense Expenses." Dkt. 1-3 § IV.Q. Like *Jaffe* and *Wesco*, "criminal fines" and "criminal convictions" are not included in the Policy's definition of Loss.

"The two essentials of a contract of insurance which are to be considered together in this inquiry are the subject-matter and the risk insured against." *Patterson v. Standard Acc. Ins. Co.*, 144 N.W. 491, 493 (Mich. 1913) (it was "clearly evident" that an automobile insurance policy was intended to protect against risk of liability for injury resulting from accidents in the operation of automobiles, not risk of public prosecution for crimes or misdemeanors committed in the use of them.)

The Policy protects against the risk of damages for "Loss arising from *Healthcare Professional* Liability or *Managed Care* Liability," not the risk of public prosecution for crimes committed in the provision of professional medical services. Dkt. 1-3 § I.A. (emphasis added). The Policy was not intended to nor does it cover criminal fines or criminal convictions, and the Policy would have been against Ohio and Michigan law if it did include such coverage. *See Gearing*, 665 N.E.2d at 1120; *William Beaumont Hosp.*, 552 F. App'x at 501.

### D. The Policy Does Not Cover the Criminal Indictments

THC's duty to defend is contingent on the availability of coverage under the Policy, and, contrary to Plaintiff's allegations, is not a separate obligation under the Policy. Dkt. 1 ¶¶ 123, 138, 153. The Policy provides that "[THC] has the duty to defend all claims that *are covered by this policy*." Dkt. 1-3 § VIII.A (emphasis added). An insurer is not obligated to provide a defense where, as here, there is "no set of facts alleged in the complaint, if proved true, would invoke coverage" for any claim. *Cincinnati Indemn. Co. v. Martin*, 710 N.E.2d 677, 678 (Ohio 1999).

Instructive here is *Busch v. Holmes*, 662 N.W.2d 64 (Mich. Ct. App. 2003), which affirmed a trial court's grant of summary disposition in favor of the insurer on a coverage dispute involving a liability policy and indemnity for attorney fees incurred in defending a criminal indictment. For its analysis, the Michigan Court of Appeals quoted the relevant sections from the policy and noted that the policy expressly provided liability coverage for *certain removal costs and damages* incurred for violations of the Oil Pollution Act. *Id*. at 68. The court then noted that an indictment by a federal grand jury for knowingly violating the Clean Water Act did not seek removal costs or damages *but criminal penalties*. *Id*. The court held that the plain language of the insurance policy did not provide for defense costs for defending criminal charges asserting criminal responsibility. *Id*. at 69.

Similarly, in *Cincinnati Indemnity Co. v. Martin*, the Ohio Supreme Court found that because the plain language of a homeowners policy excluded liability coverage for bodily injury to an insured, including claims resulting from the insured's death, there was no duty to defend a wrongful death suit involving the death of an insured. 710 N.E.2d at 680-81. There was no claim that the insurance policy was ambiguous. *Id*. at 679. Rather, the appellant attempted to argue that he had a distinct claim for wrongful death that was separate from the insured's "bodily injury." *Id*. The Ohio Supreme Court rejected this argument, noting that the appellant was conflating his right to bring a claim with the issue of whether there is policy coverage: "Even though appellant may pursue an independent wrongful death claim, . . . this does not mean that he can create liability coverage where there is none." *Id*. at 680-81.

Courts in other jurisdictions have considered similar disputes and also held that criminal actions do not invoke coverage under policies covering "damages" because criminal actions do not seek damages and therefore do not invoke the insurer's duty to defend. *See, e.g.*, *Potomac Elec. Power Co. v. California Union Ins. Co.*, 777 F. Supp. 980, 983-84 (D.D.C. 1991) (fees incurred in defending against possible criminal charges are not recoverable under a liability policy because "fines and incarcerations" are not damages, and "allowing fees spent on criminal defense to be recovered under a liability policy would violate public

12

policy."); *Spiegel v. State Farm Fire & Cas. Co.,* 660 N.E.2d 200, 202 (1995) (where the policy only covered "damages," no duty to defend in criminal case existed because it did not seek "damages"); *Jaffe*, 168 Cal. App. 3d at 935 ("damages" describes a "payment made to compensate a party for injuries suffered" and criminal actions generally show no potential for "damages").

