UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. WILLIAM S. HUSEL, M.O.,

    Plaintiff,

vs.

TRINITY HEALTH CORPORATION, and
TRINITY ASSURANCE LIMITED
(CAYMAN),
    Defendants.    /

Case No.: 19-cv-12478

Hon. George Caram Steeh

**DEFENDANT TRINITY ASSURANCE LIMITED'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................2

    I.    The Policy is Not Ambiguous. ............................................................2

    II.    The Follow-Form Policies Are Inapplicable to Husel's Claims for Indemnification. ................................................................................4

    III.    The Court Should Not Defer Ruling on this Motion. ..........................5

CONCLUSION ..............................................................................................................6

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Coates v. Bastian Bros., Inc.*,
   276 Mich. App. 498; 741 N.W.2d 539 (2007) ...................................................... 3

*Moore v. First Sec. Cas. Co.*,
   224 Mich. App. 370; 568 N.W.2d 841 (1997) ...................................................... 3

34258729.1

# INTRODUCTION

Plaintiff Dr. William Husel failed to persuade the Court that the indemnification policy in question (the "Policy") here entitled him to the advancement of his criminal defense costs. Using the same arguments, he now seeks a second bite at the apple under the pretense that the Policy is somehow "ambiguous." It is not; while the Policy does not expressly disclaim criminal defense costs, such a disclaimer would be redundant. Instead, the Policy strictly limits coverage to a "Loss," which the Policy defines in terms of Husel being obligated to pay some amount of money as damages. Damages do not apply in the criminal context. Thus even if Husel were acquitted, it would not change the fact that criminal defense expenses, by definition, cannot be a covered "Loss" under the Policy. The Policy language is not susceptible to a reasonable, alternative reading that would support Husel's interpretation. In other words, it *un*ambiguous.

Husel's indemnification-upon-acquittal theory, requesting that the Court defer resolution of this Motion until after the conclusion of his criminal trial, also is meritless. Simply put, given the nature of Husel's criminal proceeding, there is no outcome from that criminal trial that would change the interpretation of the Policy.

Accordingly, and for the additional reasons discussed below, the Court should grant Defendant Trinity Assurance Limited's ("TAL") Motion to Dismiss in its entirety.

34258729.1

# ARGUMENT

## I. The Policy is Not Ambiguous.

Husel lays the foundation for his theory of recovery by incorrectly claiming that the Primary Policy is ambiguous with respect to the meaning of the words "claim" and "liability." *See* Dkt. 33 at PageID.1012-15. While he correctly states that the Policy will cover Defense Expenses for "a claim arising from Healthcare Professional Liability," he argues that the Policy does not specifically define "claim" and, therefore, that the criminal indictments could be "claims." *Id.* Similarly, he asserts that the Policy provides coverage for liability resulting from a "Loss Event"—*i.e.*, "any act, error or omission in the furnishing of or failure to furnish Medical Services"—but that such coverage is likewise not expressly limited to only *civil* liability. *See id.* at PageID.1013-14.

These arguments mirror those offered by Husel in his preliminary injunction motion—and are thus deserving of the same treatment by the Court. In its Order denying Husel's preliminary injunction motion (the "Order"), the Court was tasked with interpreting the plain meaning of the Policy and found it to provide coverage only for a "Loss"—*i.e.*, "sums which [Husel] becomes legally obligated to pay to others as *damages*." Dkt. 26 at PageID.804 (emphasis added). Rejecting Husel's argument, the Court noted that the Policy's inclusion of a definition for "Loss Event" (*i.e.*, an "act, error, or omission" in the "furnishing of Medical Services") was simply

2

a means of identifying specific events that might give rise such "sums"—***not*** a vehicle for extending the Policy's coverage to claims for criminal liability. *Id.* In no uncertain terms, the Court confirmed that a criminal prosecution is simply not a "claim" that may result in a "sum" that Husel will be forced to pay as "damages." *Id.*

That same logic applies here with equal force, even if Husel were to be acquitted. The Court must look to the underlying claims (*i.e.*, the murder indictments) and determine whether they fall within the meaning of "Loss." Here the criminal action against Husel cannot be deemed a "Loss," as a "Loss" requires the payment of damages, which do not apply in criminal matters.

Nor can Husel claim that the Policy is "ambiguous" because it does not expressly disclaim coverage for criminal charges. *See* Dkt. 33 at PageID.1011-13. A contract is ambiguous when two provisions "irreconcilably conflict with each other," or "when [a term] is equally susceptible to more than a single meaning," *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 505; 741 N.W.2d 539, 544 (2007) (quotation marks and citations omitted). There are no conflicting meanings or provisions here. The murder indictments, by definition, cannot be "Losses." And Husel is precluded as a matter of settled-law by attempting to invoke an ambiguity into the Policy when none exists. *See Moore v. First Sec. Cas. Co.*, 224 Mich. App. 370, 375; 568 N.W.2d 841, 844 (1997) (courts must be leery of reading an ambiguity

3

into a policy where none exists).

