UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. WILLIAM S. HUSEL,

          Plaintiff,

   v.

TRINITY HEALTH CORP. and
TRINITY ASSURANCE LIMITED,

          Defendants.
                                       /

CASE NO. 19-CV-12478

HON. GEORGE CARAM STEEH

**ORDER GRANTING DEFENDANTS'
<u>MOTIONS TO DISMISS (ECF No. 30 and 31)</u>**

Plaintiff Dr. William S. Husel has brought suit against the insurer, Trinity Assurance Limited ("TAL"), and the first named insured Trinity Health Corporation ("THC"), seeking declaratory judgment that Defendants must pay his defense costs in the criminal proceedings pending against him on 25-counts of murder and reimbursement for all such fees paid. Now before the court are Defendants' motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). This matter had been set for oral argument, but due to the court's closing for the COVID-19 pandemic, and having already heard over two hours of argument on Plaintiff's motion for preliminary injunction which is largely duplicative of the issues now before the court, the court shall decide this matter on the briefs

pursuant to Rule 7.1(f)(2).  Because Defendants owe no duty to defend or indemnify Plaintiff for his criminal defense costs, Defendants' motions to dismiss shall be granted.

## I. Factual Background

Dr. Husel worked as a doctor in the Intensive Care Unit at Ohio's Mount Carmel West, a Catholic Hospital.  Mount Carmel West is a subsidiary of the parent corporation THC which is a named defendant in this lawsuit, along with the insurer TAL.  Plaintiff's employer was Mount Carmel Health Providers, Inc.  ("MCHP").  Under his employment agreement, MCHP obtained and paid for professional liability insurance.  THC obtained four separate indemnification contracts (the "Policies"), only one of which provides for potential indemnification of defense expenses, the Integrated Risk Liability Policy (the "Policy").  There are also three Follow-Form policies: the Buffer Layer Liability Policy, the Excess Integrated Risk Liability Policy, and the High Excess Layer Policy.

Dr. Husel was terminated on December 5, 2018, following an investigation that determined he had ordered significantly excessive and potentially fatal doses of pain medication for at least 27 patients who were near death.  On January 25, 2019, the Ohio State Medical Board suspended Plaintiff's medical license, and issued its finding that Plaintiff's

continued practice "present[ed] a danger of immediate and serious harm to the public."  Dr. Husel was indicted on June 5, 2019 in Franklin County, Ohio, with causing the death of 25 individuals between February 10, 2015 and November, 2018.  All of his patients died after Dr. Husel allegedly prescribed lethal doses of pain medication, (sometimes including fentanyl), after his patients were removed from life support.  There are currently 30 pending civil claims for negligence and wrongful death against Dr. Husel.  THC assigned civil defense counsel to defend Dr. Husel in these civil actions, but TAL has issued several reservation of rights letters relating to the civil complaints.  Husel has hired as his criminal defense attorney, Jose Baez, a high-profile attorney who has represented Casey Anthony, Aaron Hernandez, and Harvey Weinstein.

In early August, 2019, Dr. Husel made a demand on THC/TAL for defense expenses in connection with the criminal indictments.  On August 5, 2019, TAL issued a denial of coverage with respect to his request.

Plaintiff brought a four-count Complaint against Defendants here.  Count one seeks declaratory judgment that THC must provide criminal defense costs and TAL must pay the costs of defense.  Counts two and three seek specific performance and a preliminary injunction requiring THC to defend Dr. Husel against the criminal charges and requiring TAL to pay

the costs of the defense. Count four alleges breach of contract for TAL and THC's failure to advance criminal defense costs and seeks reimbursement of all such fees paid. Plaintiff filed a motion for preliminary injunction seeking to compel Defendants to advance his criminal defense costs. On January 8, 2020, this court denied the motion for a preliminary injunction finding it unlikely that Plaintiff could show coverage exists under the Policy. (ECF No. 26). In reaching this conclusion, the court analyzed the Policy language and its exclusions and determined that no coverage for criminal defense costs exists under the Policy. Although the court couched its language in the traditional preliminary injunction analysis, the court hereby finds for the reasons articulated in that order, that the Policy does not cover criminal defense costs. The court now considers the new arguments raised by Plaintiff in his response to the motion to dismiss not previously considered by the court in its order denying preliminary injunctive relief.