Here, the plain language of the Policy, which covers "Loss," does not include criminal penalties. Plaintiff incorrectly claims (without referencing any specific provision of the Policy or the Follow-Form Policies) that "the Policies require THC to defend [Plaintiff] for claims arising from actual or alleged Medical Incidents." Dkt. 1 ¶¶ 123, 138, 153. The Policy is clear that THC's duty to defend is limited to "claims that are covered by this policy." Dkt. 1-3 § VIII.A. Furthermore, the Policy is clear that it only covers "Loss," which is defined as "all sums which [Plaintiff] becomes legally obligated to pay to others *as damages*." Dkt. 1-3 §§ I.A, VI.Q (emphasis added). The Policy does not cover the criminal indictments, therefore there is no duty to defend.

### E.    The Policy Excludes Claims Seeking Non-Pecuniary Relief

As discussed above, a criminal conviction resulting from a successful prosecution of a criminal proceeding on a murder charge is not a "Loss" under the Policy. Similarly, a criminal proceeding is not covered by the Policy because Section B.8 of the Policy expressly excludes coverage for any claim "seeking non-

pecuniary relief." Criminal proceedings cannot, by their very nature, seek "pecuniary relief." Criminal proceedings focus on the State's interests in *rehabilitation and punishment*, rather than the victim's desire for *compensation*. *Kelly v. Robinson*, 479 U.S. 36, 53 (1986) (emphasis added).

"The fundamental rule of the law of damages is that the injured party shall have compensation for all of the injuries sustained." *Whitaker v. M.T. Auto., Inc.,* 855 N.E.2d 825, 830 (2006) (citations omitted). A final criminal conviction is a determination of guilt and the sentence to be imposed. *State v. Whitfield*, 922 N.E.2d 182, 186 (2010); *see also People v. Williams*, 625 N.W.2d 132, 135 (Mich. Ct. App. 2001) ("The prosecution [of a crime] is not for the benefit of the injured party, but for the public good."). The criminal indictment charges 25 counts of murder against Plaintiff. Dkt. 1-7. A successful prosecution by the state on behalf of the public of the criminal indictment against Plaintiff would result in a criminal conviction against Plaintiff. That criminal conviction would not be a "sum" that Plaintiff would be "legally obligated to pay to others as damages." Dkt. 1-3 § VI.Q.

Plaintiff claims that the criminal indictments seek pecuniary relief because they seek "fines of $15,000 for each of the 25 counts [of murder.]" Dkt. 1 ¶ 87. But restitution in a criminal proceeding is not "pecuniary relief." Compensation for all injuries sustained by the injured party is the "fundamental rule of law of damages,"

14

and civil lawsuits seeking damages determine the pecuniary liability of a

defendant. *Whitaker*, 855 N.E.2d at 830. By contrast, criminal fines and restitution

orders are not assessed for the compensation of a victim or a measure of "actual

pecuniary loss." *Kelly*, 479 U.S. at 51.

A criminal proceeding does not seek pecuniary relief because it does not

seek to compensate any party with damages. Coverage for the criminal indictments

are excluded by the plain terms of the Primary Policy, so there is no duty to

defend.[5]

### F.    Other Exclusions in the Policy Also Apply[6]

First, the Policy excludes claims "arising from the knowing and willful

violation of a penal statute committed by or with the knowledge of the Insured."

Dkt. 1-3 § I.B.5. The murder indictment alleges that Plaintiff "purposely cause[d]

the death" of 25 people in violation of the Ohio penal statute for murder. Dtk. 1-7.

_____

[5] Furthermore, the Policy on its face is a *professional liability policy*, and professional liability policies are not intended to protect from the risk of public prosecution of crimes. Section III.C *supra*. Plaintiff also attempts to argue that because THC/TAL provided coverage to him in the civil actions, coverage should also be provided for the criminal indictment. Dkt. 1 ¶ 88. This argument fails for the reasons stated in Section III.C, D, E of this brief. If a plaintiff successfully litigates his/her civil claim and obtains a judgement against Plaintiff, it would be for monetary damages. Monetary damages resulting from a civil lawsuit falls squarely within the Policy's definition of "Loss."