## II. The Follow-Form Policies Are Inapplicable to Husel's Claims for Indemnification.

Husel's argument that the Primary Policy must be read in conjunction with the "Follow-Form Policies"[1] likewise is without merit. *See, e.g.*, Dkt. 33 at PageID.1014.

First, as the Court noted in its Order,[2] even if the Follow-Form Policies were applicable here (and they are not), each of those Policies expressly excludes indemnification for defense expenses. *See* Buffer Policy, Dkt. 1-4 at PageID.106, §1.B ("The Company will not indemnify the Insured for any Defense Expenses incurred in connection with a claim covered by this Policy. . . ."); Excess Policy, Dkt. 1-5 at PageID.119, §I ("the indemnification against Expenses and Costs shall not apply with respect to those coverages designated as Group I as set forth in Item 5 of the Declarations [*e.g.,* Healthcare Professional Liability]."); High Excess Policy, Dkt. 1-6 at PageID.158, §V.A (noting that this policy does not apply to any

---

[1] These are (1) the Follow Form Buffer Layer Liability Policy, Policy No. V-18/19-HPL-BUF (the "Buffer Policy"); (2) the Excess Integrated Risk Liability Policy, Policy No. VXSR-18/19-1 (the "Excess Policy"), which covered Plaintiff as an employee of one of THC's subsidiary hospitals; and (3) the Follow Form High Excess Layer Policy, Policy No. V-XSPLGL18/ 19 (the "High Excess Policy"), in effect from July 1, 2018 to July 1, 2019. *See* Dkt. 1-4 at PageID.104-12; Dkt. 1-5 at PageID.114-53; Dkt. 1-6 at PageID.154–62.

[2] *See* Dkt. 26 at PageID.810-11.

4

34258729.1

claim not covered as a Healthcare Professional Liability in the Excess Policy). To the extent that the Policies are read together, this makes even clearer that Husel is not entitled to the relief that he requests.

Second, even absent these clear exclusions, each Follow-Form Policy applies *successively*—not simultaneously with the Primary Policy. Each Follow-Form Policy is triggered only after certain defined amounts in the preceding policy (beginning with the Primary Policy) have been exhausted—*e.g.*, the Primary Policy's defined amounts must be exhausted before application of the Buffer Policy is triggered, the Buffer Policy's defined amounts must be exhausted before triggering application of the Excess Policy, etc.[3] And because the Primary Policy has not been exhausted, the Buffer Policy (as well as the other Follow-Form Policies) does not apply here.

Husel's reliance on the Follow-Form Policies is therefore misplaced.

### III. The Court Should Not Defer Ruling on this Motion.

Finally, Husel asks the Court to defer ruling on this Motion until after the

---

[3] *See* Buffer Policy, Dkt. 1-4 at PageID.106 ("This Policy applies only in excess of Underlying Amounts for Healthcare Professional Liability and Managed Care Liability."); Excess Policy, Dkt. 1-5 at PageID.119, §I.A ("With respect to those coverages designated in Item 5 of the Declarations as Group I only, the Company hereby agrees to indemnify the First Named Insured against Ultimate Net Loss in excess of."); High Excess Policy, Dkt. 1-6 at PageID.156 ("This Policy applies only in excess of the Underlying Amounts for Group I and Group III of the Followed Policy.").

completion of his criminal trial but provides not a single valid reason for the Court to do so. Presumably, Husel's position is that the Court should wait to see if he is acquitted of the murder charges before determining whether he is entitled to recover his defense expenses. But the Court has already weighed in on this very issue in the Order, recognizing that the criminal prosecution "is not a 'claim' which will result in a 'sum' that [Husel] will be obligated to pay as damages"—and therefore cannot constitute a "Loss." *See* Dkt. 26 at PageID.804. And absent a "Loss," Husel is precluded from seeking recovery here.

## CONCLUSION

Husel's Response is merely an attempt to recast his previous arguments under the guise of his "ambiguity" claim. In reality, Husel is again arguing for his preferred interpretation of an "omnibus" Policy that includes coverage for his criminal defense expenses, which the Court must decide as a matter of law, just as it did in entering the Order. The operative facts remain unchanged since then. The murder indictments still cannot be included in the definition of "Loss," and TAL still has no duty to defend or indemnify Husel—even if he were to be acquitted. The Court should grant TAL's Motion to Dismiss.

Dated: March 25, 2020

                                        Respectfully submitted,

                                        HONIGMAN LLP
                                        *Attorneys for Defendant Trinity*
                                        *Assurance Limited (Cayman)*

                                    By: /s/   *Jason R. Abel*
                                          Jason R. Abel (P70408)
                                          Sara J. Brundage (P75791)
                                          Mohamed Awan (P77402)
                                      2290 First National Building
                                      660 Woodward Avenue
                                      Detroit, MI 48226-3506
                                      (313) 465-7000
                                      jabel@honigman.com
                                      sbrundage@honigman.com
                                      mawan@honigman.com

34258729.1

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all registered participants.

By: /s/    *Jason R. Abel*
　　　Jason R. Abel (P70408)
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000
jabel@honigman.com
*Attorneys for Defendant Trinity Assurance Limited (Cayman)*

34258729.1