## II. Standard of Law

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint

as true, and determine whether plaintiff's factual allegations present plausible claims. "'[N]aked assertions' devoid of 'further factual enhancement'" are insufficient to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). Even though the complaint need not contain "detailed" factual allegations, its "'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

### III. Analysis

The parties agree that the law of Michigan or Ohio applies and that there is no significant distinction between the two.

On January 8, 2020, this court denied Plaintiff's motion for a preliminary injunction to require the advancement of criminal defense costs. In reaching its decision, the court analyzed the Policy and determined that

it insured the risk of malpractice and civil tort claims only and did not provide coverage for defense costs in a criminal case. TAL argues that based on the court's prior ruling (ECF No. 26), Counts two and three which seek specific performance and preliminary injunctive relief are rendered moot. Plaintiff agrees. Also, Plaintiff agrees that Count one which seeks declaratory judgment is now moot. Thus, that leaves for consideration only Count four which alleges breach of contract. Plaintiff argues that there is a factual question over whether the policies provide for indemnification should Dr. Husel be acquitted following the criminal trial. But there is no ambiguity in the Policy or Policies that would require submission to a fact finder. *See Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 503 (2007) (contract ambiguous when provisions irreconcilably conflict or where a term is equally susceptible of more than one meaning); *Moore v. First Sec. Cas. Co.,* 224 Mich. App. 370, 375 (1997) (courts should be leery of reading an ambiguity into a policy where none exists). For the reasons set forth in the court's prior order denying Plaintiff's motion for a preliminary injunction, and as set forth below, a clear reading of the Policies leads to only one conclusion: there is no coverage for criminal defense costs.

Plaintiff seeks an order denying the motion to dismiss, or in the alternative, an order holding in abeyance Defendants' motions to dismiss

until the conclusion of the criminal action.  Plaintiff argues that only if he is acquitted need the court determine whether the policies require indemnification, conceding that if he is convicted, he is not entitled to criminal defense costs.  Plaintiff's criminal trial had been set for June 20, 2020; thus, Plaintiff argues any delay would be short lived, lasting only a few months.  Given the COVID-19 pandemic; however, it is unclear how long such a delay could last.

Plaintiff also argues that this court's prior order denying his request for a preliminary injunction relied, in part, on the public policy that insurance contracts should not provide coverage to those who commit crimes.  If acquitted, Plaintiff argues that policy would have no bearing on Dr. Husel's coverage suit.  But the coverage question presented here does not depend on whether Dr. Husel is convicted or not.  The duty is contingent on whether coverage is available under the Policy.  Where the conduct is indisputably outside the scope of coverage, there is no duty to indemnify for defense costs.  *Chiquita Brands Int'l, Inc. v. Nat'l Union Ins. Co.*, 988 N.E. 2d 897, 900 (Ohio Ct. App. 2013).

Similarly, in *Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 932-34 (1985), the court found no criminal defense costs owing under psychiatrist's professional liability policy, even where the insured psychiatrist was

acquitted at trial, because coverage depended on whether the case could result in "damages," and where criminal proceeding could not, there was no duty to defend. In this case, the Policy provides that "[TAC] has the duty to defend all claims that are covered by this policy." (ECF No. 19-1, PageID.565). Where this court has already determined there is no coverage for criminal charges under the Policy, which are not "claims," there is no duty to defend. Because there is no duty to indemnify criminal defense costs, even if Dr. Husel is acquitted, there is no reason to delay ruling on Defendants' motions to dismiss.

Much of Defendants' briefs reiterate arguments already considered by the court in its prior opinion denying preliminary injunctive relief. The court refers the parties to the court's prior analysis in that order finding that the Policy provided coverage for civil "claims" and "Losses" which the Policy defines as "all sums which [Plaintiff] becomes legally obligated to pay to others as damages . . . because of a claim covered under this Policy . . . . Loss does not include Defense Expenses." (ECF No.1-3, PageID.71). "Defense Expenses" are then defined as "amounts incurred in the investigation, adjustment, defense, settlement, or adjudication of any claim brought against and Insured that is covered under this Policy." *Id.* at PageID.67.