[6] These exclusions are discussed at length in Defendant TAL's Motion to Dismiss, filed concurrently with THC's motion. THC incorporates TAL's arguments by reference here.

Next, the Policy also excludes claims "arising out of any physical abuse." Dkt. 1-3 § I.B.4. "Physical abuse" is not defined in the Policy, but it is commonly understood as causing injury to another person. It is uncontroversial that such a definition encompasses "purposely caus[ing] the death" of another. Dkt. 1-7. The plain language of both of these exclusions clearly applies to the murder indictments against Plaintiff.

### G.   The Follow-Form Policies Do Not Apply Here

Plaintiff relies in part on Follow-Form Policies that require that certain defined amounts must first be exhausted in order to apply, which has not occurred here. The Follow-Form Policies provide, in relevant part: "This Policy applies only in excess of Underlying Amounts for Healthcare Professional Liability and Managed Care Liability" (Dkt. 1-4, Follow Form Buffer Policy at 3); "With respect to those coverages designated in Item 5 of the Declarations as Group I only, the Company hereby agrees to indemnify the First Named Insured against Ultimate Net Loss in excess of." (Dkt. 1-5, Excess Integrated Risk Policy at 6); "This Policy applies only in excess of the Underlying Amounts for Group I and Group III of the Followed Policy" (Dkt. 1-6, Follow Form High Excess Policy at 3). The plain language of the Follow-Form Policies provide that they are only applicable once certain defined amounts have been exhausted by the preceding policies, which first requires that the Policy have been exhausted. Second, the

Follow-Form Policies explicitly exclude indemnification for defense costs. For example, the Follow Form Buffer Policy, "The Company will not indemnify the Insured for any Defense Expenses incurred in connection with a claim covered by this Policy; and the Company has no duty to defend any claim." Dkt. 1-4 § I.B. Therefore, the Follow-Form Polices do not apply and should not be considered here. The only policy relevant to this Court's analysis is the Policy.

## IV.    CONCLUSION

Plaintiff's interpretation of the Policy is not consistent with the clear, unambiguous language of the Policy. Because the Policy does not cover and/or excludes the criminal indictment, Plaintiff cannot state a claim for breach of contract, specific performance, or declaratory judgment[7] with respect to the criminal indictments.

Furthermore, Plaintiff's complaint should be dismissed with prejudice. Courts deny leave to amend a complaint where amendment would be futile, as it would be here. *See, e.g.*, *Florian v. United States*, No. 18-cv-13352, 2019 WL 2284938 (E.D. Mich. May 29, 2019). Here, there is no alternative set of factual allegations relating to the indemnification policy and criminal indictments that

---

[7] *See Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997) ("A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred.").

would support a cause of action under the Policy.  The Policy, on its face and as a matter of law, does not cover criminal defense costs.

THC respectfully requests that the Court dismiss Plaintiff's complaint with prejudice.

Dated:  February 12, 2020                   Respectfully submitted,

SCHIFF HARDIN LLP

*/s/ Elise Yu*
John Worden
4 Embaracadero Center, Ste. 1350
San Francisco, CA 94111
415-901-8700 (Telephone)
415-901-8701 (Fax)
jworden@schiffhardin.com (Email)

Elise Yu (P79344)
350 S. Main Street, Ste. 210
Ann Arbor, MI  48104
734-222-1556 (Telephone)
734-222-1501 (Fax)
eyu@schiffhardin.com (Email)

*Attorneys for Defendant Trinity Health Corporation*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2020 a copy of the foregoing was filed with the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/ Elise Yu
SCHIFF HARDIN LLP
Elise Yu (P79344)
350 S. Main Street, Ste. 210
Ann Arbor, MI  48104
734-222-1556 (Telephone)
734-222-1501 (Fax)
eyu@schiffhardin.com