The court rejected Plaintiff's argument that the Policy's definition of "Loss Events" expanded coverage to apply to criminal defense costs. The purpose of the "Loss Event" provision, as opposed to the "Loss" provision, is to set forth policy limits for such an occurrence as set forth on the Declarations page, like a blood contamination resulting in multiple "Losses" for one "Loss Event." Also, the Policy is clear that "Loss Events" are considered as part of coverage for "CLAIMS THAT ARE FIRST MADE AGAINST THE **INSURED** AND REPORTED TO THE COMPANY DURING THIS **COVERAGE PERIOD** ARISING OUT OF **LOSS EVENTS.**" *Id.* at PageID.51. There is no basis for interpreting "claim," which is not specifically defined in the policy, to include criminal prosecution either by reference to other provisions in this Policy, or interpretations of similar policy provisions by other courts. The court previously ruled that a criminal prosecution is not a "claim" which will result in a "sum" that Dr. Husel will be obligated to pay as "damages." The Court also found no coverage for criminal defense costs under the Policy's exclusions for (1) any claim "seeking non-pecuniary relief," (2) "the knowing and willful violation of a penal statute," and (3) for "physical abuse."

Plaintiff argues this court should now consider two arguments not considered in its prior order: (1) whether the Follow-Form Policies require

the payment of criminal defense costs, and (2) whether the Policies require indemnification after an acquittal from criminal charges. The court considers each new argument below.

### A.     The Follow-Form Policies

The court's prior opinion finding that the Policy did not cover criminal defense costs did not consider the three Follow-Form policies which only apply after certain defined amounts have been exhausted by the policies which precede them.  There are three Follow-Form policies: the Buffer Policy, the Excess Policy, and the High Excess Policy.  Plaintiff relies on two exclusions in the High Excess Policy.  Exclusion H applies "[t]o any liability arising out of the dishonest, fraudulent, malicious or criminal acts committed by the Insured.  However, for the purposes of determining the applicability of this exclusion . . . this exclusion will apply only if it is determined by final adjudication that the Insured committed such an act," and Exclusion I provides for "any liability arising out of the willful violation of any law, statute, regulation or ordinance committed by the Insured.  However, for purposes of determining the applicability of this exclusion . . . this exclusion will apply only if it is determined by final adjudication that the Insured committed such an act."  (ECF No. 19-1, PageID.621-22).  Plaintiff argues first that "liability" is a broad term that encompasses both civil and

criminal liability, and that unless the duty to defend extends to criminal cases, the above cited limited exclusions would be rendered meaningless surplusage.

The court previously considered Plaintiff's claim that "liability" as used in the Policy includes both civil and criminal liability and rejected it. The court reaches the same conclusion again, this time, with reference to the term in the Follow-Form policies. Plaintiff has failed to show this language requires a finding that defense costs are owing based on the risk of criminal liability. In fact, as discussed above, the Policy covers losses an insured is required to pay as damages, and the insurer is required to provide defense expenses for claims brought against an insured for which coverage exists under the Policy.

The court considers now Plaintiff's argument that the criminal exclusion in the Follow-Form policy would be rendered "mere surplusage" if not read to extend coverage to criminal proceedings. Once again, the court rejects the argument. The policy simply excludes coverage for civil liability when the insured has been finally adjudicated to have violated any law, statute, regulation, or ordinance. For example, in the case cited by Plaintiff, *State Auto Mut. Ins. Co. v. Security Taxicab, Inc.*, 144 F. App'x 513, 520 (6th Cir. 2005), the court held that an insured bus driver sued in tort for

sexually assaulting a handicapped rider was not entitled to coverage because of the criminal acts exclusion. Similarly, in *Med. Protective Co. v. Duma*, 478 F. App'x 977, 982 (6th Cir. 2012), the Sixth Circuit found that an insurer was not required to indemnify an obstetrician found liable for malpractice when he delivered a baby while intoxicated because his professional liability policy contained a criminal exclusion clause and he admitted to wanton endangerment. These cases illustrate that criminal exclusion clauses can serve to limit coverage for civil claims. Indeed, in this case, if Dr. Husel is convicted of the murder charges for which he has been charged, the criminal exclusion clause in the Follow-Form Policy would bar coverage for the civil malpractice claims brought against him. Thus, reading the above cited provisions in the Follow-Form Policies as limited to *civil* claims only does not render the language, as Plaintiff alleges, "mere surplusage," but serves the purpose of curtailing civil liability where the insured commits a criminal act.

**B.    Whether an Acquittal Would Trigger Coverage for Criminal Defense Costs**

    **1.    Coverage Does Not Exist Under the Policies**

Plaintiff also argues that an acquittal would trigger coverage for criminal defense costs. Here, Plaintiff reiterates the argument that "Loss

Events" would include any "liability" for the furnishing of medical services, and thus, would include criminal defense costs. For the reasons set forth in the court's prior order denying preliminary injunctive relief, the court rejects this argument inasmuch as the professional liability Policy is limited to civil claims for losses awarded as sums of damages. Once again, Plaintiff relies on *In re Enron Corporation Securities & "Erisa" Litigation*, 391 F. Supp. 2d 541 (S.D. Tex. 2005) for the proposition that the policy must explicitly exclude criminal defense costs, as he argued in his motion for preliminary injunctive relief. For the same reasons articulated in its prior order, *In re Enron* is markedly distinguishable. The court reiterates that analysis here. In the *Enron* case, the policy specifically defined claim as "any demand, suit, or *proceeding* against any DIRECTORS and/or OFFICERS during the POLICY PERIOD, . . . which seeks actual monetary damages or other relief." *Id.* at 569 (emphasis added). Unlike in this case, the Enron policy referenced a "proceeding" and provided coverage beyond mere monetary damages as it referred to "other relief." Also, the policies provided coverage for any "ULTIMATE NET LOSS," expressly including defense costs, that an officer or director becomes legally obligated to pay arising out of a "WRONGFUL ACT" committed in his capacity as a director or officer of Enron. *Id.* at 571. The definition of "wrongful act" included

conduct that could be considered criminal in nature. Also, in that case, there was an exclusion of coverage for fines imposed in a criminal suit, and an exemption for claims where a "final adjudication" found that an officer or director acted criminally. *Id.* at 572. The court found these exemptions would not be necessary if the policy did not cover defense costs in a criminal case. *Id.* By contrast, there is no comparable policy language in this suit. Also, the prosecution of securities violations is different than the prosecution of murder charges. To provide coverage for the defense of securities crimes may be intended in the context of a Directors and Officers Professional Liability policy, whereas coverage for murder appears well outside the scope of the professional liability Policy at stake here.

This case is more akin to *Mir v. Admiral Ins. Co.*, No. A-1419-10T4, 2012 WL 1694714, at *1 (N.J. Super. Ct. App. Div. May 16, 2012), where a physician sued his professional liability insurer to reimburse him for his legal costs to defend a disciplinary action filed against him by the California Medical Board. Very similar to the Policy language at issue here, in *Mir*, the policy provided for coverage for "damages, including loss payments, legal and claims expense" that the insured became legally obligated to pay "because of injury ... caused by a medical incident." *Id.* at *4. The court found that the California Medical Board was not suing plaintiff for

"damages," but was seeking to revoke or suspend his medical license.  *Id.*  That administrative prosecution was not a "claim or suit for damages" and did not fall within either the indemnification or defense paragraphs of the policy. *Id.* at *5.  So too here.  In that case, the court rejected the argument that a favorable ruling in the administrative proceeding would benefit any malpractice defense, just as this court rejects the argument here that both civil and criminal claims arise out of Dr. Husel's administration of medication and thus, are comparable.  A criminal proceeding charging Dr. Husel with committing murder and brought in order to punish him for his alleged wrongdoing is not a suit for damages and does not fall within the indemnification or defense paragraphs of the Policy.

In reaching this conclusion, the court is mindful of the Supreme Court of Michigan's admonition long ago that in interpreting an insurance policy, "[t]he two essentials of a contract of insurance which are to be considered together in this inquiry are the subject-matter and the risk insured against." *Patterson v. Standard Acc. Ins. Co.*, 144 N.W. 491, 493 (Mich. 1913).  In that case, a driver was arrested for manslaughter arising out of a vehicular accident, and his automotive insurer refused to defend him in the criminal proceedings.  The Supreme Court held the purpose of the insurance was to insure the risk of injury resulting from accidents in the operation of the

automobile, not to provide coverage for a criminal prosecution. Likewise, here the professional liability insurance covers the risk of civil tort and malpractice suits arising out of healthcare and managed care liability. The policy does not cover defense costs in a criminal proceeding.

### 2. Coverage Does not Exist under Exclusions

Plaintiff also argues that the exclusions relied upon by Defendants do not render his claim for criminal defense costs futile. Specifically, Plaintiff takes issue with the "penal statute" and "non-pecuniary relief" exemptions. First, the "penal statute" exemption provides there is no coverage for "[a] claim arising from the knowing and willful violation of a penal statute committed by or with the knowledge of the **Insured.**" The murder indictment alleges that Plaintiff "purposely caused the death" of 25 people in violation of ORC § 2903.02. Plaintiff has failed to demonstrate why this exclusion would not preclude coverage here. Also, the exclusion for '[a] claim arising from the knowing and willful violation of a penal statute," does not require a final adjudication of guilt to be implicated. Plaintiff, however, argues that final adjudication of such an act is required in the Follow-Form Excess Policy. For the reasons discussed above, the Follow-Form Policy does not apply until certain defined amounts have been exhausted, and

thus is not relevant to application of the "penal statute" exemption under the Policy.

Second, Plaintiff also argues the exemption for "non-pecuniary relief" does not apply because (1) it is intended only to exclude claims by THC against TAL for non-pecuniary relief, and (2) the criminal case seeks pecuniary relief in the form of fines. The court previously considered and rejected these arguments in its prior order. *See, e.g., Potomac Elec. Power Co. v. California Union Ins. Co.*, 777 F. Supp. 980, 983-84 (D.D.C. 1991) (fees incurred in defending against possible criminal charges are not recoverable under a liability policy because "fines and incarcerations" are not damages, and "allowing fees spent on criminal defense to be recovered under a liability policy would violate public policy."); *State Farm Fire & Cas. Co. v. Superior Ct.*, 191 Cal. App. 3d 74, 78 (1987) ("Restitution is ordered as punishment in a criminal case. No conceivable justification exists for allowing an individual to pass on such liability to an insurance carrier."); *Jaffe,* 168 Cal. App. 3d 930 at 935 (no duty to defend in criminal suit under malpractice policy because the duty to defend arises from insurer's coverage obligations and where there is no potential for coverage, there is no duty to defend and distinguishing between restitution and damages).

Defendants also argue there is no duty to provide defense costs in Dr. Husel's criminal case because he was acting outside the scope of his employment when he allegedly administered a lethal dose of pain medication when his patients were removed from life support. Dr. Husel, on the other hand, argues he was acting within the scope of his employment when he administered medication with the intention of providing palliative care. Just as the court did not reach this issue in its prior order denying injunctive relief, it is not necessary to consider this issue here to decide the motions to dismiss now pending. Based on the plain language of the Policy discussed above, and in the court's prior order denying injunctive relief, and the other exclusions discussed above, Dr. Husel's professional liability Policy covers civil claims, and does not provide coverage for criminal defense costs.

## IV. Conclusion

For the reasons set forth above, Defendants' motions to dismiss (ECF No. 30 and 31) are GRANTED.

**IT IS SO ORDERED**.

Dated: May 19, 2020

                                       s/George Caram Steeh
                                       GEORGE CARAM STEEH
                                       UNITED STATES DISTRICT JUDGE